UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| VERIFY SMART CORP., | : | Civil Action No. |
| Plaintiff, | : | |
| v. | : | **COMPLAINT** |
| BANK OF AMERICA, N.A., BANK OF AMERICA CORP., THE CLEARING HOUSE PAYMENTS COMPANY LLC, THE CLEARING HOUSE ASSOCIATION LLC and ASKELADDEN LLC, | : | DEMAND FOR JURY TRIAL |
| Defendants. | : | |

Plaintiff Verify Smart Corp. ("Verify"), by and through its attorneys Zimmerman Law Group complains against Defendants Bank of America, N.A., Bank of America Corp., (together "BofA"), The Clearing House Payments Company LLC, The Clearing House Association LLC (together "The Clearing House"), and Askeladden LLC ("Askeladden") (all hereinafter sometimes collectively "Defendants") as follows:

## THE PARTIES

1.  Verify, is a corporation formed under the laws of the State of Nevada having its headquarters in New Jersey.

2.  Bank of America N.A. is a national banking corporation organized and existing under the laws of the of the United States, with its principal place of business in the City of Charlotte, County of Mecklenburg, State of North Carolina, and having bank branches throughout this jurisdiction in which it is conducting business.

3.  Bank of America Corp. is a Delaware corporation that conducts business in this jurisdiction.

1

4. The Clearing House Payments Company LLC is a New York limited liability company that conducts business in this jurisdiction. The Clearing House Payments Company LLC "is owned by the world's largest commercial banks", including BofA. The Clearing House Payments Company LLC "provides payment, clearing, and settlement services to [owner] banks and other financial institutions, clearing almost $2 trillion daily."

5. The Clearing House Association LLC is a New York limited liability company and an affiliate of The Clearing House Payments Company LLC, that conducts business in this jurisdiction. It, acts as an advocacy organization representing and advancing the interests of its owner banks on a variety of banking issues. The Clearing House Payments Company LLC and The Clearing House Association LLC will hereinafter be collectively referred to as "The Clearing House".

6. The Clearing House is an agent for its owner banks, and acts on their behalf.

7 The owner banks control The Clearing House and are responsible for directing its management.

8. Askeladden is a New York limited liability company.

9. Akeladden is a wholly-owned subsidiary of The Clearing House Payments Company L.L.C.

10. Askeladden shares management with The Clearing House Payments Company L.L.C.

11. Askeladden that has committed actions directed against a resident of this jurisdiction, i.e., Verify, that have caused harm to said resident in this jurisdiction.

12. Askeladden's business includes the filing of petitions for Inter Partes Review ("IPR") in the Patent Trial and Appeal Board ("PTAB") of the U.S. Patent and Trademark Office. Askeladden has filed an IPR against Verify.

13. Askeladden is an agent for both The Clearing House and for its owner banks, and seeks to represent and advance the interests of the owner banks.

14. Askeladden is an education, information and advocacy organization, which through its Patent Quality Initiative ("PQI") is dedicated to improving the understanding, use and reliability of patents in financial services and elsewhere.

15. On information and belief, Askeladden challenges patents through Inter Partes Review (IPR) based on their prospective interference with activities of the owner banks.

16. The funding for Askeladden is derived from The Clearing House based on revenues substantially from the owner banks.

17. Askeladden's funding therefore derives from the owner banks.

## JURISDICTION

18. This Court has subject matter jurisdiction over Count 3 pursuant to 28 U.S.C. § 1331 and the Federal RICO Act, 18 U.S.C. §§ 1961 *et seq.*, which depends in part on the claims and facts asserted in Counts 1 and 2.

19. Counts 1 and 2 of this action are so related to the claims set forth in Count 3 that they form part of the same case or controversy under Article III of the

United States Constitution; are in the nature of breach of contract, and tortious interference with prospective economic advantage, and are joined with substantial and related claims under the Federal RICO laws of the United States; and are between citizens of different states in which the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. Accordingly, subject matter jurisdiction over Counts 1 and 2 is conferred upon this Court by 28 U.S.C. §§ 1332(a), and 1367(a).

## VENUE

20.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) and (b) as the parties all conduct business in this district and resolution issues between BofA and Verify are appropriate to be adjudicated in this district.

## FACTS

21.  On July 9, 2015, Verify filed a complaint against BofA in the United States District Court for the District of New Jersey, Case No. 15-cv-5348 entitled *Verify Smart Corp v. Bank of America, N.A.*, ("the District Court litigation") alleging that BofA's SafePass two-factor authorization security feature infringed Verify's U.S. Patent 8,285,648 for a System and Method For Verifying A User's Identity In Electronic Transactions ("the '648 Patent").

22.  On August 12, 2015, BofA filed a Covered Business Method Patent Review ("CBM Proceeding") in the Patent Trial and Appeal Board ("PTAB") of the U.S. Patent and Trademark Office, Case No. CBM2015-00173 entitled *Bank of America, N.A. v. Verify Smart Corp.*, seeking to invalidate the '648 Patent. Thereafter, the District Court litigation was dismissed on November 3, 2015, and the CBM Proceeding was dismissed on November 4, 2015.

23. "The dispute between the parties [BofA and Verify] ha[d] been resolved."

24. On January 18, 2017, Askeladden filed a petition for an IPR in the PTAB, IPR2017-00726 entitled *Askeladden LLC v. Verify Smart Corp.*, seeking to invalidate the '648 Patent. Paragraph II A of the petition identifies Askeladden as the sole "Real Party-In-Interest Under 37 C.F.R. §42.8(b)(1)". Neither The Clearing House nor any of its owner banks, including BofA, are identified as a real party-in-interest. A copy of the page from said petition so identifying Askeladden is attached hereto as Exhibit 1.

25. Askelladen's decision to institute IPR against the '648 patent was under the influence or control of the owner banks, through at least relationships with decision-makers.

26. The petition for IPR by BofA's agent Askeladden challenging the '648 Patent is wrongful and results in a failure of the aforementioned resolution of the dispute.

27. Askeladden's filing of the aforementioned IPR, is both unfair to and exceedingly damaging to Verify. The IPR filing is interfering with Verify's business activities pertaining to the '648 Patent and is unnecessarily causing Verify to expend time and financial resources.

28. The owner banks of The Clearing House and Askeladden are among the largest commercial banks in existence today. The Clearing House "clear[s] and settles approximately $2 trillion dollars daily", with a substantial portion of those funds, and associated fees, attributable to its owner banks.

29.     BofA individually and together with the other owner banks collectively possess significant market power, both in the commercial banking field and in the market for financial technology and related intellectual property.

30.     Through The Clearing House and Askeladden, these large powerful banks band together as a larger, more powerful enterprise, to use their combined market share and financial resources to challenge and invalidate patents from smaller, less capitalized third parties that potentially threaten the owner banks and the patents these banks own or are licensed to use.

31.     Askeladden only challenges patents that threaten the owner banks of The Clearing House or compete with intellectual property owned or licensed by these banks.

32.     By engaging in this concerted activity, the Defendants restrain and thwart competition by erecting barriers to competition from third parties seeking to enforce or license patents directed to banks or electronic commercial transactions.

33.     The owner banks, through The Clearing House, and otherwise, work together to establish standards, deploy banking technologies, and promote uniformity in banking.

34.     These established standards, technology and uniformity contribute to profitability of the owner banks.

35.     By challenging patents owned by third parties that encompass these standards and banking technologies, the owner banks seek to increase their respective profits with respect to permitting control over the standards and technologies by third parties.

## FIRST COUNT

### (BREACH OF CONTRACT)

36. Verify repeats each of the allegations contained in paragraphs 1 through 35 of the Complaint with the same force and effect as if fully set forth herein.

37. As between BofA and Verify, "[t]he dispute between the parties ha[d] been resolved." The challenge to the validity of the '648 Patent by BofA and/or its agents is wrongful and contravenes the aforementioned resolution.

38. Verify has not breached any obligation it may have to BofA.

39. By virtue of the IPR filing challenging the validity of the '648 Patent by its agent Askeladden, BofA has committed a wrongful act which contravenes the aforementioned resolution.

40. Verify has been damaged and continues to be damaged by BofA's willful and intentional breach of the contract in an amount to be determined at trial.

## SECOND COUNT

### (TORTIOUS INTERFERENCE WITH PROSEPCTIVE ECONOMIC BENEFIT)

41. Verify repeats each of the allegations contained in paragraphs 1 through 40 of the Complaint with the same force and effect as if fully set forth herein.

42. As the owner of the '648 Patent that is directed to a two-factor authentication security feature widely-used in commercial transactions, including those provided by the commercial banks that own The Clearing House, Verify enjoyed a reasonable expectation of continued prospective economic benefit in the conduct of its licensing business. This expectation was reasonable by virtue of Verify's past success in licensing the '648 Patent to third parties including to banks.

43. Upon information and belief, Defendants had knowledge of Verify's expectancy of this continued prospective economic benefit, but chose to intentionally and without justification or excuse interfere with that expectancy by virtue of the conduct outlined herein.

44. There was, and is, a reasonable probability that Verify would have received the above-referenced anticipated continued economic benefit in the absence of the Defendants' interference and unlawful conduct.

45. Defendants wrongfully and intentionally interfered with such prospective economic benefits by virtue of the conduct set forth in this Complaint.

46. Defendants' acts of interference have been committed in bad faith and with malice for at least the reasons set forth above and the additional reasons set forth below.

47. Such conduct on the part of Defendants has injured and continues to injure Verify in an amount to be determined at trial.

## THIRD COUNT

### (FEDERAL RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT)

48. Verify repeats each of the allegations contained in paragraphs 1 through 47 of the Complaint with the same force and effect as if fully set forth herein.

49. This count seeks treble damages for violation of the Federal RICO statute by Defendants in connection with their filing of IPRs and amicus briefs to benefit their economic position and the owner banks' patents to Verify's detriment and damage.

50. This is an action for civil relief for RICO violations under 18 U.S.C. §§ 1961 *et seq.*

51. Each of the defendants is a "person" within the meaning of 18 U.S.C. §

1961(3).

52. Defendants constitute one or more "enterprise" within the meaning of 18 U.S.C. § 1961(4) (hereinafter "Enterprise"). Although the name under which Defendants operate periodically changes, e.g., The Clearing House, or The Clearing House Payments Company, or The Clearing House Payment Company or Askeladden, based on information and belief, the same persons remain continuously associated with and involved in directing and/or controlling the Enterprise.

53. Defendants have committed the requisite predicate acts to be deemed to be engaged in "racketeering activity" within the meaning of 18 U.S.C. § 1961(1)(B). These indictable acts include violations of 18 U.S.C. § 1341 (relating to mail fraud) and 18 U.S.C. § 1343 (relating to wire fraud).

54. Specifically, Defendants have used the telephone, facsimile, e-mail, and/or U.S. mail across state lines to repeatedly commit fraudulent acts in which it failed to disclose its owner The Clearing House or one of its owner banks, e.g., BofA, as a real party-in-interest in filings made with the PTAB or the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit"), respectively.

55. For example, on October 23, 2014, Askeladden filed IPR2015-00138 in the PTAB against iSourceLoans LLC that identified Askeladden as the sole real party-in-interest, and failed to identify either The Clearing House or any of its owner banks as a real party-in-interest. A copy of the page from said petition so identifying Askeladden is attached hereto as Exhibit 2. Such fraudulent filings that failed to identify either The Clearing House or one of its owner banks as the real party-in-interest have continued up through and including the IPR filed in 2017 against Verify.

9

56. Also for example, on November 2, 2016, Askeladden filed an *amicus* brief in the Federal Circuit in Case 2015-1177 entitled *In Re. Aqua Products, Inc.* that identified Askeladden as the sole real party-in-interest, and failed to identify either The Clearing House or any of its owner banks as a real party-in-interest. A copy of the page from said *amicus* brief so identifying Askeladden is attached hereto as Exhibit 3.

57. The naming of the real parties-in-interest in an IPR is a statutory requirement, that imposes rights and responsibilities on the real parties-in-interest.

58. The failure to correctly name the real parties-in-interest permits an un-named party to benefit from the proceedings, without suffering the consequences of an adverse decision.

59. The naming of real parties-in-interest in the filing of an Amicus Brief serves to alert members of the bench regarding potential conflicts of interest and to understand biases in the brief. Courts have rules requiring disclosure of the real party-in -interest, and the failure to comply with the Court rules is sanctionable.

60. Defendants have engaged in a continuous "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5) inasmuch as Defendants have committed far more than two acts of racketeering activity, and the last of a substantial number of predicate acts occurred within 10 years of a prior act of racketeering activity. Between 2014 and November 2017, Defendants made filed at least seventeen petitions for IPRs in the PTAB, in violation of 35 U.S.C. § 312(a)(2) and numerous *amicus* briefs in the U.S. Court of Appeals for the Federal Circuit that fraudulently misrepresented the real party-in-interest, in violation of U.S. Federal Circuit Rule 47.4(a)(2).

61. Upon information and belief, such pattern of racketeering activity will

continue unless restrained by the Court, because the cost of filing IPRs for these large commercial banks and their agent, The Clearing House, is minimal, especially when these banks' financial resources and transactions fees for processing two trillion dollars of transfers daily are compared the to the financial resources of the entities against whom these IPRs are being filed.

62. Defendants have violated 18 U.S.C. § 1962(b) through the foregoing pattern of racketeering activity by which defendants acquired and maintained the foregoing Enterprise that is engaged in interstate commerce, *i.e.*, making fraudulent filings with courts and administrative agencies using the mail and the Internet.

63. Defendants have violated 18 U.S.C. § 1962(c) by conducting and participating in, directly or indirectly, the conduct of the Enterprise's affairs through a pattern of racketeering activity. Such activities have affected and are affecting interstate commerce, including the interstate commerce of Verify and others engaged in licensing and prospectively licensing patents directed to technologies pertaining to electronic financial transactions utilized by the commercial banks such as BofA that own The Clearing House and Askeladden.

64. Verify is a "person" within the meaning of 18 U.S.C. § 1961(3), since, as a corporation, it is an entity capable of holding a legal or beneficial interest in property.

65. Verify is a person injured in its business or property within the meaning of 18 U.S.C. § 1964(c). Verify's damage has included lost licensing opportunities, lost licensing revenues, and incurring significant legal expenses to investigate and defend a wrongful challenge to the validity of its '648 Patent.

66. Defendants' Federal RICO violations will continue unless and until restrained by the Court.

67. Verify has no adequate remedy at law.

**WHEREFORE**, Plaintiff Verify demands judgment against Defendants as follows:

(a). Judgment against the Defendants, jointly and severally;

(b). Compensatory, direct, consequential and punitive damages against Defendants in an amount to be determined at trial;

(c). Pre- and post-judgment interest;

(d). Costs, disbursements and attorney's fees;

(e). An award of punitive damages to Verify on account of Defendants' acts of breach of contract, tortious interference, and violation of the RICO statute;

(f). An award of threefold the damages sustained by Verify in accordance with 18 U.S.C. § 1964(c);

(g). A preliminary and permanent injunction enjoining Defendants, their members, officers, agents, servants, employees, attorneys, and other persons who are in active concert or participation with them: 1) to dismiss the IPR filed against Verify; 2) from suing Verify or from threatening to sue Verify to invalidate the '648 Patent; 3) from correcting the identification of the real party-in-interest in any IPR or brief it has filed; and 4) from continuing their acts of breach of contract, tortious interference, and violation of the RICO statute;

(h). An award to Verify of its reasonable attorney fees pursuant to 18 U.S.C. § 1964(c);

(i). An award of Verify's costs; and

(j). Such further and additional relief as to the Court deems just and appropriate.

By: /s/Jean-Marc Zimmerman
Jean-Marc Zimmerman
Zimmerman Law Group
233 Watchung Fork
Westfield, NJ 07090
Tel: (908) 768-6408
Fax: (908) 935-0751
jmz@zimllp.com

Steven M. Hoffberg (*Pro Hac* Pending)
Ostrolenk Faber LLP
1180 Avenue of the Americas
New York, NY 10036
Tel: (212) 596-0513
Fax: (212) 382-0888
SHoffberg@ostrolenk.com

Attorneys for Plaintiff Verify Smart Corp.

Dated: June 12, 2017