# Exhibit A

Trials@uspto.gov                                                                              Paper 6
571.272.7822                                                                  Entered: July 24, 2017

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD
_____

ASKELADEN LLC,
Petitioner,

v.

VERIFY SMART CORP.,
Patent Owner.
_____

Case IPR2017-00726
Patent 8,285,648 B2
_____

Before CARL M. DeFRANCO, FRANCES L. IPPOLITO, and
MELISSA A. HAAPALA, *Administrative Patent Judges*.

HAAPALA, *Administrative Patent Judge*.

DECISION
Institution of *Inter Partes* Review
*37 C.F.R. § 42.108*

Askeladen LLC ("Petitioner") filed a Petition pursuant to 35 U.S.C. §§ 311–319 to institute an *inter partes* review of claims 1–19 of U.S. Patent No. 8,285,648 B2 ("the '648 patent"). Paper 1 ("Pet."). Verify Smart Corporation ("Patent Owner") did not file a Preliminary Response.

Applying the standard set forth in 35 U.S.C. § 314(a), which requires demonstration of a reasonable likelihood that Petitioner would prevail with respect to at least one challenged claim, we grant Petitioner's request and institute an *inter partes* review of all challenged claims.

## I.  BACKGROUND

### A.  *The '648 Patent (Ex. 1001)*

The '648 patent describes systems and methods for verifying the identity of persons initiating electronic transactions.  Ex. 1001, 1:8–9.  A user and the user's communication device are pre-enrolled in a verification program, along with one or more of the user's accounts.  *Id.* at 4:5–9.  The information is stored in a verifier-database, which flags the accounts subject to identity verification and transaction authorization.  *See id.* at 4:14–19, 29–32.  The user's record in the verifier-database also includes a bona fide secure identifier for the user and the user access number of the user's communication device.  *Id.* at 4:27–29.  When the user attempts to access a flagged account, the verifier sends an identity verification request to the user's communication device to verify the transaction.  *See id.* at 4:34–61.

Figure 2 of the '648 patent is reproduced below:

IPR2017-00726
Patent 8,285,648 B2



Fig 2

Figure 2 illustrates a sequence of steps by which customer 101 uses the account pre-enrolled with verifier 301 as part of a transaction to purchase goods/services from retailer 102. *Id.* at 7:61–65. Customer 101 initiates electronic transaction (step 202) by presenting her card to retailer 102. *Id.* at 7:66–67. Retailer 102 queries bank 201 for authorization (step 302); then, bank 201 queries the account information (step 502) to verify if there are sufficient funds for the transaction and also determines whether the customer's account is flagged to require verification (step 402). *Id.* at 8:1–9.

If the account is flagged, the transaction is blocked in step 3002 pending verification of the customer's identify. *Id.* at 8:13–16. Bank 201 then sends a message to verifier 301 to initiate the identity verification process in step 702. *Id.* at 8:17–18. Verifier 301 retrieves the user access number and opens communications link 1002 with the mobile phone of the

3

customer. *Id.* at 8:18–21. If the customer's phone is answered, the transaction information is sent to the user's cell phone in step 1102, along with an identity verification request (IVR). *Id.* at 8:33–38. Customer 101 enters a putative password into the I/O device of the mobile phone in step 1802, which is sent to verifier 301 to compare the putative password to the bona fide identifier to determine if they match (step 1502). *Id.* at 8:51–57. If they match, "identity verified signal" 902 is generated and the transaction is allowed to proceed. *Id.* at 9:5–7. Otherwise, the user may be given a pre-determined number of times to retry, and after a pre-set number of failed attempts, the transaction is terminated and the bank is notified of the rejection. *Id.* at 9:59–61. Figure 2 includes additional steps not described.

The '648 patent further describes optional embodiments in which the verifier issues its own proxy transaction card to the user. *Id.* at 14:27–29. The proxy transaction card replaces one or more of the user's credit cards and is used by the user to authorize the verifier to access one or more of the user's accounts. *Id.* at 14:29–31. The user can present the proxy transaction card to a retailer and the verifier will initiate an identity verification process similar to that described previously. *See id.* at 15:16–40. During the process of identity verification, if the proxy account is associated with more than one account, the user can indicate the account to be used for the transaction. *See id.* at 15:6–15, 15:41–50. Once the transaction is verified, the verifier then acts as the user's proxy to open a communication link to the appropriate credit provider to authorize the transaction. *Id.* at 15:51–53.

B. *Illustrative Claim*

Claims 1, 2, and 5 are independent. Claim 1 is illustrative of the subject matter at issue:

IPR2017-00726
Patent 8,285,648 B2

    1. A user identity verification method for verifying the identity of a user by a verifier in the course of an electronic transaction, said user identity verification method comprising the steps of:

    (a) pre-enrolling the user, comprising the steps of:

        (al) assigning to the user a bona fide secure identifier; and,

        (a2) storing the bona fide secure identifier in a database that is accessible to the verifier;

    (b) pre-enrolling a user communications device, wherein pre-enrolling the user communications device comprises the steps of:

        (bl) obtaining a user access number for the user communications device, wherein the user access number can be used to open a communications link with the user communications device; and,

        (b2) storing the user access number in a database that is accessible to the verifier;

    (c) retrieving the user access number stored at Step (b2);

    (d) opening a communications link between the verifier and the user communications device by using the user access number retrieved at Step (c);

    (e) sending an identity verification request (IVR) from the verifier to the user through the communications link opened at Step (d);

    (f) inputting by the user a putative secure identifier;

    (g) sending through the communications link opened at Step (d) a response to the IVR of Step (e);

    (h) retrieving the bona fide secure identifier stored at Step (a2);

    (i) comparing the putative secure identifier input at Step (f) with the bona fide secure identifier retrieved at Step (h); and,

(j) allowing the transaction to proceed only if the comparison of Step (i) results in a match between the putative secure identifier and the bona fide secure identifier.

### C. References

Petitioner relies on the following references:

| | | | |
|---|---|---|---|
| Law | US 2005/0184145 A1 | Aug. 25, 2005 | Ex. 1005 |
| Dua | US 2006-0165060 A1 | July 27, 2006 | Ex. 1006 |
| Salveson | US 6,886,741 B1 | May 3, 2005 | Ex. 1007 |

### D. Grounds Asserted

Petitioner challenges the patentability of the claims of the '648 patent under 35 U.S.C. § 103(a) over the following combinations of references:

| References | Claims |
|---|---|
| Law and Dua | 1–15, 19 |
| Law, Dua, and Salveson | 16–18 |

### E. Related Proceedings

Petitioner and Patent Owner identify a prior covered business method proceeding filed by Bank of America as related to this proceeding (CBM2015-00173) (dismissed before institution). Pet. 3–4; Paper 4, 1. Petitioner additionally identifies a number of district court litigation matters asserted to be currently pending, and a prior *inter partes* review filed by Unified Patents (IPR2016-00836) (dismissed before institution). Pet. 3; *see also* Paper 5 (Petitioner's Updated Mandatory Notice).

## II. ANALYSIS

### A. Claim Construction

In an *inter partes* review, claims of an unexpired patent are interpreted using the broadest reasonable construction in light of the

specification of the patent in which they appear. *See* 37 C.F.R. § 42.100(b); *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2144–46 (2016). Under that standard, claim terms are generally given their ordinary and customary meaning, as would be understood by one of ordinary skill in the art in the context of the entire disclosure. *In re Translogic Tech., Inc.*, 504 F.3d 1249, 1257 (Fed. Cir. 2007). However, a patentee may choose to be his own lexicographer and use terms in a manner other than their ordinary meaning, as long as the special definition of the term is clearly stated in the patent specification. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

Petitioner asserts that various terms are defined in the Background of the '648 patent and that those definitions are adopted by Petitioner for purposes of the Petition. Pet. 9. Petitioner further proposes a construction for "device identifier." *Id.*

For purposes of this Decision, we do not find it necessary to construe any terms. *See Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999) (holding that "only those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy").

B. *Obviousness Over Law and Dua*

Petitioner contends that claims 1–15 and 19 are unpatentable as obvious under 35 U.S.C. § 103(a) over Law and Dua. Pet. 10–62. For the reasons discussed below, we are persuaded, based on the current record, that Petitioner has demonstrated a reasonable likelihood of prevailing on this ground.

1. Overview of Law and Dua

Law describes a secure wireless authorization system that allows a user with a wireless device to authorize a transaction request initiated by a third party entity. Ex. 1005 ¶ 20. For example, the third party entity can be an online merchant requesting authorization of a credit card transaction from an issuing bank. *Id.* ¶ 36. The user can use the wireless device to authorize the third party request in real-time. *Id.* ¶ 47. An authorization server receives an authorization request from the third party and sends an authorization request to the user's wireless device. *Id.* ¶¶ 48–49. Upon receipt of the request, the wireless device notifies the user and automatically displays the request for a user (e.g., by displaying a message similar to "company X requests action Y for an amount of Z, would you like to proceed?"). *Id.* ¶ 49. The user inputs the response through the wireless device and provides a personal identification number (PIN) or personal digital signature. *Id.* The authorization server verifies the security credentials of the user and the wireless device. *Id.* ¶ 50. If the correct security credentials are provided, the user's instructions will be executed and an appropriate response will be sent back to the third party to complete the transaction. *Id.*

Dua describes methods and systems for conducting financial and other transactions using a wireless device. Ex. 1006, Abstract. Electronic credentials may be issued to a wireless device of a user, such as an existing bank customer that has a credit card or a user that is applying for a credit card for the first time and only wishes to request the credential on his or her mobile phone. *Id.* ¶¶ 55–56. As part of the enrollment process, a PIN may be generated and mailed to the customer. *Id.* ¶ 58; 180. The user holding the credential may then use the handheld device to conduct transactions.

8

IPR2017-00726
Patent 8,285,648 B2

*Id.* at Abstract.

For example, a wireless user may have an electronic MasterCard credit card stored in the wallet application that is setup for PIN validation. *Id.* ¶ 417. The user can select the electronic card for use in a grocery story. *Id.* A flag in the account record may signal to the credit card management system that an authorization approval cannot be sent back to the retailer until an Over-the-Air (OTA) PIN verification request is completed by the user. *Id.* Upon receipt of a PIN verification request, the user may use the wallet application to enter his PIN in order to authorize the transaction. *Id.* ¶ 410. The card management system validates the PIN to verify that it matches the information in the account record and sends an approval back to the point-of-sale devices. *Id.* ¶ 411.

2. Claims 1, 2, and 5

Petitioner contends the combination of Law and Dua teaches the limitations recited in independent claims 1, 2, and 5. Pet. 16–19, 22–24, 25–46, 48–49. We have reviewed the information provided by Petitioner and determine, based on the record before us and for purposes of this Decision, that Petitioner makes a sufficient showing to support its contention that the combination of Law and Dua teaches the limitations recited in these claims.

With regard to claim 1, Petitioner sufficiently supports its contention that the combination of Law and Dua discloses pre-enrolling the user (step a) comprising assigning to the user a bona fide secure identifier (step a1) and storing the bona fide secure identifier in a database that is accessible to the verifier (step a2). *Id.* at 16–19, 26–29. Specifically, Petitioner sufficiently shows, on the current record, that a person of ordinary skill would understand that for Law's verification method to function, a user would have to be assigned a secure identifier and that Dua explicitly discloses assigning

9

a bona fide secure identifier to a user by generating a PIN and mailing it to the user. *Id.* at 17–18, 27–28. Petitioner also adequately establishes it would have been obvious to a person of ordinary skill, in view of the teachings of Law, to store the secure identifier in a database that is accessible to the verifier. *Id.* at 18, 28–29. Petitioner's assertions rely on the testimony of its witness, Mr. Ivan Zatkovich, which we credit in reaching our determination. *See id.* at 16–19 (citing Ex. 1002).

Further, Petitioner sufficiently establishes, on the current record, that Law discloses pre-enrolling a user communications device (step b) comprising obtaining a user access number (mapped to Law's disclosure of a global unique identifier (GUID)) that can be used to open a communications link (step b1) and storing the user access number in a database accessible to the verifier (step b2). Pet. 29–30. Petitioner also sufficiently establishes Law discloses retrieving the user access number (step c) and opening a communications link between the verifier and the user communications device by using the user access number (step d). *Id.* at 30–31. Petitioner further adequately shows Law's disclosure of an authorization request sent to the user's wireless device discloses sending an identity verification request (IVR) from the verifier to the user through the communications link (step e). *Id.* at 31. And Petitioner sufficiently shows Law's authentication process discloses inputting by the user a putative secure identifier (step f); sending through the communication link a response to the IVR (step g); retrieving the bona fide secure identifier (step h); comparing the putative secure identifier with the bona fide secure identifier (step i); and allowing the transaction to proceed only if the comparison results in a match between the secure identifier and the bona fide secure identifier (step j). *Id.* at 31–34.

10

Additionally, Petitioner presents a sufficient rationale at this stage to support its contention that one of skill in the art would have combined Law and Dua. Petitioner contends the combination would have been obvious because using a technique is obvious if it has been used to improve one device and a person of ordinary skill in the art would recognize it would improve similar devices in the same way. *Id.* at 18 (citing *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 417 (2007)). Petitioner further reasons a person of ordinary skill in the art would have implemented Law's system by using a pre-registered PIN and GUID stored in a database (as taught by Dua) to provide an effective implementation. Pet. 18–19.

Independent claim 2 recites a system with components that perform substantially the same functionality as a subset of limitations recited in the method of claim 1, and independent claim 5 is a method claim that also recites limitations substantially similar to limitations recited in independent claim 1. At this stage of the proceeding, and on the current record, Petitioner sufficiently supports its contention that the combination of Law and Dua teaches the limitations recited in these claims. *See id.* at 34–46, 48–49.

For the foregoing reasons, we are persuaded Petitioner has demonstrated a reasonable likelihood of prevailing in establishing that claims 1, 2, and 5 would have been obvious over Law and Dua.

3. Claims 3, 4, 6–15, and 19

Petitioner contends dependent claims 3, 4, 6–15, and 19 are unpatentable as obvious over Law and Dua. Pet. 19–25, 46–63. We have reviewed the information provided by Petitioner and determine, based on the record before us and for purposes of this Decision, that Petitioner adequately supports its contention that the combination of Law and Dua teaches the

limitations recited in these claims. For example, Petitioner sufficiently establishes that, in view of the teachings of Law and Dua, it would have been obvious to a person of ordinary skill to include the bona fide secure identifier in the IVR, to perform the comparison by local software and include the results in the response, as set forth in claim 8. *Id.* at 20–21, 51–53. Petitioner further sufficiently shows the combination of Law and Dua teaches the steps of authorizing the transaction, as recited in claim 13. *Id.* at 22–24, 58–59. As a third example, Petitioner adequately establishes, on the current record, that Law discloses "comparing the stored device identifier with the device identifier of the user communication device," as recited in claim 19, through its disclosure that the security credentials of the wireless device are verified. *Id.* at 62. Petitioner's assertions for challenged dependent claims 7–11 and 13–15 rely on testimony of Mr. Zatkovich, which we credit. *See e.g., id.* at 19–20, 58 (citing Ex. 1002 ¶¶ 61–75).

Accordingly, we are persuaded that Petitioner has demonstrated a reasonable likelihood of prevailing in establishing that claims 3, 4, 6–15, and 19 would have been obvious over Law and Dua.

*C. Obviousness Over Law, Dua, and Salveson*

Petitioner contends claims 16–18 are unpatentable as obvious under 35 U.S.C. § 103(a) over the combination of Law, Dua, and Salveson. We are persuaded, based on the current record, that Petitioner has demonstrated a reasonable likelihood of prevailing on this ground.

Salveson describes an all-purpose consumer transaction system that allows a consumer to use one card ("universal card") for typical transactions, such as purchases normally charged to credit cards. Ex. 1007, 3:31–36. When the cardholder uses the universal card to conduct a purchase transaction, the user is prompted for some type of verification (e.g., entry of

a PIN). *See id.* at 2:9–16, 8:63–9:16. The user is also prompted for the account type and account identification to be used for the transaction. *See id.* at 2:17–21, 9:21–25.

We have reviewed the information provided by Petitioner and determine, based on the record before us and for purposes of this Decision, that Petitioner adequately supports its contention that the combination of Law, Dua, and Salveson teaches the limitations recited in dependent claims 16–18. For example, Petitioner sufficiently shows Salveson discloses acquiring access information for an account of a user and storing that account information in a database, as set forth in claim 16, through its disclosure of an individual card database that includes a list of identification numbers and codes of vendors that serve the cardholder. Pet. 68. Petitioner also sufficiently establishes Salveson's "universal card" discloses the "proxy transaction code" recited in claim 17. *Id.* at 69. Additionally, Petitioner adequately supports its contentions that the references teach the remaining features recited in the challenged dependent claims. *See id.* at 65–71. Furthermore, for purposes of this decision, Petitioner's stated rationale for combining the universal card of Salveson with the authentication schemes taught by Law and Dua—to address the problem of credit card fraud and to increase convenience—is sufficient rational, at this stage of the proceeding, to support the combination. *See id.* at 67.

We are persuaded Petitioner has demonstrated a reasonable likelihood of prevailing in establishing that claims 16–18 would have been obvious over Law, Dua, and Salveson.

### III. CONCLUSION

Petitioner has demonstrated a reasonable likelihood of prevailing on its challenges to claims 1–19 of the '648 patent as set forth above.

13

IPR2017-00726
Patent 8,285,648 B2

At this stage of the proceeding, we have not made a final determination as to the patentability of any of these challenged claims or the construction of any claim term.

## IV. ORDER

It is

ORDERED that pursuant to 35 U.S.C. § 314(a), an *inter partes* review is hereby instituted on the following grounds:

(1) Obviousness of claims 1–15 and 19 over Law and Dua; and

(2) Obviousness of claims 16–18 over Law, Dua, and Salveson.

FURTHER ORDERED that no review is instituted based on any other grounds of unpatentability; and

FURTHER ORDERED that pursuant to 35 U.S.C. § 314(c) and 37 C.F.R. § 42.4, notice is hereby given of the institution of a trial commencing on the entry date of this decision.

IPR2017-00726
Patent 8,285,648 B2

PETITIONER:

Charles R. Macedo
Mark Berkowitz
AMSTER, ROTHSTEIN & EBENSTEIN LLP
cmacedo@arelaw.com
mberkowitz@arelaw.com



PATENT OWNER:

Steven M. Hoffberg
OSTROLENK FABER LLP
shoffberg@ostrolenk.com

Jean Marc Zimmerman
ZIMMERMAN LAW GROUP
jmz@zimllp.com