# Exhibit 10

No. 2014-1506, -1515

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

INTELLECTUAL VENTURES I LLC AND
INTELLECTUAL VENTURES II LLC,

*Plaintiffs-Appellants*,

*v.*

CAPITAL ONE, NATIONAL ASSOCIATION,
CAPITAL ONE BANK (USA), NATIONAL ASSOCIATION, AND
CAPITAL ONE FINANCIAL CORPORATION,

*Defendants-Appellees.*

Appeals from the United States District Court for the Eastern District of Virginia
in civil action No. 1:13-cv-00740, Judge Anthony J. Trenga

**BRIEF FOR ASKELADDEN L.L.C. AS AMICUS CURIAE
IN SUPPORT OF DEFENDANTS-APPELLEES**

JAMES L. QUARLES III
GREGORY H. LANTIER
RICHARD A. CRUDO
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC  20006
(202) 663-6000

October 21, 2014

# CERTIFICATE OF INTEREST

Counsel for Amicus Askeladden L.L.C. certifies the following:

1.      The full name of every party or amicus represented by me in this appeal is:

Askeladden L.L.C.

2.      The names of the real parties in interest represented by me in this appeal are:

Askeladden L.L.C.

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

Askeladden L.L.C. is a wholly owned subsidiary of The Clearing House Payments Company L.L.C.  No corporation or publicly held company owns 10 percent or more of The Clearing House Payments Company L.L.C.

4.      The names of all law firms and the partners and associates that appeared in the lower tribunal or are expected to appear in this appeal on behalf of Amicus Askeladden L.L.C. are:

WILMER CUTLER PICKERING HALE AND DORR LLP: James L. Quarles III, Gregory H. Lantier, Richard A. Crudo.


*/s/ Gregory H. Lantier*
Gregory H. Lantier

October 21, 2014

- i -

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ........................................................................i

TABLE OF AUTHORITIES .........................................................................iv

STATEMENT OF INTEREST .......................................................................1

ARGUMENT .................................................................................................3

I.    THE PATENTS-IN-SUIT HAVE BEEN INDISCRIMINATELY ASSERTED.................3

      A.    IV Has Asserted the Patents-in-Suit and Similar Patents
            Against Other Defendants. ...............................................................3

      B.    The Patents-In-Suit Claim Concepts that Are Fundamental
            to Basic Internet Use and Personal Finance. .....................................5

II.   PATENTS DIRECTED TOWARD COMPUTER-IMPLEMENTED, FUNDAMENTAL
      ECONOMIC PRACTICES, LIKE THE PATENTS-IN-SUIT, FALL OUTSIDE THE
      SCOPE OF § 101. .......................................................................................8

      A.    Section 101 Has Long Applied to Prevent the Monopolization of
            Fundamental Ideas and Practices. ......................................................8

      B.    The Supreme Court's *Alice Corp.* Decision Confirms that Patents
            Directed Toward Fundamental Financial Practices Are Invalid
            Under § 101. ......................................................................................9

III.  THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT OF
      INVALIDITY UNDER § 101 ........................................................................12

      A.    The Patents Are Directed Toward Patent-Ineligible Ideas.................12

            1.    The patent claims embody abstract ideas on their face. ...........13

            2.    The abstract nature of the patent claims is further
                  evidenced by the manner in which the patents
                  are asserted. .............................................................................14

      B.    The Other Limitations Do Not Transform the Nature of the Claims
            into Patent-Eligible Applications. .....................................................18

IV.    THE TIMING OF DISTRICT COURTS' ADJUDICATION OF INVALIDITY UNDER
       § 101 IS CRITICALLY IMPORTANT. ................................................................. 20

CONCLUSION ......................................................................................................... 23

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Accenture Global Services, GmbH v. Guidewire Software, Inc.*,
  728 F.3d 1336 (Fed. Cir. 2013) .....................................................11, 19

*Alice Corp. v. CLS Bank International*,
  134 S. Ct. 2347 (2014)...................................................................*passim*

*Bancorp Services, LLC v. Sun Life Assurance Co. of Canada (U.S.)*,
  687 F.3d 1266 (Fed. Cir. 2012) ...............................................11, 19–20

*Bilski v. Kappos*,
  561 U.S. 593 (2010).........................................................8, 10, 14, 19

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*,
  489 U.S. 141 (1989)..........................................................................16

*buySAFE, Inc. v. Google, Inc.*,
  765 F.3d 1350 (Fed. Cir. 2014) .....................................................11–12

*Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*,
  -- F. Supp. 2d --, 2014 WL 923280 (E.D. Tex. Jan. 21, 2014)....................18–19

*CLS Bank International v. Alice Corp.*,
  No. 2011-1301 (Fed. Cir. argued Feb. 8, 2013) ................................15

*Cyberfone Systems, LLC v. CNN Interactive Group, Inc.*,
  558 F. App'x 988 (Fed. Cir. 2014) ...................................................22

*CyberSource Corp. v. Retail Decisions, Inc.*,
  654 F.3d 1366 (Fed. Cir. 2011) ...................................................11, 17

*Dealertrack, Inc. v. Huber*,
  674 F.3d 1315 (Fed. Cir. 2012) .........................................................11

*DietGoal Innovations LLC v. Bravo Media LLC*,
  -- F. Supp. 2d --, 2014 WL 3582914 (S.D.N.Y. July 8, 2014)...........................16

*Digitech Image Technologies, LLC v. Electronics for Imaging, Inc.*,
  758 F.3d 1344 (Fed. Cir. 2014) .........................................................13

*Evans Cooling Systems, Inc. v. General Motors Corp.*,
    125 F.3d 1448 (Fed. Cir. 1997) ..........................................................17

*Fort Properties, Inc. v. American Master Lease LLC*,
    671 F.3d 1317 (Fed. Cir. 2012) ..........................................................11

*Funk Brothers Seed Co. v. Kalo Inoculant Co.*,
    333 U.S. 127 (1948)..............................................................................9

*Gottschalk v. Benson*,
    409 U.S. 63 (1972)........................................................................10, 18

*Intellectual Ventures I LLC v. Bank of America Corp.*,
    No. 3:13-cv-00358 (W.D.N.C. June 12, 2013)......................................4

*Intellectual Ventures I LLC v. Capital One Financial Corp.*,
    No. 1:13-cv-00740 (E.D. Va.) .............................................................21

*Intellectual Ventures I, LLC v. Fifth Third Bancorp.*,
    No. 1:13-cv-00378 (S.D. Ohio June 4, 2013)........................................4

*Intellectual Ventures I LLC v. HSBC USA, Inc.*,
    No. 1:13-cv-05386 (S.D.N.Y. Aug. 1, 2013) .......................................4

*Intellectual Ventures I LLC v. Manufacturers & Traders Trust Co.*,
    No. 1:13-cv-01274 (D. Del. July 24, 2013)...........................................4

*Intellectual Ventures I LLC v. PNC Financial Services Group, Inc.*,
    No. 2:13-cv-00740 (W.D. Pa. May 29, 2013) ......................................4

*Le Roy v. Tatham*,
    55 U.S. (14 How.) 156 (1853) ..............................................................8

*Lumen View Technology LLC v. Findthebest.com, Inc.*,
    984 F. Supp. 2d 189 (S.D.N.Y. 2013) ...........................................16, 17

*Mayo Collaborative Services v. Prometheus Laboratories, Inc.*,
    132 S. Ct. 1289 (2012)........................................................10, 11, 19

*MobileMedia Ideas, LLC v. Apple Inc.*,
    907 F. Supp. 2d 570 (D. Del. 2012).....................................................17

*Nassau Precision Casting Co. v. Acushnet Co.*,
   566 F. App'x 933 (Fed. Cir. 2014) .............................................................16–17

*Planet Bingo, LLC v. VKGS LLC*,
   -- F. App'x --, 2014 WL 4195188 (Fed. Cir. Aug. 26, 2014) ...........................12

*Rubber-Tip Pencil Co. v. Howard*,
   87 U.S. (20 Wall.) 498 (1874) ...........................................................................10

*Ultramercial, Inc. v. Hulu, LLC*,
   722 F.3d 1335, 1338 (Fed. Cir. 2013) ..............................................................21

*Vanmoor v. Wal-Mart Stores, Inc.*,
   201 F.3d 1363 (Fed. Cir. 2000) .........................................................................17

## STATUTES

35 U.S.C. § 100(b) .....................................................................................................8

35 U.S.C. § 101 .................................................................................................*passim*

## OTHER MATERIALS

Brief for The Clearing House Association, L.L.C. as
   Amicus Curiae Supporting Appellees, *Ultramercial, LLC v. Hulu, LLC*,
   No. 10-1544 (Fed. Cir. Sept. 4, 2014) ...............................................................23

*Gerald B. Halt Jr.*, Volpe & Koenig P.C., http://vklaw.com/people/gerald-b-
   halt-jr-2/ ..............................................................................................................7

Joe Mullin, *For World's Biggest Troll, First Patent Case Ends up in Tatters*,
   Ars Technica (Apr. 21, 2014), http://arstechnica.com/tech-policy/2014/
   04/for-worlds-biggest-troll-first-patent-case-ends-up-in-tatters/ ........................7

U.S. Patent Office, Patent Assignment Abstract of Title, '137 Patent .....................7

U.S. Patent Office, Patent Assignment Abstract of Title, '382 Patent .....................7

# STATEMENT OF INTEREST[1]

Askeladden L.L.C. is an education, information, and advocacy organization whose goal is to improve the understanding, use, and reliability of patents in financial services and related industries.  Askeladden seeks to improve the U.S. patent system by, among other things, submitting amicus curiae briefs on important legal issues.[2]

Askeladden is a wholly owned subsidiary of The Clearing House Payments Company L.L.C.  Established in 1853, The Clearing House is the oldest banking association and payments company in the United States.  It is owned by the world's largest commercial banks, which collectively hold more than half of all deposits in the United States and employ more than one million people in the United States and more than two million people worldwide.  The Clearing House clears almost $2 trillion each day, representing nearly half of all automated clearing house, funds transfer, and check-image payments made in the United States.  Its affiliate, The Clearing House Association L.L.C., is a nonpartisan advocacy organization that represents the interests of its owner banks by promoting and developing policies to support a safe, sound, and competitive banking system.

---

[1]      No party, and no person other than Askeladden L.L.C., or its members, contributed toward the preparation or submission of this brief.

[2]      Both Appellants and Appellees have consented to the filing of this brief.

Askeladden recognizes that a strong patent system is vital to continued innovation in the United States, and many member banks hold patents of their own related to financial products and services.  But invalid patents directed toward computer-aided, fundamental financial practices undermine real innovation and are easily abused.  Widespread exploitation of such patents has led to tremendous strain on party and judicial resources, as demonstrated in this and related cases, and contravenes the spirit, if not the letter, of the patent laws.

Robust application of 35 U.S.C. § 101, as commanded by recent Supreme Court precedent, is critical to ensuring that the U.S. economy is not unduly encumbered by low-quality patents purporting to claim foundational ideas, and that the patent system rewards actual innovation with appropriately tailored patent protection.  The district court in this case correctly held that two of the asserted patents claim subject matter falling outside the scope of § 101.  Askeladden respectfully urges this Court to affirm that judgment.[3]

More broadly, Askeladden urges the Court to encourage district courts to hold a patentee to its infringement theories and assertion activity when evaluating invalidity under § 101, including at the motion to dismiss stage.  Appellants in this

---

[3]     This brief addresses only the district court's judgment of invalidity based on § 101.  It does not address the district court's additional bases for granting summary judgment to Appellees, nor the district court's dismissal of certain of Appellees' counterclaims and affirmative defenses.

case have undertaken a litigation campaign against numerous, disparate defendants, predicated only on the ground that the defendants provide financial services using computer technology. This litigation activity underscores that the patents claim highly generalized, abstract concepts, and implicates the fundamental preemption concern that drives the § 101 analysis.

Additionally, in cases where no specific factual or claim construction disputes underlie the § 101 inquiry, this Court should encourage district courts to address § 101 early in a case. Invalidating patents that are plainly directed toward unpatentable subject matter at the early stages of litigation allows defendants to avoid incurring significant expenses associated with discovery and claim construction, which are oftentimes unnecessary for purposes of the § 101 analysis, and would help deter abusive litigation tactics involving such patents.

## ARGUMENT

## I.   THE PATENTS-IN-SUIT HAVE BEEN INDISCRIMINATELY ASSERTED.

### A.   IV Has Asserted the Patents-in-Suit and Similar Patents Against Other Defendants.

Appellants Intellectual Ventures I LLC and Intellectual Ventures II LLC are litigation entities owned by Intellectual Ventures Management, LLC ("IV"). Since May 2013, IV has filed sixteen lawsuits against banks, including Appellees (collectively, "Capital One"), asserting several combinations of fourteen patents, all of which relate to online and computer-based financial services and data

protection.  Two of the patents-in-suit, U.S. Patent Nos. 7,603,382 ("'382 patent") and 8,083,137 ("'137 patent"), are currently asserted against five other banks.[4]

IV has asserted these patents against online personal investment and personal finance services, with little regard as to how those computerized services are implemented.  The complaints employ the same boilerplate language against each of the defendants, asserting infringement merely because the defendant "provides online banking services and other systems and services via electronic means."  A0006 ¶ 21.[5]  No supporting material is cited in the complaints other than the defendants' websites, nor is there any suggestion that the manner in which each defendant is believed to implement the accused services is the basis for the infringement allegation.  The complaints' infringement claims are based on nothing more than the fact that defendants offer various investment and financial services over the Internet.

---

[4]     *See Intellectual Ventures I LLC v. PNC Fin. Servs. Grp., Inc.*, No. 2:13-cv-00740 (W.D. Pa. May 29, 2013); *Intellectual Ventures I LLC v. Mfrs. & Traders Trust Co.*, No. 1:13-cv-01274 (D. Del. July 24, 2013); *Intellectual Ventures I LLC v. Bank of Am. Corp.*, No. 3:13-cv-00358 (W.D.N.C. June 12, 2013); *Intellectual Ventures I, LLC v. Fifth Third Bancorp.*, No. 1:13-cv-00378 (S.D. Ohio June 4, 2013); *Intellectual Ventures I LLC v. HSBC USA, Inc.*, No. 1:13-cv-05386 (S.D.N.Y. Aug. 1, 2013).  This brief addresses only the '382 and '137 patents, and does not address the third patent-in-suit, U.S. Patent No. 7,260,587.

[5]     *See also* Complaint ¶ 19, *PNC*, No. 2:13-cv-00740; Complaint ¶ 19, *M&T*, No. 1:13-cv-01274; Complaint ¶ 20, *Bank of Am. Corp.*, No. 3:13-cv-00358; Complaint ¶ 20, *Fifth Third Bancorp.*, No. 1:13-cv-00378; Complaint ¶ 6, *HSBC*, No. 1:13-cv-05386.

## B.  The Patents-In-Suit Claim Concepts that Are Fundamental to Basic Internet Use and Personal Finance.

The '382 and '137 patents claim concepts that are fundamental to basic Internet use and personal finance, which have long been incorporated by banks in their online financial service tools.  The '382 patent claims the concept of tailoring communications based on information specific to a user viewing a website.  *See* A0044, claim 1; A0041, 2:3–6.  The purported invention selects a set of data that most closely aligns with a user's profile and web-browsing history, and displays that data on a webpage for the user to see.  A0043, 5:39–6:38.  Asserted independent claim 1 recites a generic system for effectuating this concept[6]:

> A system for providing web pages accessed from a web site in a manner which presents the web pages tailored to an individual user, comprising:
>
> an interactive interface configured to provide dynamic web site navigation data to the user, the interactive interface comprising:
>
> a display depicting portions of the web site visited by the user as a function of the web site navigation data; and
>
> a display depicting portions of the web site visited by the user as a function of the user's personal characteristics.

A0044, claim 1.

---

[6]    IV asserts claims 1–5, 16–17, and 19–22 of the '382 patent against Capital One.  But, as the district court found, independent claims 1 and 21 are representative of the asserted system and method claims, respectively.  *See* A0781–82.

The '137 patent claims a concept that is fundamental to the basic practice of budgeting—i.e., helping credit card users with financial planning so as to enable them "to resist the temptation of purchasing a product spontaneously." A0067, 1:24–25. The user's credit card information is conveyed from a point-of-sale device to a processor that categorizes the purchases being made and stores those purchase amounts and categories in a database. A0068, 3:47–52. If the amounts in a category exceed a pre-set limit, the user is required to give specific approval for a particular purchase. *Id.* at 4:1–5. Asserted independent claim 5 recites a method for communicating the pre-set limit to the user when providing a transaction summary:

> A method comprising:
>
> > storing, in a database, a profile keyed to a user identity and containing one or more user-selected categories to track transactions associated with said user identity, wherein individual user-selected categories include a user pre-set limit; and
> >
> > causing communication, over a communication medium and to a receiving device, of transaction summary data in the database for at least one of the one or more user selected categories, said transaction summary data containing said at least one user-selected category's user pre-set limits.

A0071, claim 5.

Neither of these patents originated with operating companies, nor even with software programmers or financial services personnel. Indeed, the '382 patent did not even originate from an inventor having training or experience with the claimed

technology.  Instead, the patent's inventor is a licensed patent attorney[7] who assisted in the prosecution of the patent application, and originally assigned the patent to his own law firm.  The patent was acquired by IV in May 2013—less than one month before suit was filed against Capital One—when IV merged with a patent licensing company called Roscoe Technologies LLC.  *See* U.S. Patent Office, Patent Assignment Abstract of Title, '382 Patent.

The '137 patent was acquired under similar circumstances when IV formally merged with its patent licensing shell company, Niaco Data Management, II, L.L.C., in May 2013.  *See* U.S. Patent Office, Patent Assignment Abstract of Title, '137 Patent.  The inventor, Mary C. Tannenbaum, and her husband, also a patent attorney, had a role in prosecuting the patent application.  Collectively, the Tannenbaums are named inventors of more than two dozen issued U.S. patents, many of which were assigned to their own holding company, Union Beach, L.P.[8] *See* Joe Mullin, *For World's Biggest Troll, First Patent Case Ends up in Tatters*, Ars Technica (Apr. 21, 2014), http://arstechnica.com/tech-policy/2014/04/for-worlds-biggest-troll-first-patent-case-ends-up-in-tatters/.

---

[7]     *See Gerald B. Halt Jr.*, Volpe & Koenig P.C., http://vklaw.com/people/gerald-b-halt-jr-2/ (last visited Oct. 18, 2014).

[8]     The '137 patent application was originally assigned to Union Beach before being subsequently assigned to Niaco Data Management.

## II.   PATENTS DIRECTED TOWARD COMPUTER-IMPLEMENTED, FUNDAMENTAL ECONOMIC PRACTICES, LIKE THE PATENTS-IN-SUIT, FALL OUTSIDE THE SCOPE OF § 101.

### A.   Section 101 Has Long Applied to Prevent the Monopolization of Fundamental Ideas and Practices.

Under Section 101 of the Patent Act, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. A "process," in turn, is defined as a "process, art or method, and includes a new use of a known process, machine, manufacture, composition of matter, or material." *Id.* § 100(b).

For more than 160 years, the Supreme Court has interpreted § 101 as a substantive provision that prevents the monopolization of abstract ideas, which are "the basic tools of scientific and technological work." *Bilski v. Kappos*, 561 U.S. 593, 649 (2010) (internal quotation marks omitted); *see also Le Roy v. Tatham*, 55 U.S. (14 How.) 156, 175 (1853) ("A principle, in the abstract, is a fundamental truth; an original cause; a motive; these cannot be patented, as no one can claim in either of them an exclusive right."). The primary concern that drives this principle is one of preemption. *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014). Monopolization of such ideas would "tend to impede innovation more than it would tend to promote it, thereby thwarting the primary object of the patent laws." *Id.* (internal quotation marks omitted). Thus, fundamental "building blocks of

human ingenuity," *id.* (internal quotation marks omitted), are "free to all men and reserved exclusively to none," *Funk Bros. Seed Co. v. Kalo Inoculant Co.*, 333 U.S. 127, 130 (1948).

**B.    The Supreme Court's *Alice Corp.* Decision Confirms that Patents Directed Toward Fundamental Financial Practices Are Invalid Under § 101.**

The Supreme Court reiterated these principles in its most recent decision addressing § 101.  In *Alice Corp. v. CLS Bank International*, the Court raised the bar for establishing patent eligibility for computer-implemented inventions, unanimously affirming the judgment of this Court invalidating claims directed toward computer-based schemes to manage "settlement risk" in financial transactions.  The Court found that the basic idea of "intermediated settlement," as claimed in the patent, "is a fundamental economic practice long prevalent in our system of commerce" that cannot be exclusively claimed.  *Alice Corp.*, 134 S. Ct. at 2356 (internal quotation marks omitted).  The Court also noted that in light of "the ubiquity of computers," limiting a claim covering an abstract concept to a "wholly generic computer implementation" is insufficient to transform the idea into a patent-eligible invention.  *Id.* at 2358.  The decision therefore serves as a clear mandate for district courts to invalidate patents that merely claim fundamental economic practices implemented on a computer.

*Alice Corp.* articulates a two-step framework for distinguishing patents that claim ineligible abstract ideas from those that claim eligible applications of those ideas. First, courts must determine whether the claim at issue is directed to a patent-ineligible concept, because it is well established that while inventions employing ideas are patentable, the underlying ideas themselves are not. *See Gottschalk v. Benson*, 409 U.S. 63, 71 (1972) ("It is conceded that one may not patent an idea."); *Rubber-Tip Pencil Co. v. Howard*, 87 U.S. (20 Wall.) 498, 507 (1874) ("An idea of itself is not patentable, but a new device by which it may be made practically useful is.").

If the claim is in fact directed to an abstract idea, courts must next search for the "inventive concept" in the claim—i.e., "an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Alice Corp.*, 134 S. Ct. at 2355 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012)). Supreme Court precedent makes clear that claims must do "significantly more" than recite an abstract idea or mental process to be patent eligible. *Mayo*, 132 S. Ct. at 1294. A patentee cannot circumvent the prohibition on patenting abstract ideas by limiting the idea to "a particular technological environment," nor by adding "insignificant postsolution activity," *Bilski*, 561 U.S. at 610–11 (internal quotation marks omitted), or "well-understood, routine,

conventional" features, *Mayo*, 132 S. Ct. at 1297–98.  Thus, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention."  *Alice Corp.*, 134 S. Ct. at 2358.

This Court has held similarly even before *Alice Corp.*, invalidating several patents directed toward computer-implemented ideas.  *See, e.g.*, *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336 (Fed. Cir. 2013) (computer program for handling insurance-related tasks), *cert. denied*, 134 S. Ct. 2871 (2014); *Bancorp Servs., LLC v. Sun Life Assurance Co. of Can. (U.S.)*, 687 F.3d 1266 (Fed. Cir. 2012) (computer system for administering and tracking the value of separate-account life insurance policies), *cert. denied*, 134 S. Ct. 2870 (2014); *Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317 (Fed. Cir. 2012) (computer-implemented method of creating tax-deferred real estate instrument using a computer to generate a plurality of deed shares); *Dealertrack, Inc. v. Huber*, 674 F.3d 1315 (Fed. Cir. 2012) (computer-aided method of managing a credit application); *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366 (Fed. Cir. 2011) (process for detecting online credit card fraud).

In each of these cases, this Court found that the claims reduced to mere known, conventional methods of conducting business that could have been performed without a computer.  These decisions are undoubtedly correct in light of the Supreme Court's intervening *Alice Corp.* decision.  *See, e.g.*, *buySAFE, Inc. v.*

*Google, Inc.*, 765 F.3d 1350 (Fed. Cir. 2014) (invalidating after *Alice Corp.* patent directed toward machine-readable media encoded to perform steps for guaranteeing a party's performance of its online transaction); *Planet Bingo, LLC v. VKGS LLC*, -- F. App'x --, 2014 WL 4195188 (Fed. Cir. Aug. 26, 2014) (invalidating after *Alice Corp.* patent directed toward computer-aided management of bingo games).

## III. THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT OF INVALIDITY UNDER § 101.

The district court's decision invalidating all asserted claims of the patents-in-suit under § 101 was correct in view of *Alice Corp.*, and Askeladden urges the Court to affirm that decision.

### A. The Patents Are Directed Toward Patent-Ineligible Ideas.

With regard to the first inquiry commanded by *Alice Corp.*, the district court appropriately found that the patents are directed to abstract ideas that are not eligible for patent protection. The purported inventions embody nothing more than well-known concepts that are fundamental to modern commercial transactions.[9]

---

[9]     Even Appellants appear to acknowledges at some level that these patents are directed to abstract ideas. IV repeatedly refers to the patents in its opening brief as embodying "concepts" rather than technological innovations. *See, e.g.*, IV Br. 23, 25, 27, 30, 34.

### 1.   The patent claims embody abstract ideas on their face.

The abstract nature of the patents at issue is plainly evident from the face of the claims.  Asserted independent claim 1 of the '382 patent, for example, recites only the abstract idea of tailoring an information provider's webpage based on data about a particular user.  But the patent itself explains that it was well known to provide a user's personal characteristics to a webpage.  In particular, the specification describes how prior art webpages allowed users to create profiles of their personal characteristics to be used with a "particular web page."  A0042, 4:18–20 ("[S]everal current Web pages permit a user to create a profile for that particular Web page[] . . . .").  The patent also makes clear that using website navigation data to tailor webpages was well known at the time the patent was filed.  *See id.* at 3:22–27 (noting that "[m]ost Web pages" allows "the information user [to] gain[] access to additional tiers of information" as the user "inputs information and makes selections").[10]  Although the claims of the '382 patent require that webpages be tailored to the user as a "function" of the website navigation and user data, they do not specify what this "function" is or how the underlying idea is

---

[10]     Claim 21 recites a method for customizing a webpage based on information in the user's profile, which is uploaded to the website.  But as this Court recently confirmed, "[d]ata in its ethereal, non-physical form is simply information that does not fall under any of the categories of eligible subject matter under section 101."  *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1349–50 (Fed. Cir. 2014) (finding claim directed to "profile for describing properties of a device" invalid).

applied.  The district court therefore correctly concluded that the patent claims the abstract idea of "determining what would appeal to a particular user from a particular website."  A0785.

Asserted independent claim 5 of the '137 patent recites the idea of storing information about a user's preferences for a credit limit and communicating that limit to the user when providing a transaction summary.  This idea of tracking spending activity is central to the general concept of budgeting, an "economic practice long prevalent in our system of commerce."  *Alice Corp.*, 134 S. Ct. at 2356 (internal quotation marks omitted).  There is no meaningful distinction between the concepts of intermediated settlement in *Alice Corp.* and risk hedging in *Bilski*, and the concept of budgeting here.  As the district court correctly noted, the '137 patent claims are directed to nothing more than "monitoring expenditures according to preset limits."  A0785.

## 2.    The abstract nature of the patent claims is further evidenced by the manner in which the patents are asserted.

The abstract nature of the patents at issue is also confirmed by their preemptive reach.  The patents are so broad as to lend themselves to being indiscriminately asserted against multiple defendants' products.  According to the complaints, any entity offering "online banking services and other systems and services via electronic means" infringes the patents.  A0006 ¶ 21.  But ***all*** banks offer these services, and therefore, according to IV, ***no*** bank can participate in e-

commerce without infringing the patents.  *See* Transcript of Oral Argument, *CLS Bank Int'l v. Alice Corp.*, No. 2011-1301 (Fed. Cir. argued Feb. 8, 2013) (en banc) (Dyk, J.) (suggesting that patent is invalid because "[t]here is no other way to do that method . . . described without infringing [the] claim").

Although IV argues on appeal that the '382 patent poses no risk of preemption because "[i]t does not cover all ways of deploying web pages to users, or even all ways of deploying customized content to users," IV Br. 24, the patent claims are nevertheless broad enough to have been asserted against Capital One and several other defendants merely because they operate websites that allegedly tailor content based on information known about the user.  Thus, the broad assertion of the '382 patent against the defendants' websites effectively preempts the concept of personalized webpage customization, an idea employed by virtually every entity within the financial services industry, and beyond.

Similarly, IV now argues that the '137 patent covers only "those computer systems or methods that use a specific type of database (containing 'a profile keyed to a user identity') that has specific information ('user-selected categories' and 'pre-set limits'), and that automatically track and communicate specific summary data ('containing the pre-set limit')."  *Id.* at 33.  But these alleged distinctions lack any actual significance from a preemption standpoint.  The patent claims are broad enough to have been asserted against Capital One and several other defendants

- 15 -

merely because they operate websites that allegedly allow users to track spending by category. Thus, the abstract nature of the '137 budgeting patent is also clearly evidenced by the manner in which it has been asserted.

Indiscriminate assertion of patents, as here, undermines the "strong federal policy favoring free competition in ideas which do not merit patent protection," *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 168 (1989) (internal quotation marks omitted), and presents a telltale sign that the patents preempt practices and concepts long employed within the industry, *see Lumen View Tech. LLC v. Findthebest.com, Inc.*, 984 F. Supp. 2d 189 (S.D.N.Y. 2013) (invalidating under § 101 patent asserted by plaintiff against numerous defendants); *DietGoal Innovations LLC v. Bravo Media LLC*, -- F. Supp. 2d --, 2014 WL 3582914 (S.D.N.Y. July 8, 2014) (same). A patentee cannot escape this conclusion by later arguing (after millions of dollars in attorney fees have been expended) that the claims are directed to particular implementations in order to survive § 101 scrutiny. *Cf. Nassau Precision Casting Co. v. Acushnet Co.*, 566 F. App'x 933, 938 (Fed. Cir. 2014) (finding that plaintiff "may be held to its insistence on its broader construction when it comes to assessing invalidity," because "[a] patent may not,

like a 'nose of wax,' be twisted one way to avoid [invalidity] and another to find infringement" (internal quotation marks omitted)).[11]

This preemption concern is precisely what drives the § 101 analysis, *see Alice Corp.*, 134 S. Ct. at 2356–58,[12] and should feature prominently in cases in which a plaintiff broadly asserts that its patents are infringed by every player in an industry.

---

[11]   It is appropriate for courts to consider plaintiffs' assertion activity in evaluating motions to dismiss and motions for summary judgment. Although defendants bear the burden of proving that patents are invalid, they may rely on plaintiffs' infringement theories to meet that burden. *Cf. Vanmoor v. Wal-Mart Stores, Inc.*, 201 F.3d 1363, 1366–67 (Fed. Cir. 2000) (affirming district court's invalidity finding based on defendants' sale of accused products before the critical date, where defendants conceded that plaintiff's infringement allegations were correct for purposes of summary judgment); *Evans Cooling Sys., Inc. v. Gen. Motors Corp.*, 125 F.3d 1448, 1451 (Fed. Cir. 1997) (same); *MobileMedia Ideas, LLC v. Apple Inc.*, 907 F. Supp. 2d 570, 589 (D. Del. 2012) (considering plaintiff's infringement position when deciding summary judgment motion of validity).

[12]   IV argues that preemption is of no concern because the patents-in-suit are limited to "a particular type of content delivery," i.e., the Internet. IV Br. 23. But as the Supreme Court and this Court have recognized numerous times, limiting abstract concepts to their performance over the Internet does not mitigate the preemption concern. Given "the ubiquity of computers" and the Internet, there is no distinction between preemption of a financial practice, and preemption of the application of that practice using a computer or the Internet. *See Alice Corp.*, 134 S. Ct. at 2358; *see also CyberSource*, 654 F.3d 1366 at 1370 (rejecting argument that process for detecting online credit card fraud would not be necessary or possible without the Internet). To hold otherwise "would lead to the absurd result of allowing the patenting the [sic] computerized use of even the most basic abstract ideas," which would "have enormous preemptive effect." *Lumen View*, 984 F. Supp. 2d at 202 (invalidating patent directed toward computer-implemented method for facilitating bilateral decision-making in light of "the ubiquity of computers in modern life").

- 17 -

**B.** **The Other Limitations Do Not Transform the Nature of the Claims into Patent-Eligible Applications.**

With regard to the second inquiry commanded by *Alice Corp.*, the district court correctly found that the patents recite only "conventional computer components, such as a database and processors, operating in a conventional manner." A0784. The '382 patent claims clearly fail to transform the idea of customizing a communication based on information known about the audience into a patent-eligible invention. The idea embodied in claim 1 is not limited to a particular application, but is instead "carried out in existing computers long in use," using conventional computing components and conventional website features, working in their conventional manner. *See Benson*, 409 U.S. at 67.

For example, the patent itself explains that "websites," "webpages," "interactive interfaces," and "displays" were well known and conventional. *See* A0041, 1:51–54 ("A perusal of home pages current existing on the World Wide Web confirms that home pages are currently hybrid of the business-to-business Yellow Pages® directory and a television commercial."); *id.* at 2:33–34 ("FIG. 2 is a block diagram of the web page structures according to the prior art."). And "[l]imiting the presentation of customization options to the user interface of a computer system provides a token and conventional, post-solution limitation that is insufficient to render the claim patent eligible." *Clear with Computers, LLC v.*

*Dick's Sporting Goods, Inc.*, -- F. Supp. 2d --, 2014 WL 923280, at *7 (E.D. Tex. Jan. 21, 2014) (citing *Bilski*, 561 U.S. at 610–12).

Thus, claim 1 adds no limitation to the abstract idea other than "well-understood, routine, conventional" features. *Mayo*, 132 S. Ct. at 1298. Even considered "as an ordered combination," the computing components of claim 1 add nothing that is not already present when the limitations are considered separately. *Alice Corp.*, 134 S. Ct. at 2359. Viewed as a whole, the claim simply recites the concept of customized webpages using a generic computer and the Internet.[13]

The asserted claims of the '137 patent likewise lack meaningful limitations that give rise to an inventive concept. The claim limitations—such as a "database" and a "communication medium"—add nothing more than generic computing components to the abstract idea of tracking spending. *See, e.g.*, A0071, claim 5. But merely generating and manipulating information stored in a database is insufficient to transform the underlying idea into a patent-eligible invention. *See Accenture*, 728 F.3d at 1343–44; *see also Bancorp Servs.*, 687 F.3d at 1279 (noting

---

[13]     Asserted independent claims 16 and 21 are similarly deficient. Claim 16 is a method claim with limitations that mirror the system of claim 1. Merely writing these limitations as part of a method claim does not make them patentable under § 101. *See Alice Corp.*, 134 S. Ct. at 2360 ("[T]he system claims are no different from the method claims in substance. The method claims recite the abstract idea implemented on a generic computer; the system claims recite a handful of generic computer components configured to implement the same idea."); *Accenture*, 728 F.3d at 1344 (holding that analogous system and method claims should "rise or fall together"). Claim 21 is nearly identical to claim 16, but requires that "data streams" be displayed on the interactive interface.

that there is no inventive concept where "the claims merely employ computers to track[] . . . a life insurance policy"). And communicating over an unspecified medium such as the Internet is token post-solution activity that does not save the patentability of the claim. *See Alice Corp.*, 134 S. Ct. at 2360 ("Nearly every computer will include a 'communications controller' . . . .").

Even when considered as an "ordered combination," these generic computing components perform only the conventional functions of storing and communicating data. As the district court noted, the claims consist "of nothing more tha[n] the entry of data into a computer database, the breakdown and organization of that entered data according to some criteria, . . . and the transmission of information derived from that entered data to a computer user, all through the user of conventional computer components." A0784.

Neither patent claims any specific feature that represents a meaningful limitation on the scope of the claims. Thus, the patents-in-suit are plainly invalid under the framework articulated by the Supreme Court in *Alice Corp.*

## IV. THE TIMING OF DISTRICT COURTS' ADJUDICATION OF INVALIDITY UNDER § 101 IS CRITICALLY IMPORTANT.

Although Askeladden supports the district court's order granting summary judgment of invalidity, and urges this Court to affirm that ruling, Askeladden notes that the district court could have decided the issue much earlier in the case. In July 2013—just one month after the lawsuit was commenced—Capital One filed a

motion to dismiss under Rule 12(b)(6), challenging all the claims of the '382 and '137 patents under § 101.  Despite finding that the "patents certainly raise . . . significant issues as to patentability," the court denied that motion, concluding that dismissal under § 101 on a Rule 12(b)(6) motion "would be the exception, not the rule."  2013-08-28 Bench Op. 58:21–59:6, *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, No. 1:13-cv-00740 (E.D. Va.), *available at* Dkt. 60.

The court did not address the merits of Capital One's § 101 challenges until April 2014, when it granted Capital One's motion for summary judgment.  During the intervening eight months, however, Capital One incurred significant expenses associated with discovery, motions practice, and claim construction.[14]  Yet most of these expenses were unnecessary in light of the court's ruling.  And meanwhile, the patents-in-suit were asserted against other defendants.

The district court was apparently dissuaded from ruling on the merits of § 101 early in the case based on a panel opinion of this Court in *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335 (Fed. Cir. 2013), *vacated sub nom. WildTangent, Inc. v. Ultramercial, LLC*, 134 S. Ct. 2870 (2014), and concluded that dismissal on a Rule 12(b)(6) motion "should occur only in rare instances and where the only plausible reading of the patent must be that there's clear and convincing evidence

---

[14]     The procedural schedule that the district court adopted in this case was much shorter than average.  In many cases, summary judgment motions are not addressed until years after the motion to dismiss stage.

of ineligibility." 2013-08-28 Bench Op. 59:1–6. The court also stated that "issues of claim construction . . . may bear on" the issue of patentability. *Id.* at 59:7–15. The district court's summary judgment opinion, however, does not rely on any of the district court's claim constructions. To the contrary, the summary judgment opinion expressly acknowledges that claim construction was irrelevant to the court's holding, and that the patents are directed to abstract ideas "however the claim terms may be construed." A0784.

Thus, in this case, the invalidity of the patents under § 101 was evident from the face of the patents and should have led the court to rule on these issues at the motion to dismiss stage. Although this Court has recently noted that "[t]here is no requirement that [a] district court engage in claim construction before deciding § 101 eligibility," *Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 F. App'x 988, 991 n.1 (Fed. Cir. 2014), the Court should emphasize the importance of addressing § 101 early in a case to invalidate patents that are plainly invalid and asserted in a manner that evidences the same.

This is not a trivial point, as the timing of a § 101 determination has a tremendous impact on the cost of litigation. More than half of the cost of defending patent litigation is incurred during discovery, and failure to resolve § 101 questions on the pleadings places pressure on defendants to settle. Further, significant party and judicial resources can be wasted engaging in claim

construction briefing and prior art searching and analysis in cases where the patent could be invalidated based on § 101 at the outset, such as in the present case. *See generally* Brief for The Clearing House Association, L.L.C. as Amicus Curiae Supporting Appellees, *Ultramercial, LLC v. Hulu, LLC*, No. 10-1544 (Fed. Cir. Sept. 4, 2014). District courts should be cognizant of these costs and should be encouraged to adjudicate the potentially dispositive § 101 issue as early in litigation as possible.

## CONCLUSION

The Court should reaffirm that a claim directed to a routine and conventional use of a general-purpose computer to implement an otherwise abstract process is not patent eligible, thereby affirming the district court's grant of summary judgment in favor of Capital One, and that such determinations may be—and indeed in many circumstances should be—made at the outset of a case. The patents here disclose fundamental practices employed throughout the financial services industry, and the widespread assertion of such patents threatens to preempt the use of these practices.

Respectfully submitted,

*/s/ Gregory H. Lantier*
James L. Quarles III
Gregory H. Lantier
Richard A. Crudo
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC  20006
(202) 663-6000

*Counsel for Amicus Curiae*

October 21, 2014

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of October 2014, I electronically filed the foregoing Brief for Askeladden L.L.C. as Amicus Curiae in Support of Defendants-Appellees with the Clerk of Court and caused a copy to be served on counsel of record using the CM/ECF System.

/s/ Gregory H. Lantier
Gregory H. Lantier

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), the undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 29(d) and 32(a)(7)(B), and Circuit Rule 32(b).

1.     Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(a)(7)(B), the brief contains 5,601 words, and is less than one-half the maximum length authorized for a party's principal motion under the Federal Circuit Rules and Federal Rules of Appellate Procedure.  *See* Fed. R. App. Proc. 29(d).

2.     The brief has been prepared in proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.  As permitted by Fed. R. App. P. 32(a)(7)(C), the undersigned has relied upon the word count feature of this word-processing system in preparing this certificate.


                                        */s/ Gregory H. Lantier*
                                        Gregory H. Lantier

October 21, 2014