# Exhibit 18



# H.R. 1260, the Patent Reform Act: Creating Jobs and Reducing Unjustified Lawsuits from Non-Practicing Entities

Patent Reform is needed in order to protect U.S. inventors and innovators from unjustified lawsuits and to allow them to continue to make products and services that will help the U.S. economy grow and create much needed jobs.  CPF calls on the House to pass the Patent Reform Act of 2009 (H.R. 1260), including the fair damages reform provisions.

**Unreasonable Royalties Divert Capital from R&D, Slow Innovation and Job Creation**
As the House Judiciary Committee said in its 2007 Committee report on the Patent Reform Act of 2007, litigation practices under the current judicial system with no damages standard **"often produce a royalty award substantially in excess of a reasonable royalty.  This cycle is harmful to our overall economy and especially damaging to technology innovation[1]."** The Committee correctly concluded that there was a **"growing problem [of excessive damage awards that] can be attributed to the lack of guidance provided to and by the courts in calculating reasonable royalty damages.[2]"**

This problem is more urgent today than it was in 2007 for two reasons.  First, the situation is getting worse and second, our economy is in poorer shape than it was two years ago.

Testimony indicates that the number of companies receiving royalty demands is rising dramatically as is the amount of money diverted away from research and development and other productive purposes and into litigation.

- Supporting this premise, Professor John Thomas from Georgetown University Law Center, explained to the House Judiciary Committee on April 30, 2009 that **"Excessive damages rewards effectively allow inventors to obtain proprietary interests in products they have not invented, promote patent speculation and litigation, and place unreasonable royalty burdens upon producers of high technology products. Such consequences may ultimately slow the process of technological innovation and dissemination that the patent system in intended to foster."[3]**

- Professor Mark Lemley from Stanford Law School stated at the Senate Judiciary Committee hearing in March 2009, that **"a number of patent rules have given those plaintiffs [non-practicing entities] unfair advantages in litigation, allowing them to enforce dubious patents in favorable jurisdictions and to use the rules of patent remedies to obtain more money than their inventions are actually worth."[4]**

**Jobs, Economic Activity Will Result from Reform**
The second reason the problem is more critical than two years ago is because our economy is much weaker than in 2007.  We urgently need to unleash all of the innovative potential of our technology

---

[1] H.R. Rep. 110-314, at 26.
[2] H.R. Rep. 110-314, at 27.
[3] Testimony of John R. Thomas before the House Judiciary Committee (April 30, 2009).
[4] Testimony of Mark A. Lemley before the Senate Judiciary Committee (March 10, 2009).

companies to create new products, which will lead to more jobs and more economic growth.  A recent report by economist Dr. Everett Ehrlich predicted that if the Patent Reform Act of 2009, as introduced, would create 100,000 new jobs over the next five years.  A damages standard that allows misuse of the legal system, and the transfer of billions of dollars from R&D and into legal fees and settlements, simply cannot be tolerated.

**Litigation Spurred by NPEs Increased in 2009**
H.R. 1260 needs to address these issues and include fair damages provisions to protect innovators and inventors, to foster research and development that will lead to job creation, and to minimize the impact of non-practicing entities that slow innovation and economic growth.  A sample of press reports regarding cases filed just during the last four months (January 2009 to April 2009) provides vivid confirmation of the NPEs' strategy of litigation over innovation. None of the cases on this list of suits below represents litigation between competitors.

- *Odom v. Attachmate Corporation et al.,* a suit against 28 software companies alleging infringement of a patent relating to the manipulation of software tool groups;[5]
- *Actus, LLC v. Bank of America Corp. et al.,* a suit against 20 large companies that offer gift cards and online payment options alleging infringement of four patents relating to electronic payment systems;[6]
- *Information Protection and Authentication of Texas, LLC v. Symantec Corp. et al.,* a suit against 22 large software companies alleging infringement of the plaintiff's very general patents relating to security scanning;[7] and
- Linksmart Wireless Technology LLC v. Six Continents Hotels Inc., et al., in this and related cases the plaintiff has sued more than 25 companies, including hotel chains, Wi-Fi providers, and companies that provide wireless networks to their customers, alleging infringement of its patent relating to Wi-Fi technology.[8]

As these examples show, although technology companies are a consistent target, other companies that use technology are also targets of NPEs.[9]

**Conclusion**
With H.R. 1260, the House Judiciary Committee has an opportunity to address the inherent challenges presented to American companies operating under a patent system that hasn't been updated since 1952. American innovation is hampered by the growing problem of unjustified patent litigation stemming from non-practicing entities that make no products and offer no services themselves but exist solely to litigate against companies that create jobs and bring products to market and by the diversion of billions of research and development dollars toward those legal expenses. H.R. 1260, as introduced, can address those problems and unleash the power of American innovation and modernize the U.S. patent system so that it encourages innovation, job creation and global competitiveness.

For more information, visit www.patentfairness.org.

---

[5] See http://www.law.com/jsp/iplawandbusiness/PubArticleIPLB.jsp?id=1202430120283.
[6] See http://www.law.com/jsp/iplawandbusiness/PubArticleIPLB.jsp?id=1202429982289.
[7] See http://ip.law360.com/articles/89883.
[8] See http://ip.law360.com/articles/89101.
[9] For example, defendants in the cases listed above include major retailers, hotel companies and other businesses.