UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| VERIFY SMART CORP., | : | Civil Action No. 17-cv-04248-JMV-JBC |
| | : | |
| Plaintiff, | : | |
| | : | |
| | : | |
| v. | : | SECOND AMENDED COMPLAINT |
| | : | |
| BANK OF AMERICA, N.A., BANK OF | : | |
| AMERICA CORP., WELLS FARGO, | : | |
| BANK N.A., AND WELLS FARGO & CO.,| : | |
| | : | DEMAND FOR JURY TRIAL |
| Defendants. | : | |
| | : | |

Plaintiff Verify Smart Corp. ("Verify"), by and through its attorneys Zimmerman Law

Group and Tully Rinckey PLLC complains against Defendants Bank of America, N.A. and Bank

of America Corp. (together "BofA"), and Wells Fargo Bank, N.A. and Wells Fargo & Co.

(together "Wells Fargo") (all hereinafter sometimes collectively "Defendants" or "the Banks") as

follows:

## PARTIES, JURISDICTION AND VENUE

1.      Verify is a corporation formed under the laws of the State of Nevada having its

headquarters in New Jersey.

2.      Bank of America, N.A. is a national banking corporation organized and existing

under the laws of the United States, with its principal place of business in Charlotte, North

Carolina, and having bank branches throughout this jurisdiction in which it is conducting

business.

3.      Bank of America Corp. is a Delaware corporation that conducts business in this

jurisdiction.

4.      Wells Fargo Bank N.A. is a national banking corporation organized and existing under the laws of the of the United States, with its principal place of business in San Francisco, California, and having bank branches throughout this jurisdiction in which it is conducting business.

5.      Wells Fargo & Co. is a Delaware corporation that conducts business in this jurisdiction.

6.      The Court has jurisdiction of the case as a federal question arising under RICO, 18 U.S.C. §1964(c) and 28 U.S.C. §1332.

7.      Venue is proper in this district because the Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) and (b) as the Defendants all conduct business in this district and resolution of the issues between BofA and Verify, and between Wells Fargo and Verify, respectively, are appropriate to be adjudicated in this district.

8.      BofA and Wells Fargo have each acted against a resident of this jurisdiction, i.e., Verify, in ways that have caused harm to said resident in this jurisdiction.

## THE BANKS OWN THE CLEARING HOUSE AND ASKELADDEN

9.      The Banks are part of a banking industry consortium, and own and direct The Clearing House Payments Company LLC ("TCH"), an entity which sells money transmittal services to ease banking customers in moving funds through their networks.

10.     Askeladden LLC is a subsidiary of TCH.  It exists to further the Banks' interests by filing challenges to patents for financial and banking products and services used by the Banks, *i.e.,* to reduce the Banks' costs.

## PRIOR LITIGATION BETWEEN VERIFY AND BOFA

11.     On July 9, 2015, Verify filed a complaint against BofA in the United States

District Court for the District of New Jersey, Case No. 15-cv-5348 entitled *Verify Smart Corp v.*

*Bank of America, N.A.*, ("the BofA District Court Litigation") alleging that BofA's SafePass

two-factor authorization security feature infringed Verify's U.S. Patent 8,285,648 entitled

System and Method For Verifying A User's Identity In Electronic Transactions ("the '648

Patent").

12.     On August 12, 2015, BofA filed a Covered Business Method ("CBM") Patent

Review in the PTAB, Case No. CBM2015-00173 entitled B*ank of America, N.A. v. Verify Smart*

*Corp.*, seeking to invalidate the '648 Patent.

13.     Thereafter, on November 2, 2015, Verify and BofA entered into a settlement

agreement resolving these two disputes whereby the BofA District Court Litigation was

dismissed on November 3, 2015 and the CBM Proceeding was dismissed on November 4, 2015.

14.     As part of this settlement agreement, BofA agreed "not to challenge or knowingly

assist or cause any third party to challenge the validity of any Released Patents [the '648 Patent]

before any court, agency, or other tribunal, except as required by court order, subpoena or law, or

in defending any claim of infringement."

15.     This forbearance agreed to by BofA was significant consideration received by

Verify for agreeing to dismiss its then pending BofA District Court Litigation.

## PRIOR LITIGATION BETWEEN VERIFY AND WELLS FARGO

16.     On November 22, 2016, Wells Fargo released all claims it had against Verify

when it took a license under the '648 Patent to settle an infringement suit brought against it by

Verify in this district, Case No. 16-cv-6389 entitled *Verify Smart Corp. v. Wells Fargo, N.A. et*

*al.* ("the Wells Fargo District Court Litigation"), served on October 11, 2016, in which Verify Smart alleged that Wells Fargo was infringing the '648 Patent.

## THE VERIFY IPR

17.     On January 18, 2017, Askeladden filed Inter Partes Review 2017-00726 entitled *Askeladden LLC v. Verify Smart Corp.* ("the Verify IPR") in the PTAB to invalidate the '648 Patent.

18.     Askeladden's filing of the Verify IPR was both unfair to and exceedingly damaging to Verify. The Verify IPR is interfering with Verify's business activities pertaining to the '648 Patent and is unnecessarily causing Verify to expend time and financial resources to defend the IPR that was wrongfully commenced and is wrongfully being maintained.

19.     The "Mandatory Statement" of Askeladden, included on Pages 3-5 of the Verify IPR Petition filed by Askleadden's counsel Amster, Rothstein and Ebenstein on January 18, 2017 in New York, New York, includes materially false statements misidentifying the "Real Party In Interest" as being Askeladden alone, since at least TCH, later admitted to be a real party in interest by Askeladden, was omitted.

20.     BofA is a real party in interest of Askeladden in the IPR, in that at least Askeladden is an agent and proxy of BofA, and Askeladden acts on behalf of the interests of BofA.

21.     BofA is a privy of Askeladden in the IPR, in that Askeladden has a persistent relationship with BofA, defined by agreements, express and implied, and acts on behalf of, and for the benefit of, BofA in this proceeding, and thus serves as BofA's delegate and agent.

22.     Wells Fargo is a real party in interest of Askeladden in the IPR, in that at least Askeladden is an agent and proxy of Wells Fargo.

23.     Wells Fargo is a privy of Askeladden in the IPR, in that Askeladden has a persistent relationship with Wells Fargo, defined by agreements, express and implied, and acts on behalf of, and for the benefit of, Wells Fargo in this proceeding, and thus serves as Wells Fargo's delegate and agent.

24.     Mr. Roderick McKelvie, chairman of Askeladden's Patent Challenge Committee, testified in the Verify IPR that the Wells Fargo District Court Litigation was a factor in deciding to file the Verify IPR.

25.     Mr. Ivan Zatkovich, expert witness for Askeladden, testified in the Verify IPR that the Wells Fargo District Court Litigation was a factor in deciding to file the IPR.

26.     These witnesses for Askeladden testified in accord with one another regarding the particular relation of Wells Fargo to the Verify IPR.  *See* IPR2017-00726, Paper Number 35, December 11, 2018.

27.     Upon information and belief, the IPR-filing activities of Askeladden were the subject of communications involving BofA, Wells Fargo and Askeladden's Executive Committee ("EC"), and these communications are reflected in the express and implied operating policies of Askeladden.

28.     Mr. Sean Reilly, member of Askeladden's EC, testified on June 11, 2019, to the U.S. Congress, U.S. Senate Committee on the Judiciary Subcommittee on Intellectual Property, stating "I coordinate with industry executives and senior lawyers from the nation's leading banks on technology law issues and initiatives of concern to the financial services industry."  These banks include BofA and Wells Fargo, and the issues include the filing of IPRs.

29.     Askeladden's filing of the Verify IPR challenging the '648 Patent is barred under 35 U.S.C. § 315(b) based on the service of a complaint against BofA alleging patent

infringement in the BofA District Court Litigation more than one year before the filing date of the Verify IPR Petition.

30.     Askeladden and its agents were aware at the time of filing of the Verify IPR, of the relationship between the Banks and TCH's other owner/director banks, TCH, and Askeladden, and were also aware of their role in advancing the interests of its owner/director banks including BofA and Wells Fargo.

31.     Askeladden and its agents were aware at the time of filing of the Verify IPR, that TCH was properly considered a real party in interest to any legal or administrative action it might take with respect any third party advancing the interests of its owner/director banks including BofA and Wells Fargo.

32.     Askeladden and its agents were aware at the time of filing of the Verify IPR, that it was a privy of TCH, in that it is wholly owned by TCH, its officers were officers of TCH or its commonly owned affiliate, and were under a fiduciary obligation on behalf of TCH or its commonly owned affiliate, and the foundational and operating documents of Askeladden defined a privy relationship.

33.     Mr. McKelvie was aware of the relationship between Askeladden, TCH's EC and TCH's owner/director banks at the time the Verify IPR was filed.

34.     Mr. McKelvie knew at the time of filing of the Verify IPR, that BofA had previously been sued for infringement of the '648 Patent more than one year prior to the filing of the Verify IPR.

35.     Mr. McKelvie knew at the time of filing of the Verify IPR, that Askeladden had a written policy to exclude naming TCH or its owner/director banks as real parties in interest in any IPR that Askeladden sought to file.

36.     Mr. McKelvie knew at the time of filing of the Verify IPR, that Askeladden's EC included officers of TCH who owed a fiduciary duty to TCH, and therefore that Askeladden was managed to advance the business interests of TCH and its owner/director banks.

37.     Mr. McKelvie knew at the time of filing of the Verify IPR, that TCH was a director managed limited liability company that existed to promote the interests of BofA, Wells Fargo and its other owner/director banks, and that he was ultimately responsible to the owner/director banks.

38.     Mr. McKelvie knew at the time of filing of the Verify IPR, that the Verify IPR filed in the name of Askeladden was for the benefit, and intended to advance the business interests of BofA, Wells Fargo and the other TCH owner/director banks.

39.     Mr. McKelvie was aware at the time of filing of the Verify IPR, of the Wells Fargo District Court Litigation and its settlement before the filing of the Verify IPR was filed.

40.     Mr. McKelvie was also aware at the time of filing of the Verify IPR, of the BofA District Court Litigation and its settlement before the Verify IPR was filed.

## FIRST COUNT

## BREACH OF CONTRACT AGAINST BOFA

41.     Verify repeats each of the allegations contained in paragraphs 1 through 40 of the Complaint with the same force and effect as if fully set forth herein.

42.     On November 2, 2015, BofA and Verify entered into a settlement agreement of the BofA District Court Litigation and the CBM Proceeding by which the then existing disputes between the parties regarding the '648 Patent "ha[d] been resolved."

43.     In this settlement agreement, BofA agreed not to challenge the '648 Patent.

44.     Upon information and belief, TCH director and BofA Global General Counsel, David Leitch was involved in directing Askeladden to file the Verify IPR.

45.     The challenge to the validity of the '648 Patent by BofA's agent, privy and proxy Askeladden is wrongful and contravenes the aforementioned agreement.

46.     Verify has not breached any obligation it owes to BofA.

47.     BofA undertook not to challenge the '648 Patent and cannot commits acts through its agents, privies and proxies that it is prohibited from undertaking itself.

48.     BofA had an obligation to inform its agents, privies and proxies of its obligations, including its obligation not to challenge the '648 Patent.

49.     Askeladden was aware at the time of filing of the Verify IPR, of the prior litigation by Verify against BofA asserting infringement of the '648 Patent.

50.     BofA was aware at the time of filing of the Verify IPR, that Askeladden monitored patent infringement litigation activities of patent owners in the financial services industry, and was tasked with filing IPRs against patents owned by such patent owners, including Verify, after the termination of litigation against BofA, Wells Fargo and/or other owner/director banks.

51.     Askeladden was aware at the time of filing of the Verify IPR, of the CBM Proceeding BofA filed against the '648 Patent and copied at least one portion of the text from the CBM Proceeding into the Verify IPR Petition it filed against the '648 Patent.  See, pp. 3-4 of IPR Petition.

52.     Askeladden was aware at the time of filing of the Verify IPR, that the dispute between BofA and Verify had been settled.

53.     BofA's interests with respect to the '648 Patent vis-à-vis Verify did not cease with the settlement of the dispute.

54.     By virtue of the Verify IPR filing challenging the validity of the '648 Patent by its agent, privy and proxy Askeladden, BofA has committed a wrongful act which contravenes and thus breaches the aforementioned contractual agreement between BofA and Verify.

55.     Verify has been damaged and continues to be damaged by BofA's willful and intentional breach of the contract in an amount to be determined at trial.

<u>**SECOND COUNT**</u>

**BREACH OF CONTRACT AGAINST WELLS FARGO**

56.     Verify repeats each of the allegations contained in paragraphs 1 through 55 of the Complaint with the same force and effect as if fully set forth herein.

57.     On November 22, 2016, Wells Fargo and Verify entered into a settlement agreement by which the then existing dispute between the parties regarding the '648 Patent, i.e., the Wells Fargo District Court Litigation, was resolved.

58.     In this settlement agreement, Wells Fargo released all claims it had against Verify, relating to the action, including all claims challenging the validity of the '648 Patent.

59.     Upon information and belief, TCH director and Wells Fargo Senior Executive Vice President and General Counsel James M. Strother was involved in directing Askeladden to file the Verify IPR.

60.     The challenge to the validity of the '648 Patent by Wells Fargo's agent, privy and proxy Askeladden is wrongful and contravenes the aforementioned agreement.

61.     Verify has not breached any obligation it owes to Wells Fargo.

62.    Wells Fargo undertook not to challenge the '648 Patent and cannot commit acts through its agents, privies and proxies that it is prohibited from undertaking itself.

63.    Wells Fargo had an obligation to inform its agents, privies and proxies of its obligations, including its obligation not to challenge the '648 Patent.

64.    Askeladden was aware at the time of filing of the Verify IPR, of the litigation between Verify and Wells Fargo.

65.    Askeladden was aware at the time of filing of the Verify IPR, of termination of the litigation between Verify and Wells Fargo.

66.    Wells Fargo was aware at the time of filing of the Verify IPR, that Askeladden monitored patent infringement litigation activities of patent owners in the financial services industry, and was tasked with filing IPRs against patents owned by such patent owners, including Verify, after the termination of litigation against Wells Fargo, BofA and/or other director banks.

67.    By virtue of the Verify IPR filing challenging the validity of the '648 Patent by its agent, privy and proxy Askeladden, Wells Fargo has committed a wrongful act which contravenes and thus breaches the aforementioned contractual agreement between Wells Fargo and Verify.

68.    Verify has been damaged and continues to be damaged by Wells Fargo's willful and intentional breach of the contract in an amount to be determined at trial.


## THIRD COUNT

## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC BENEFIT

69.    Verify repeats each of the allegations contained in paragraphs 1 through 68 of the Complaint with the same force and effect as if fully set forth herein.

70.     A claim of tortious interference with prospective economic advantage requires: a showing of a reasonable expectation of advantage from a prospective contractual or economic relationship; defendant's knowledge of this expectancy; that the defendant intentionally interfered with this advantage (without legitimate justification); in the absence of interference, the reasonable probability that the plaintiff would have received the anticipated benefit; and that the injury caused economic damage.

71.     As the owner of the '648 Patent that is directed to an MFA security technology widely used in commercial transactions to authenticate the identity of users engaged in financial transactions, Verify enjoyed an expectation of continued prospective economic benefit in the conduct of its licensing business.

72.     Verify had a reasonable expectation of economic benefit from commercialization of MFA technology covered by the '648 Patent, given the exclusive rights granted by the '648 Patent.

73.     Verify had enjoyed past success in licensing the '648 Patent and received revenues from those licensing activities.

74.     The PTAB's finding adverse to validity of the '648 Patent (presently on appeal) is not dispositive of the validity of the '648 Patent issue in a patent infringement litigation because the PTAB routinely denies discovery, and employs evidentiary standards, policies and procedures disfavoring patent owners and which are distinct from those employed by Article III Courts.

75.     Therefore, absent a challenge in an IPR, the '648 Patent would have benefitted from a continuing presumption of validity.

76.     As a result of the broad application and value of the '648 Patent to banking services offered by BofA, Wells Fargo and other banks, Verify maintained an expectation of prospective economic benefit from monetization of the '648 Patent.

77.     Verify's expectation was reasonable by virtue of its past success in licensing the '648 Patent to third parties including to banks.

78.     BofA and Wells Fargo knew of Verify's expectancy.

79.     As a result of the Verify IPR, Verify's licensing of the '648 Patent has substantially diminished in value.

80.     A factor considered by Askeladden, the agent, privy and real party in interest of BofA and Wells Fargo, in targeting the '648 Patent for IPR, was the expectancy of future economic benefit Verify would receive from its licensing of the '648 Patent.

81.     Askeladden, the agent, privy and real party in interest of BofA and Wells Fargo determined that unless the '648 Patent was cancelled, Verify would demand significant royalties or litigation settlements from other owner/director banks of TCH.

82.     Upon information and belief, Defendants had knowledge of Verify's expectancy of continued prospective economic benefit but chose to intentionally and without proper justification or legitimate excuse interfere with that expectancy by virtue of the conduct alleged herein.

83.     The filing of the Verify IPR was per se wrongful in that the Petition failed to properly identify all Real Parties in Interest of Petitioner, a statutory requirement for filing the Verify IPR.

84.     The intentionally made, materially false statement in the Mandatory Statement in the Petition for Inter Partes Review is a violation of 18 U.S.C. § 1001, and therefore cannot form a basis for proper justification or legitimate excuse.

85.     There was, and is, a reasonable probability that Verify would have received the above-referenced anticipated continued economic benefit in the absence of the Defendants' interference and wrongful and unlawful conduct.

86.     This action alleges that the actions of BofA and Wells Fargo, through their agent, privy and proxy Askeladden has tortiously interfered with Verify's prospective economic benefit from relationships with third parties, and in particular, that the improper challenge of validity of the '648 Patent in the PTAB has diminished the value of the '648 Patent and impaired its licensability.

87.     Defendants wrongfully and intentionally interfered with such prospective economic benefits by virtue of the conduct set forth in this Complaint.

88.     Defendants' acts of interference have been committed in bad faith and with malice for at least the reasons set forth above and the additional reasons set forth below.

89.     Such conduct on the part of Defendants has injured and continues to injure Verify at least to the extent of lost licensing revenues, lost infringement damages, potential lost exclusive rights, and cost of defense of the IPR, in an amount to be determined at trial.


## FOURTH COUNT

### COMMON LAW FRAUD

90.     Verify repeats each of the allegations contained in paragraphs 1 through 89 of the Complaint with the same force and effect as if fully set forth herein.

91.     Fraud involves a material misrepresentation of an existing fact, made with knowledge of the falsity, an intent to induce reliance thereon, justifiable reliance upon the misrepresentation, and resulting damages.

92.     On January 18, 2017, on behalf of BofA and Wells Fargo, Askeladden filed the Verify IPR to invalidate the '648 Patent.

93.     Askeladden's filing of the Verify IPR did not comply with 35 U.S.C. § 312(a)(2) for failure to identify either BofA or Wells Fargo, respectively, as a real party in interest and also did not name TCH, an admitted real party in interest.

94.     BofA and Wells Fargo were each intentionally omitted from the Verify IPR filing as a respective real party in interest to shield their involvement in the IPR so that it could not be challenged on the grounds that it was filed more than one year after the complaint for infringement of the '648 Patent was filed by Verify in the BofA District Court Litigation.

95.     TCH was intentionally omitted in order to obfuscate the control structures involved in Askeladden, and to further isolate the IPR filing from BofA, Wells Fargo and other parties benefitted by those filings, and at whose behest the IPR was filed.

96.     As a result of the intentional omission of TCH, BofA and Wells Fargo from the Verify IPR filing, Verify did not know at the time of filing of the Verify IPR, from such filing, that BofA and Wells Fargo were real parties in interest.

97.     Verify relied to its detriment on such omissions by deciding not to challenge the institution of the Verify IPR by submitting a Patent Owner's Preliminary Statement.

98.     By doing so, Verify lost the opportunity to seek pre-institution discovery from TCH that would likely have established before institution of the Verify IPR that Askeladden was

acting as an agent, privy and proxy of both BofA and Wells Fargo, in addition to TCH being a real party in interest.

99.     Verify has been damaged and continues to be damaged by Defendants' willful and intentional fraud in an amount to be determined at trial.

**FIFTH COUNT**

**FEDERAL RACKETEER INFLUENCED AND CORRUPT**
**ORGANIZATIONS ACT 18 U.S.C. § 1962(d) (CONSPIRACY TO VIOLATE §1962(c))**

100.    Verify repeats each of the allegations contained in paragraphs 1 through 99 of the Complaint with the same force and effect as if fully set forth herein.

101.    Defendants BofA and Wells Fargo have conspired to commit various wire fraud schemes involving settlement fraud, false promises to settle infringement cases.  In each case the Banks omitted to tell the settling party that Askeladden would file a Petition for Inter Partes Review to challenge the settling party's patent in the PTAB after the settlement.

**THE RICO PARTIES**

102.    Defendants BofA and Wells Fargo, respectively, are each a "person" within the meaning of 18 U.S.C. § 1961(3) in that they are individuals or legal entities capable of holding a legal or beneficial interest in property.

103.    Plaintiff Verify is a "person" within the meaning of 18 U.S.C. § 1961(3), since, as a corporation, it is an entity capable of holding a legal or beneficial interest in property.

**THE RICO ENTERPRISE**

104.    Askeladden is a RICO enterprise, pursuant to 18 U.S.C. § 1961(4).  Its activities affect interstate commerce as it conducts business in several states and the District of Columbia.

105.     As indicated above, the Banks created Askeladden for the sole purpose of filing patent challenges to advance the Banks' interests in the patent litigation field.  Some of these challenges may be legitimate.  But, as detailed below, many are brought in bad faith after the Banks have settled prior patent litigation and promised not to bring future patent challenges.

106.     The Banks agreed to utilize Askeladden to carry out the fraudulent settlement scheme detailed herein.  This agreement has been ongoing between these entities for at least the last five years, and continues to date.

**THE RICO VIOLATIONS**

A.     **BofA's Scheme Against Verify**

107.     Between October 7, 2015 and November 3, 2015, including when a Draft Release and Covenant Not to Sue was sent by email on October 30, 2015, BofA and Verify engaged in settlement communications that resulted in the settlement agreement that resolved the BofA District Court Litigation and that Verify asserts BofA breached.

108.     On October 29, 2015, BofA's outside counsel Marc Pensabene of O'Melveny & Myers LLP, New York, New York sent by e-mail an execution copy of the settlement agreement to Verify's counsel Jean-Marc Zimmerman in New Jersey.  In the agreement, BofA agreed "not to challenge or knowingly assist or cause any third party to challenge" the '648 Patent and "releases and forever resolves" any claims BofA had against Verify "involving" the '648 Patent. On October 30, 2015, Verify, believing its patent dispute with BofA was over, accepted BofA's offer to settle by executing the same and e-mailing it back to BofA's counsel. These statements made by BofA were false because BofA intended to subsequently challenge the '648 Patent through litigation initiated by Askeladden as in fact occurred with the filing of the Verify IPR.

- 16 -

109.    The settlement was induced by fraud perpetrated through interstate wires.  This violated 18 U.S.C. § 1343, the federal wire fraud statute, which is made a form of "racketeering activity" by RICO pursuant to 18 U.S.C. §1961(1)(B).

110.    Moreover, the scheme was agreed to by all of the banks which collectively own and direct the Askeladden enterprise.  They have all implemented the same overall scheme to fraudulently settle patent disputes and then have Askeladden turn around and file challenges to the settled patents.

**B.    Wells Fargo's Scheme Against Verify**

111.    On October 4, 2016 Verify filed its Complaint in the Wells Fargo District Court Litigation against Wells Fargo.  On October 12, 2016 Verify, through its counsel Jean-Marc Zimmerman in New Jersey, sent a letter to James M. Strother, General Counsel of Wells Fargo, San Francisco, California, offering to license the '648 Patent.  The offer was accepted. On November 28, 2016 Verify filed a Notice of Dismissal terminating the case.

112.    Between October 12, 2016 and November 15, 2016, Wells Fargo and Verify engaged in settlement discussions that resulted in the settlement agreement that resolved the Wells Fargo District Court Litigation and that Verify alleges Wells Fargo has breached.

113.    On November 14, 2016, Wells Fargo's in-house counsel Pamela Pearson, in North Carolina, sent by e-mail an execution copy of the settlement agreement to Verify's counsel Jean-Marc Zimmerman in New Jersey.  In the agreement, Wells Fargo agreed that it "releases and forever discharges Verify Smart . . . from any and all actions" relating to the '648 Patent. On November 15, 2016, Verify accepted Wells Fargo's offer to settle by executing the same and e-mailing it back to Wells Fargo.

114.     Accordingly, Wells Fargo used these communications to fraudulently induce Verify to settle the case by promising to release all of its claims against Verify's '648 Patent - including its invalidity claims.  These statements made by Wells Fargo were false because Wells Fargo intended to subsequently challenge the '648 Patent through litigation initiated by Askeladden as in fact occurred with the filing of the Verify IPR.

115.     The settlement was thus induced by fraud using the federal interstate wires violating 18 U.S.C. § 1343.  Verify relied upon the promise of a release of all patent claims in accepting the sum offered for the license of its patent to Wells Fargo.  Had it known Askeladden was going to turn around and sue to challenge the '648 Patent, it would not have settled.

**C.     Related Schemes Against Other Patent Owners**

116.     On October 25, 2012, N5 Technologies LLC ("N5") filed a Complaint in the United States District Court for the Eastern District of Texas entitled *N5 Technologies, LLC v. Bank of America Corp.*, Case No. 2:12-cv-00685 alleging that BofA infringed N5's U.S. Patent 7,197,297 ("the '297 Patent").

117.     On February 10, 2014, the Court denied BofA's Motion to Transfer the case to different district.  On March 11, 2014, the parties filed a Stipulation of Dismissal terminating the case.

118.     Between February 10, 2014 and March 11, 2014, the parties engaged in settlement communications that resulted in the settlement agreement between N5 and BofA.

119.     On or about March 7, 2014, BofA's counsel in Dallas Texas, sent by e-mail an execution copy of the settlement agreement to N5's counsel in Alexandria, Virginia.  In the agreement, BofA agreed that to release and forever discharge N5 from any and all actions

relating to the '297 Patent.  On or about March 10, 2014, N5 accepted BofA's offer to settle by executing the same and e-mailing it back to BofA's counsel.

120.    BofA used these communications to fraudulently induce N5's agreement to the settlement terms by promising to release all of its claims against N5's '297 Patent - including its invalidity claims. These statements made by BofA were false because BofA intended to subsequently challenge the '297 Patent through litigation initiated by Askeladden as in fact occurred with the filing by Askeladden in October 2016 of IPR2017-00083 entitled *Askeladden LLC v. N5 Technologies, LLC.*

121.    The settlement was a type of wire fraud violating 18 U.S.C. § 1343.  N5 relied upon the promise of a release of all patent claims in accepting the sum offered for the license of its patent to BofA.  Had it known Askeladden was going to turn around and sue to challenge the '297 Patent, it would not have settled.

122.    On April 13, 2015 October 25, 2012, Finnavations, LLC ("Finnavations") filed a Complaint in the United States District Court for the Eastern District of Texas entitled *Finnavations, LLC v. Bank of America Corp.* Case No. 2:15-cv-00479 alleging that BofA infringed Finnavations's U.S. Patent 8,132,720 ("'720 Patent").

123.    On June 29, 2015, the Court entered an Order consolidating the case with an earlier filed one.  On July 27, 2015 the parties filed a Stipulation of Dismissal terminating the case.

124.    Between June 29, 2015 and July 27, 2015, the parties engaged in settlement communications that resulted in the settlement agreement between Finnavations and BofA.

125.    On or about July 23, 2015, BofA's counsel in Los Angeles, California sent by e-mail an execution copy of the settlement agreement to Finnavations's counsel in Dallas, Texas.

In the agreement, BofA agreed that to release and forever discharge Finnavations from any and all actions relating to the '720 Patent.  On or about July 27, 2015, Finnavations accepted BofA's offer to settle by executing the same and e-mailing it back to BofA's counsel.

126.    BofA used these communications to fraudulently induce Finnavations's agreement to the settlement terms by promising to release all of its claims against Finnavations's '720 Patent - including its invalidity claims.  These statements made by BofA were false because BofA intended to subsequently challenge the '720 Patent through litigation initiated by Askeladden as in fact occurred with the filing by Askeladden in June 2016 of IPR2016-01906 entitled *Askeladden LLC v. Finnavations, LLC.*

127.    The settlement was a type of wire fraud violating 18 U.S.C. § 1343.  Finnavations relied upon the promise of a release of all patent claims in accepting the sum offered for the license of its patent to BofA.  Had it known Askeladden was going to turn around and sue to challenge the '720 Patent, it would not have settled.

128.    Thus, Defendants BofA and Wells Fargo have executed their scheme to defraud at least three patent owners in at least four separate settlements over the last several years through Askeladden by wire fraud.

129.    The Banks' wire fraud violations using Askeladden to challenge to previously settled patent disputes are ongoing and will continue, which as detailed above, was created in part to induce fraudulent settlements in violation of 18 U.S.C. § 1962(c).  Thus, these violations constitute both an open and closed ended pattern of racketeering required by 18 U.S.C. § 1961(5).

130.    Thus, the Banks' agreement to carry out this scheme is a violation of 18 U.S.C. § 1962(d) which states, in pertinent part: "It shall be unlawful for any person to conspire to violate subsection (c) of this section." (internal punctuation omitted).[1]

### VERIFY HAS BEEN INJURED BY THE SCHEME TO DEFRAUD PATENT OWNERS

131.    As detailed above, Verify relied on the false promises of a release of claims made by each of the Banks, respectively.  It was injured by being cheated out of the market value of its license or infringement damages that it would have demanded and obtained if it knew there was no settlement of the patent litigation.  More specifically, the fraudulently induced settlements were resolved on substantially less favorable terms than were non-fraudulently induced settlements, e.g., mid six-figures. Verify was also injured by having to pay subsequent attorney's fees to defend the bad-faith patent challenge brought by Askeladden on behalf of the Banks.

132.    Therefore, Verify has been proximately damaged by the Banks' conspiracy to commit wire fraud through Askeladden.

**WHEREFORE**, Verify demands:

A.    Judgment against the Defendants on all five counts of the Complaint, including joint and several liability where applicable;

B.    Compensatory, direct, consequential and punitive damages against Defendants in an amount to be determined at trial;

C.    Treble damages under 18 U.S.C. § 1964(c);

---

[1] 18 U.S.C. § 1962(c) states: "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

D.      Attorney's fees, costs and disbursements;

E.      Pre and post-judgment interest;

F.      A determination that Askeladden is a privy of the Defendants; and

G.      Such further and additional relief as to the Court deems just and appropriate.

By:/s/Jean-Marc Zimmerman
Jean-Marc Zimmerman
Zimmerman Law Group
233 Watchung Fork
Westfield, NJ 07090
T: (908) 768-6408
F: (908) 935-0751
E: jmz@zimllp.com

Steven M. Hoffberg
Tully Rinckey PLLC
777 Third Avenue
New York, NY 10017
T: (646) 201-9100
F: (646) 705-0049
E: shoffberg@tullylegal.com

Attorneys for Plaintiff Verify Smart Corp.

Date: June 14, 2019