

| | | |
|---|---|---|
| O'Melveny & Myers LLP<br>Times Square Tower<br>7 Times Square<br>New York, NY 10036-6537 | T: +1 212 326 2000<br>F: +1 212 326 2061<br>omm.com | File Number:<br>019,368-1467 |

August 4, 2017

**Andrew J. Frackman**
D: +1 212 326 2017
afrackman@omm.com

**VIA U.S. MAIL AND EMAIL**

Jean-Marc Zimmerman
Zimmerman Law Group
233 Watchung Fork
Westfield, New Jersey  07090

Steven M. Hoffberg
Ostrolenk Faber LLP
1180 Avenue of the Americas
New York, New York 10036

Re:  *Verify Smart Corp. v. Bank of America, N.A., et al.*, Case No. 2:17-cv-04248

Dear Mr. Zimmerman and Mr. Hoffberg:

Pursuant to Federal Rule Civil of Procedure 11(c)(2), we are serving you with copies of Defendants Bank of America, N.A. and Bank of America Corp.'s (together, "BofA") motion for sanctions and memorandum of law in support.  We wish to formally place you on notice that we consider the allegations against BofA to be legally and factually frivolous for the reasons discussed at our July 25, 2017 meeting and further set forth in the enclosed memorandum.

Under Rule 11(c)(2), you are afforded 21 days after the service of the enclosed motion to withdraw the claims against BofA without recourse.  Accordingly, please accept this letter and the enclosed motion and supporting memorandum as a request that you voluntarily dismiss with prejudice your claims against BofA, and as notice that BofA will otherwise move for appropriate sanctions, including reimbursement of the attorneys' fees and other expenses that it has incurred in opposing your frivolous claims.

Sincerely,

*/s/ Andrew J. Frackman*
Andrew J. Frackman

Enclosures

Andrew J. Frackman, Bar No. 035421988
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, New York  10036
Telephone:  (212) 326-2000
Facsimile:  (212) 326-2061
afrackman@omm.com

*Attorneys for Defendants Bank of America, N.A.*
*and Bank of America Corp.*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| VERIFY SMART CORP., <br><br>                   Plaintiff, <br><br>     v. <br><br> BANK OF AMERICA, N.A., BANK OF AMERICA CORP., THE CLEARING HOUSE PAYMENTS COMPANY LLC, THE CLEARING HOUSE ASSOCIATION LLC, AND ASKELADDEN LLC, <br><br>                   Defendants. | Civil Action No. 2:17-cv-04248 <br><br> **BANK OF AMERICA'S NOTICE OF MOTION FOR RULE 11 SANCTIONS** |

     **PLEASE TAKE NOTICE** that pursuant to Federal Rule of Civil Procedure 11(b) and Local Rule 11.3, Defendants Bank of America, N.A. and Bank of America Corp. (together, "BofA") shall move for an order levying sanctions on Verify Smart Corp. and its counsel of record at a date and time set by the Court.

     **PLEASE TAKE FURTHER NOTICE** that in support of this Motion, BofA shall rely on the accompanying Memorandum of Law and Declaration of Andrew J. Frackman, together with all Exhibits annexed thereto.

Dated:  August __, 2017

Respectfully submitted,

O'MELVENY & MYERS LLP

By: /s/ Andrew J. Frackman
Andrew J. Frackman, Bar No. 035421988
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, New York  10036
Telephone: (212) 326-2000
Facsimile:  (212) 326-2061
afrackman@omm.com

*Attorneys for Defendants Bank of America,
N.A. and Bank of America Corp.*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that, on this ____th day of August, 2017, copies of

the foregoing Notice of Motion were filed with the Clerk of the Court through the CM/ECF

system, which will send notification of such filing to all counsel of record.

Dated:  August __, 2017

Respectfully submitted,

O'MELVENY & MYERS LLP

By: /s/ Andrew J. Frackman
Andrew J. Frackman, Bar No. 035421988
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, New York  10036
Telephone: (212) 326-2000
Facsimile:  (212) 326-2061
afrackman@omm.com

*Attorneys for Defendants Bank of America,*
*N.A. and Bank of America Corp.*

Andrew J. Frackman, Bar No. 035421988
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, New York  10036
Telephone: (212) 326-2000
Facsimile:  (212) 326-2061
afrackman@omm.com

*Attorneys for Defendants Bank of America, N.A.
and Bank of America Corp.*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| VERIFY SMART CORP.,<br><br>                Plaintiff,<br>    v.<br><br>BANK OF AMERICA, N.A., BANK OF AMERICA CORP., THE CLEARING HOUSE PAYMENTS COMPANY LLC, THE CLEARING HOUSE ASSOCIATION LLC, AND ASKELADDEN LLC,<br><br>                Defendants. | Civil Action No. 2:17-cv-04248 |

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>BANK OF AMERICA'S MOTION FOR RULE 11 SANCTIONS</u>

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ......................................................................................... 1

BACKGROUND ............................................................................................................... 2

      A.     VSC and Bank of America Settle Their Patent Dispute ....................................... 2

      B.     The Payments Company and Askeladden ........................................................... 3

      C.     Askeladden Challenges VSC's Patent ................................................................ 4

      D.     VSC's Claim Against BofA ............................................................................... 4

ARGUMENT ................................................................................................................... 5

I.       VSC and Its Counsel Should Be Sanctioned Under Rule 11(b). ................................... 5

      A.     VSC Lacks Any Factual or Legal Support for Its Agency Theory ...................... 6

      B.     VSC Lacks Any Factual or Legal Support for Piercing the Corporate Veil ......... 8

      C.     Plaintiff's Counsel Has a History of Flouting the Federal Rules ......................... 9

CONCLUSION ................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AD/SAT, Div. of Skylight, Inc. v. Assoc. Press*,
  181 F.3d 216 (2d Cir. 1999).............................................................................7

*In re Asbestos Sch. Litig.*,
  46 F.3d 1284 (3d Cir. 1994)...........................................................................7

*Brubaker Kitchens, Inc. v. Brown*,
  280 Fed. Appx. 174 (3d Cir. 2008)................................................................6

*Brubaker v. City of Richmond*,
  943 F.2d 1363 (4th Cir. 1991) ...................................................................5, 6

*Cleveland Demolition Co. v. Azcon Scrap Corp.*,
  827 F.2d 984 (4th Cir. 1987) .........................................................................6

*Cooter & Gell v. Hartmarx Corp.*,
  496 U.S. 384 (1990).......................................................................................5

*Demodulation, Inc. v. Applied DNA Scis., Inc.*,
  2012 U.S. Dist. LEXIS 175917 (D.N.J. Dec. 12, 2012).............................8, 9

*Eon-Net LP v. Flagstar Bancorp*,
  653 F.3d 1314 (Fed. Cir. 2011).....................................................................10

*Garr v. U.S. Healthcare*,
  22 F.3d 1274 (3d Cir. 1994)...........................................................................5

*Hanjin Shipping Co. v. Port Transp., Inc.*,
  2017 U.S. Dist. LEXIS 8582 (D.N.J. Jan. 23, 2017) .....................................8

*James v. Penguin Group (USA) Inc.*,
  2014 U.S. Dist. LEXIS 50769 (S.D.N.Y. Apr. 11, 2014)...............................8

*Maung Ng We v. Merrill Lynch & Co.*,
  2000 U.S. Dist. LEXIS 11660 (S.D.N.Y. Aug. 14, 2000)...........................6, 7

*Matter of Morris v. N.Y. State Dep't of Taxation and Fin.*,
  603 N.Y.S.2d 807 (1993)................................................................................8

*Pactiv Corp. v. Perk-Up, Inc.*,
  2009 U.S. Dist. LEXIS 72796 (D.N.J. Aug. 18, 2009)...................................8

*Phoenix Canada Oil Co. v. Texaco, Inc.*,
  842 F.2d 1466 (3d Cir. 1988)......................................................................6, 7

TABLE OF AUTHORITIES
(continued)

Page(s)

*Service Reminder LLC v. Volkswagen Group of Am., Inc.*,
  2012 U.S. App. LEXIS 6124 (Fed. Cir. Mar. 23, 2012)..........................................10

*Steinbeck v. Steinbeck Heritage Foundation*,
  400 Fed. Appx. 572 (2d Cir. 2010) ...........................................................................7

*Valcom, Inc. v. Vellardita*,
  2014 U.S. Dist. LEXIS 89081 (D.N.J. July 1, 2014)..................................................7

*Wm. Passalacqua Builders v. Resnick Developers*,
  933 F.2d 131 (2d Cir. 1991)........................................................................................9

**Rules**

Fed. R. Civ. P. 10(b)(1)...............................................................................................10

Fed. R. Civ. P. 11 .............................................................................................. *passim*

Fed. R. Civ. P. 11(b) ......................................................................................1, 5, 8, 10

Fed. R. Civ. P. 11(c) .....................................................................................................5

Fed. R. Civ. P. 11(c)(1).................................................................................................5

Fed. R. Civ. P. 11(c)(2).................................................................................................1

Fed. R. Civ. P. 11(c)(4)...............................................................................................10

Fed. R. Civ. P. 11(c)(5)(a) ............................................................................................5

Defendants Bank of America Corp. and Bank of America, N.A. (together, "BofA") respectfully move for sanctions under Federal Rule of Civil Procedure 11(b) against Plaintiff Verify Smart Corp.'s ("VSC") and its counsel of record, Zimmerman Law Group and Ostrolenk Faber LLP (together, "Plaintiff's Counsel").[1]

## PRELIMINARY STATEMENT

BofA does not file this Rule 11 motion eagerly.  But the complaint here is so frivolous and so devoid of factual support that BofA feels obligated to do so, particularly given Plaintiff's Counsel's refusal to withdraw it even after receipt of this motion and a face-to-face meeting with BofA's counsel.  Plaintiff's Counsel's insistence on pursuing claims lacking *any* factual support is a disservice to the Bar and to this Court.  It results in a gross waste of time, money, and resources, and the Court should not condone it.

In 2015, BofA and VSC settled a patent dispute between them.  More than a year after that settlement, Defendant Askeladden L.L.C., an organization dedicated to improving the quality of patents in the financial services industry, filed a petition for Inter Partes Review (the "IPR Petition") challenging the validity of VSC's patent.  Despite having no evidence that BofA played *any* role in orchestrating or preparing that filing, VSC has responded by suing BofA for breach of contract, tortious interference with prospective economic benefit, and violation of the federal RICO Act, solely on the basis that BofA is among dozens of banks that have an ownership interest in Askeladden's parent company, Defendant The Clearing House Payments Company LLC (the "Payments Company").

To be clear, VSC does not allege *any* wrongful conduct by BofA, instead relying solely on Askeladden's filing of the IPR Petition (which itself is not wrongful as alleged).  VSC also

---

[1] BofA served Plaintiff's Counsel with a copy of this motion on August 4, 2017, in accordance with Federal Rule of Civil Procedure 11(c)(2).  *See* Decl. of Andrew J. Frackman ("Frackman Decl.") ¶ 2.

does not allege *any* facts suggesting that BofA directed, controlled, or assisted with that filing. Nor could it.  Askeladden has publicly disclosed—and VSC and its counsel should therefore be aware—that it relies on an independent Patent Challenge Committee, comprised of a former federal judge, a former Commissioner of Patents, and a patent law professor, to decide which low-quality patents to challenge.

Undeterred, VSC contends that Askeladden's IPR filing should be imputed to BofA because Askeladden purportedly acted as BofA's agent.  But VSC offers no factual basis for that allegation beyond BofA's status as an owner of the Payments Company, which in turn owns Askeladden.  Under black-letter Third Circuit law that is insufficient to establish an agency relationship.  Nor does VSC have any factual or legal basis to pierce the corporate veil, as there is no factual allegation that BofA controlled the Payments Company or Askeladden, let alone "dominated" those entities.

BofA's counsel has raised these glaring deficiencies with Plaintiff's Counsel on several occasions.  Nevertheless, VSC has refused to withdraw its claims.  Such arrant disregard for both the facts and the controlling law is inexcusable.  It results in unnecessary litigation, unnecessary expense for the parties and taxpayers, and an unnecessary burden on the courts.  Such conduct cries out for sanctions under Rule 11.

## BACKGROUND

### A.      VSC and Bank of America Settle Their Patent Dispute

On July 9, 2015, VSC filed a patent-infringement lawsuit against BofA related to U.S. Patent 8,285,648 (the "Patent").  (*See* Compl. ¶ 21.)  On August 12, 2015, BofA filed a petition seeking Covered Business Method review of VSC's Patent in the Patent Trial and Appeal Board. (*Id.* ¶ 22.)  VSC and Bank of America ultimately settled their dispute, and both proceedings were dismissed in November 2015.  (*Id.*)

### B.     The Payments Company and Askeladden

The Payments Company is a Delaware limited liability company that "provides payment, clearing, and settlement services to banks and other financial institutions, clearing almost $2 trillion daily."[2]  (*Id.* ¶ 4.)  It is "owned by the world's largest commercial banks," and currently lists twenty-five such owner banks on its website, including BofA.  (*Id.* ¶ 4; Frackman Decl., Ex. A.)

Askeladden, also a Delaware limited liability company, is a wholly-owned subsidiary of the Payments Company, and is an "education, information and advocacy organization, which through its Patent Quality Initiative ('PQI') is dedicated to improving the understanding, use and reliability of patents in financial services and elsewhere."  (Compl. ¶¶ 9, 14.)  Askeladden's activities are alleged to include challenging low-quality patents through petitions for Inter Partes Review ("IPR") in the Patent Trial and Appeal Board.[3]  (*Id.* ¶ 12.)

In April 2016, Askeladden publicly announced that it had formed an independent Patent Challenge Committee composed of three patent-law experts "to decide which poor-quality patents Askeladden should challenge":  (i)  Judge Roderick McKelvie, a retired federal judge from the District of Delaware; (ii) the Honorable Gerald Mossinghoff, former Assistant Secretary of Commerce and Commissioner of Patents and Trademarks, who now teaches patent law at George Washington University Law School, and (iii) Professor John Thomas, who teaches patent law at Georgetown University and has published several books related to intellectual property law.  (Frackman Decl., Ex. B.)

---

[2] The complaint alleges that each of the Defendants other than BofA is a New York limited liability company.  (*See* Compl. ¶¶ 4, 5, 8.)  That is incorrect.  Each is a Delaware limited liability company.  This further highlights the lack of an adequate pre-complaint investigation by VSC and its counsel.

[3] Defendant The Clearing House Association L.L.C. (the "Association") is also a Delaware limited liability company and is owned by banks that also own the Payments Company, but is otherwise an independent entity.  The complaint alleges no conduct by the Association in connection with VSC's claims.

### C.     Askeladden Challenges VSC's Patent

On January 28, 2017, Askeladden filed an IPR Petition seeking to invalidate VSC's Patent.  (*Id.* ¶ 21.)  According to Askeladden's press release, VSC had previously asserted the Patent "against technology and financial services companies including Apple, Facebook, Microsoft and Discover," and that "Askeladden's Patent Challenge Committee . . . decided to file this challenge as part of Askeladden's efforts to protect innovation in the financial and technology industries."   (Frackman Decl. Ex. C.)  Neither the Payments Company nor BofA is a party to that proceeding, and neither is listed as a party-in-interest on Askeladden's petition. (Compl. ¶ 24.)

### D.     VSC's Claim Against BofA

On June 12, 2017, VSC filed this lawsuit against BofA, Askeladden, the Payments Company, and the Association.  Although BofA is not alleged to have prepared the IPR Petition or participated in the decision to file it, VSC contends that Askeladden's IPR filing should be imputed to BofA under an agency theory.  (*See* Compl. ¶ 26.)  To support that theory, VSC alleges that BofA is among dozens of banks that own the Payments Company (*id.* ¶ 4), which supposedly gives those banks collective control of the Payments Company and the ability to direct its management (id. ¶ 7).  Through the IPR filing, BofA allegedly (i) breached an unidentified contract with VSC, (ii) tortiously interfered with VSC's prospective economic benefit, and (iii) violated the federal RICO Act by failing to disclose BofA as a party in interest. (*Id.* ¶¶ 36-67.)  Although the complaint does not identify the contract or contractual provision that BofA allegedly breached, BofA presumes that VSC is alleging a breach of the provision in the parties' settlement agreement prohibiting BofA from assisting others in challenging VSC's Patent.

# ARGUMENT

**I.    VSC and Its Counsel Should Be Sanctioned Under Rule 11(b).**

Under Federal Rule of Civil Procedure 11(b), an attorney submitting a pleading certifies

that, after a reasonable inquiry, "the claims, defenses, and other legal contentions are ***warranted***

***by existing law*** or by a nonfrivolous argument for extending, modifying or reversing existing law

or for establishing new law," and "the factual contentions ***have evidentiary support*** or, if

specifically so identified, will have evidentiary support after a reasonable opportunity for further

investigation or discovery."  Fed. R. Civ. Pro. 11(b) (emphasis added).  The "central purpose of

Rule 11 is to deter baseless filings," *see Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393

(1990), and courts "may impose an appropriate sanction on any attorney, law firm, or party that

violated the rule or is responsible for the violation," including by awarding reasonable attorneys'

fees to the opposing party, Fed. R. Civ. Pro. 11(c).[4]

The test for determining whether Rule 11 sanctions should be imposed is one of objective

reasonableness.  *See, e.g.*, *Garr v. U.S. Healthcare*, 22 F.3d 1274, 1278 (3d Cir. 1994) ("The

court determines the reasonableness of an inquiry [under Rule 11] by applying an objective

standard.").  To be reasonable, a "prefiling factual investigation must uncover some information

to support the allegations in the complaint.  A complaint containing allegations unsupported by

any information obtained prior to filing violates the required prefiling factual investigation.  That

is, where there is no factual basis for a plaintiff's allegations, the complaint violates Rule 11's

factual inquiry requirement."  *Brubaker v. City of Richmond*, 943 F.2d 1363, 1373 (4th Cir.

1991) (citations omitted).  As the Third Circuit has explained, "before one levels accusations of

tortious and malign behavior against another person and imposes on that person the financial,

---

[4] VSC may be sanctioned as the party "responsible for the violation" under Rule 11(c)(1) if its claims lack an evidentiary basis, but it may not be sanctioned for its counsel's unwarranted legal contentions.  *See* Fed. R. Civ. P. 11(c)(5)(a).

temporal, and emotional strain of defending a federal lawsuit, one had better have more than a vague belief . . . that the accused was 'involved.'" *Brubaker Kitchens, Inc. v. Brown*, 280 Fed. Appx. 174, 186 (3d Cir. 2008).  "The prefiling investigation must also uncover some basis in law to support the claims in the complaint.  A prefiling investigation of the law will not pass muster under Rule 11 where the complaint has 'absolutely no chance of success under the existing precedent.'" *Brubaker*, 943 F.2d at 1373 (quoting *Cleveland Demolition Co. v. Azcon Scrap Corp.*, 827 F.2d 984, 988 (4th Cir. 1987)).

> **A.    VSC Lacks Any Factual or Legal Support for Its Agency Theory.**

Although VSC's claims against BofA all arise from Askeladden's IPR Petition, VSC does not allege that BofA played any role in orchestrating or preparing that petition.  In fact, VSC does not allege ***any*** conduct by BofA at all.  Instead, VSC contends that Askeladden's filing is attributable to BofA only under an agency theory.  (*See* Compl. ¶ 26.)  But VSC has no factual basis, let alone an objectively reasonable one, to allege that Askeladden acted as BofA's agent.

The only support VSC can point to for that allegation is that BofA has an ownership interest in the Payments Company, and that the Payments Company is Askeladden's parent.  It is black-letter law, however, that "[o]ne corporation whose shares are owned by a second corporation does not, by that fact alone, become the agent of the second company."  *Phoenix Canada Oil Co. v. Texaco, Inc.*, 842 F.2d 1466, 1477 (3d Cir. 1988); *see also Maung Ng We v. Merrill Lynch & Co.*, 2000 U.S. Dist. LEXIS 11660, at *7 (S.D.N.Y. Aug. 14, 2000) ("It is beyond dispute that a corporation may not be held liable for the actions of another company merely because it has an ownership interest in it.").

To reasonably allege an agency relationship, VSC would need evidence that BofA was more than a mere owner of the Payments Company, and instead exercised actual control over

Askeladden.  *See Steinbeck v. Steinbeck Heritage Foundation*, 400 Fed. Appx. 572, 575 (2d Cir. 2010) ("A principal's ability to exercise control over its agent is an essential element of agency.").[5]  "The essence of control in an agency sense is in the *necessity* of the consent of the principal on a given matter.  Otherwise, if the subsidiary has discretion to act, the parent cannot justifiably be said to have the essential right of control over its subsidiary's actions."  *Maung Ng We*, 2000 U.S. Dist. LEXIS 11660, at * 20-21 (S.D.N.Y. Aug. 14, 2000) (emphasis in original).

VSC, however, has alleged no facts suggesting that BofA controlled, or even had the ability to control, Askeladden, or that Askeladden was required to obtain BofA's consent before filing the IPR Petition.  To the contrary, as VSC admits in the complaint, Askeladden is a wholly owned subsidiary of the Payments Company, which is owned by dozens of commercial banks. (Compl. ¶ 4; Frackman Decl. Ex. A.)  That diffuse ownership structure indicates *a lack of control* by BofA, and certainly does not support a finding of agency.  *See Phoenix Canada Oil Co.*, 842 F.2d at 1477.  Indeed, if such an allegation were sufficient, any shareholder in any corporation could be haled into court on an agency theory.[6]

Lacking any evidence to support their agency theory, VSC and its counsel nevertheless initiated this lawsuit against BofA.  Worse, VSC and its counsel refused to withdraw their

---

[5] Askeladden and the Payments Company have their principal places of business in New York, and therefore New York law governs whether there was an agency relationship.  *See Valcom, Inc. v. Vellardita*, 2014 U.S. Dist. LEXIS 89081, at *17-18 (D.N.J. July 1, 2014) ("where the agent is employed is the key factor in determining choice of law for an agency relationship").

[6] Plaintiff's Counsel has suggested that the Payments Company is more akin to a trade group than a corporation because it acts through Askeladden to advance its members' interests.  But *all* corporations are required to act in their shareholders' best interest, and even if the Payments Company were considered a trade group, BofA still could not be held liable for wrongful conduct by a subsidiary of the Payments Company absent evidence that BofA took specific action to further that conduct.  *See, e.g.*, *In re Asbestos Sch. Litig.*, 46 F.3d 1284, 1289-90 (3d Cir. 1994) (member not liable for unlawful acts of trade group unless member specifically intended to further that activity); *AD/SAT, Div. of Skylight, Inc. v. Assoc. Press*, 181 F.3d 216, 234 (2d Cir. 1999) (every action by trade association not concerted action by members; plaintiff must show that members in individual capacities consciously committed themselves to common scheme designed to achieve unlawful objective).

complaint after BofA shared this motion with them and identified the specific factual and legal deficiencies in their claims.  That is a clear violation of Rule 11(b) and cries out for sanctions.

### B.   VSC Lacks Any Factual or Legal Support for Piercing the Corporate Veil.

VSC and its counsel cannot defend their frivolous claims by premising BofA's liability on a veil-piercing theory rather than an agency theory.  The complaint alleges no facts that would support disregarding the "basic principle of corporate law . . . that shareholders and officers are not personally liable for corporate acts."  *See Hanjin Shipping Co. v. Port Transp., Inc.*, 2017 U.S. Dist. LEXIS 8582, at *4 (D.N.J. Jan. 23, 2017); *see also James v. Penguin Group (USA) Inc.*, 2014 U.S. Dist. LEXIS 50769, at *13-14 (S.D.N.Y. Apr. 11, 2014) ("[U]nder basic corporate law principles, [a parent company] cannot be held liable for the alleged misconduct of [its subsidiary].").  In fact, to hold BofA liable here, VSC would actually need to justify piercing the corporate veil twice—once to hold the Payments Company liable for Askeladden's conduct, and then again to hold BofA liable as an owner of the Payments Company.

Courts, however, "typically decline to pierce the corporate veil absent extraordinary circumstances."  *Demodulation, Inc. v. Applied DNA Scis., Inc.*, 2012 U.S. Dist. LEXIS 175917, at * 20 (D.N.J. Dec. 12, 2012).  To pierce the veil or establish alter ego liability, "a plaintiff must show that (1) the owner of the corporate entity dominated the corporation such that the corporation has become a mere instrumentality of its owner; and (2) the owner used its domination of the entity to commit a fraud or wrong against the plaintiff which resulted in the plaintiff's injury."  *Id.* (citing *Matter of Morris v. N.Y. State Dep't of Taxation and Fin.*, 603 N.Y.S.2d 807, 810-11 (1993)); *see also Pactiv Corp. v. Perk-Up, Inc.*, 2009 U.S. Dist. LEXIS 72796, at *16 (D.N.J. Aug. 18, 2009) (same).  With regard to the first element, "courts consider a number of factors to determine whether the requisite degree of domination is present, including the absence of corporate formalities such as the election of directors; intermingling funds;

8

overlap in officers, directors, and personnel; common office space; and the arm's lengths dealings between the owner and the corporate entity." *Demodulation, Inc.*, 2012 U.S. Dist. LEXIS 175917, at *20-21 (citing *Wm. Passalacqua Builders v. Resnick Developers*, 933 F.2d 131, 139 (2d Cir. 1991)).

But VSC does not allege, and has no basis to allege, that BofA exercised ***any*** control over Askeladden or the Payments Company—let alone "dominated" those entities to the extent they became "mere instrumentalities" of BofA. Nor does VSC allege that BofA, Askeladden, or the Payments Company ignored corporate formalities, intermingled funds, had overlapping officers and directors, shared office space, or engaged in non-arms'-length transactions. And although VSC does allege that Askeladden and the Payments Company shared some management, "[t]hat one allegation, without more, cannot support a claim for piercing the corporate veil." *Id.* at *21.

In sum, VSC has alleged no facts establishing a basis for piercing the corporate veil (twice) and holding BofA liable for conduct in which it did not engage. Accordingly, VSC should be sanctioned for asserting claims against BofA based ***solely*** on Askeladden's filing of an IPR Petition, in direct violation of well-established principles of corporate law and without factual basis.

### C.   Plaintiff's Counsel Has a History of Flouting the Federal Rules.

This is not the first time that Plaintiff's Counsel has filed a baseless complaint or violated the Federal Rules of Civil Procedure. Just four months ago, United States District Judge Rodney Gilstrap of the Eastern District of Texas sanctioned Plaintiff's Counsel Jean-Marc Zimmerman for violating Rule 11. (*See* Frackman Decl. Ex. D.) Judge Gilstrap hoped to "prevent further lapses in adequate compliance with the Federal Rules of Civil Procedure" by barring Mr. Zimmerman from filing any new cases in the Eastern District of Texas for 120 days. (*Id.* at 1-2.) In his *sua sponte* Order to Show Cause, Judge Gilstrap observed that Mr. Zimmerman's failure

to follow the Federal Rules "was not unique to this case" and was "the second time within the last two weeks" that he failed to comply.  (Frackman Decl. Ex. E, at 2.)  Judge Gilstrap walked through Mr. Zimmerman's history of "inattentive lawyering," including his "carelessness in drafting the complaint," and concluded that Mr. Zimmerman's actions "both waste the Court's limited resources and evidence a lack of compliance with the rules of practice."  (*Id.* at 2-3.)

Other courts have reached the same conclusion.  The Court of Appeals for the Federal Circuit affirmed a sanctions award against Mr. Zimmerman by Judge Ricardo Martinez in the Western District of Washington, who "imposed Rule 11 sanctions against Zimmerman and [his client] because it found that [his client's] infringement allegations were legally baseless and that [his client] and Zimmerman failed to perform a reasonable pre-suit investigation."  *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1328 (Fed. Cir. 2011).  The Federal Circuit likewise found that Mr. Zimmerman violated Rule 10(b)(1) in *Service Reminder LLC v. Volkswagen Group of Am., Inc.*, 2012 U.S. App. LEXIS 6124, at *4-5 (Fed. Cir. Mar. 23, 2012).  Although the court ultimately concluded that "dismissal of the appeal . . . was too strong a sanction," it nevertheless instructed him to "cure any noncompliance immediately and to comply with all of this court's rules going forward."  *Id.* at *5.  Mr. Zimmerman, however, does not appear to have taken those orders to heart, as he continues to ignore Rule 11.  Sanctions are thus necessary to deter him from future violations and from filing baseless lawsuits like this one

## CONCLUSION

For the foregoing reasons, VSC and its counsel should be sanctioned for violating Federal Rule of Civil Procedure 11(b) and ordered to pay monetary sanctions, including the attorneys' fees that BofA incurred in responding to this frivolous lawsuit.  *See* Fed. R. Civ. Pro. 11(c)(4).

10

Dated:  August ___, 2017

Respectfully submitted,

O'MELVENY & MYERS LLP

By: /s/ Andrew J. Frackman
Andrew J. Frackman, Bar No. 035421988
O'MELVENY & MYERS LLP
7 Times Square
New York, New York  10036
Telephone: (212) 326-2000
Facsimile:  (212) 326-2061
afrackman@omm.com

*Attorneys for Defendants Bank of America, N.A.
and Bank of America Corp.*

11

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that, on this ___ day of August, 2017, copies of

the foregoing Memorandum of Law were filed with the Clerk of the Court through the CM/ECF

system, which will send notification of such filing to all counsel of record.

Dated:  August ___, 2017                          Respectfully submitted,

O'MELVENY & MYERS LLP

By: /s/ Andrew J. Frackman
Andrew J. Frackman, Bar No. 035421988
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, New York  10036
Telephone: (212) 326-2000
Facsimile:  (212) 326-2061
afrackman@omm.com

*Attorneys for Defendants Bank of America, N.A.
and Bank of America Corp.*

12

Andrew J. Frackman, Bar No. 035421988
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, New York  10036
Telephone:  (212) 326-2000
Facsimile:  (212) 326-2061
afrackman@omm.com

*Attorneys for Defendants Bank of America, N.A.*
*and Bank of America Corp.*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| VERIFY SMART CORP.,<br><br>               Plaintiff,<br><br>   v.<br><br>BANK OF AMERICA, N.A., BANK OF AMERICA CORP., THE CLEARING HOUSE PAYMENTS COMPANY LLC, THE CLEARING HOUSE ASSOCIATION LLC, AND ASKELADDEN LLC,<br><br>               Defendants. | Civil Action No. 2:17-cv-04248<br><br>**DECLARATION OF ANDREW J. FRACKMAN IN SUPPORT OF BANK OF AMERICA'S MOTION FOR RULE 11 SANCTIONS** |

I, ANDREW J. FRACKMAN, declare as follows:

1.      I am a partner in the law firm of O'Melveny & Myers LLP and represent

Defendants Bank of America, N.A. and Bank of America Corp. (together, "BofA") in this action.

I make this declaration in support of BofA's motion for Rule 11 sanctions against Verify Smart

Corp. and its counsel.  I have personal knowledge of the facts recited herein.

2.      On August 4, 2017, copies of Bank of America's Notice of Motion for Rule 11

Sanctions and Memorandum of Law in Support of Bank of America's Motion for Rule 11

Sanctions were served on Plaintiff's counsel.

3. Attached as Exhibit A is a true and correct copy of a print-out from The Clearing House Payments Company LLC's website titled "Our Owner Banks," available at: https://www.theclearinghouse.org/about-tch/tch-owner-banks (last accessed August 3, 2017).

4. Attached as Exhibit B is a true and correct copy of an April 20, 2016 press release from Askeladden LLC titled "Askeladden Establishes New Committee to Challenge Low-Quality Patents," available at:  http://www.patentqualityinitiative.com/news/press%20releases/news%20items/patent%20challenge%20committee (last accessed August 3, 2017).

5. Attached as Exhibit C is a true and correct copy of a January 19, 2017 press release from Askeladden LLC titled "Askeladden Urges Review of Verify Smart's Patent Related to Identity Verification in Electronic Transactions," available at: http://www.patentqualityinitiative.com/ -/media/pqi/files/press%20releases/pqi%20-%20verify%20smart%20ipr%20release.pdf?la=en (last accessed August 3, 2017).

6. Attached as Exhibit D is a true and correct copy of an April 28, 2017 Order from United Stated District Judge Rodney Gilstrap in *Ruby Sands LLC v. First National Bank Southwest*, No. 2:16-CV-1305-JRG (E.D. Texas).

7. Attached as Exhibit E is a true and correct copy of an April 5, 2017 Order to Show Cause from United Stated District Judge Rodney Gilstrap in *Ruby Sands LLC v. First National Bank Southwest*, No. 2:16-CV-1305-JRG (E.D. Texas).

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this ___ day of August, 2017, in New York, New York.


_____
Andrew J. Frackman

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that, on this ___th day of August, 2017, copies of

the foregoing Declaration of Andrew J. Frackman were filed with the Clerk of the Court through

the CM/ECF system, which will send notification of such filing to all counsel of record.


Dated:  August ___, 2017                              Respectfully submitted,

                                                       O'MELVENY & MYERS LLP

                                                       By: /s/ Andrew J. Frackman
                                                       Andrew J. Frackman, Bar No. 035421988
                                                       O'MELVENY & MYERS LLP
                                                       Times Square Tower
                                                       7 Times Square
                                                       New York, New York  10036
                                                       Telephone: (212) 326-2000
                                                       Facsimile:  (212) 326-2061
                                                       afrackman@omm.com

                                                       *Attorneys for Defendants Bank of America,*
                                                       *N.A. and Bank of America Corp.*

3



About TCH       Issues       Payments       Education & Events       Research

## About TCH

THE PAYMENTS COMPANY

THE ASSOCIATION

TCH EXECUTIVES

TCH OWNER BANKS

A LOOK BACK

### Our Owner Banks

The Clearing House is owned by the world's largest commercial banks:

| | | | | |
|---|---|---|---|---|
| Bank of America | BANK OF THE WEST BNP PARIBAS | BARCLAYS | BB&T | BNY MELLON |
| Capital One | citibank | Citizens Bank | Comerica | Deutsche Bank |
| FIFTH THIRD BANK | HSBC | J.P.Morgan Chase & Co. | KeyBank | M&T Bank |
| MUFG | PNC BANK | REGIONS | Santander | STATE STREET |
| SunTrust | TD | UBS | usbank | WELLS FARGO |

***TCH Payments Company Shared Board Seat:*** City National Bank and First Citizens Bank.

© 2017 THE CLEARING HOUSE PAYMENTS COMPANY L.L.C.      PRIVACY POLICY      TERMS AND CONDITIONS      SITEMAP      CONTACT US

 Press Releases (/news/press releases)

In the News (/news/in the news)

## Askeladden Establishes New Committee to Challenge Low-Quality Patents

*Committee of Patent Experts Will Support Askeladden's Patent Quality Initiative to Protect Business and Promote Innovation by Challenging Patents that Should Not Have Issued*

### For Immediate Release:

Date:  April 20, 2016
Contact: Sean Oblack, 202.649.4629
Press@patentqualityinitiative.com

Download PDF of Release (/~/media/pqi/files/press releases/pqi - patent challenge committee press release.pdf?la=en)

**New York, NY, April 6, 2016:** As part of its Patent Quality Initiative, Askeladden today announced the formation of a Patent Challenge Committee that will be responsible for ongoing efforts to challenge the validity of low-quality patents. Askeladden LLC's Patent Quality Initiative (PQI) includes, among other things, challenging patents it believes are invalid through the Inter Partes Review (IPR) process at the United States Patent and Trademark Office (USPTO).

The members of the committee are patent experts with decades of combined experience:

- Judge Roderick McKelvie, former judge of the U.S. District Court for the District of Delaware (1992-2002);
- The Honorable Gerald Mossinghoff, former Assistant Secretary of Commerce, Commissioner of Patents and Trademarks (1981-1985); and
- John Thomas, Professor of Law at Georgetown University Law Center.

The announcement comes on the heels of Askeladden's successful challenges of three patents related to loyalty rewards programs before the Patent Trials and Appeals Board (PTAB). As announced on March 15 (/news/press releases/news items/pqi loyalty awards ipr pr) and April 6 (/news/press releases/news items/three consecutive patent challenge wins), the PTAB found the three patents to be unpatentable. Those poor-quality patents no longer can be asserted in wasteful, expensive patent lawsuits.

"Askeladden is committed to supporting innovation by improving the quality of patents and thereby reducing the explotation of poor-quality patents to extract money from defendants through litigation.," said Sean Reilly, General Counsel of Askeladden, L.L.C. "The experience and expertise of the Patent Challenge Committee members will bolster our efforts to improve the quality of issued patents in the financial services sector and other industries."

"I look forward to serving as a Patent Challenge Committee member and participating in this innovative approach for addressing concerns about patent quality," said Judge McKelvie.

"The committee will work to support the patent system by identifying poor-quality patents that hinder, rather than foster innovation and development of new technologies," added Mr. Mossinghoff.

The Patent Challenge Committee members—all regarded as thought leaders with respect to the patent system—collectively have extensive experience working with and within the USPTO, federal district courts, the private sector and academia.  The committee will decide which poor-quality patents Askeladden should challenge and will be responsible for conducting IPR proceedings challenging the validity of those patents.

**Biographies of The Patent Challenge Committee Members:**

**Judge Roderick McKelvie** – Judge McKelvie served as a judge for the United States District Court for the District of Delaware from 1992-2002, where he presided over numerous patent cases. Judge McKelvie is currently senior counsel at Covington & Burling, where he continues to focus on patent-related matters. He also teaches a course on patent enforcement at the George Washington University Law School. In addition, Judge McKelvie contributed to the development of the Federal Judicial Center's video for jurors titled An

Introduction to the Patent System.  He has also worked to develop model jury instructions (District of Delaware and the National Model Patent Jury Instructions). Judge McKelvie holds a B.A. from Harvard University and a Juris Doctor from the University of Pennsylvania Law School.

**Honorable Gerald Mossinghoff** –  Mr. Mossinghoff served as Assistant Secretary of Commerce, Commissioner of Patents and Trademarks from 1982-1985. Mr. Mossinghoff also served several terms on the statutory Patent Public Advisory Committee which was established to advise the Under Secretary of Commerce for Intellectual Property about the operation of the United States Patent and Trademark Office (USPTO). In 2007, Mr. Mossinghoff was inducted into the Intellectual Property Hall of Fame. He is currently senior counsel at Oblon, McClelland, Maier & Neustadt, L.L.P. and teaches patent law at the George Washington University Law School. Mr. Mossinghoff holds a B.S. in electrical engineering from St. Louis University and a Juris Doctor from the George Washington University Law School.

**Professor John Thomas** – Professor Thomas is currently a professor at Georgetown Law where he teaches courses on patent law. In addition, Professor Thomas has served as a Visiting Scholar at the Congressional Research Service for the last ten years.  In 2011, Professor Thomas was named the inaugural Thomas Alva Edison Visiting Scholar at the U.S. Patent and Trademark Office. Professor Thomas also clerked for Chief Judge Helen W. Nies of the U.S. Court of Appeals for the Federal Circuit.  Professor Thomas has published several books relating to intellectual property law. Professor Thomas holds a B.S. in computer engineering from Carnegie Mellon, a Juris Doctor from the University of Michigan, and an L.L.M from the George Washington University Law School.

**About Patent Quality Initiative**

Askeladden L.L.C. is an education, information and advocacy organization dedicated to improving the understanding, use and reliability of patents in financial services and other industries. As part of its Patent Quality Initiative, Askeladden strives to promote better patents and patent holder behaviors by regularly filing amicus briefs, Inter Partes Reviews (IPRs) and engaging in educational activities.. For more information, please visit www.patentqualityinitiative.com (http://www.patentqualityinitiative.com) and follow us on Twitter at https://twitter.com/PatentSean (https://twitter.com/PatentSean).

Terms and Conditions (/terms and conditions) | ©2017 Askeladden L.L.C. All rights reserved.

**Askeladden Urges Review of Verify Smart's Patent Related to Identity Verification in Electronic Transactions**

*Seeks cancellation of all claims in view of known authentication and verification technologies*

**For Immediate Release:**
Date: **January 19, 2017**
Contact: Sean Oblack, 202.649.4629
Press@patentqualityinitiative.com

New York, NY - Askeladden LLC, as part of its Patent Quality Initiative, is challenging the validity of U.S. Patent No. 8,285,648 which Verify Smart Corporation has asserted against technology and financial services companies including Apple, Facebook, Microsoft and Discover. Askeladden's Patent Challenge Committee—respected and experienced experts in the field of patent law—decided to file this challenge as part of Askeladden's efforts to protect innovation in the financial and technology industries.

Verify Smart's patent is directed to a system and methods for verifying the identity of users in the course of electronic transactions. Askeladden's petition for *Inter Partes* Review (IPR), filed yesterday with the Patent Trial and Appeal Board (PTAB), argues that the patent's claims were known and obvious at the time the application for the patent was filed and therefore should be found unpatentable by the PTAB.

"Lawsuits based on poor quality patents undermine the core purposes of the patent system," said Sean Reilly, General Counsel of Askeladden. "We look forward to continuing our efforts to promote patent quality in 2017."

Askeladden is represented by Amster, Rothstein & Ebenstein LLP.

**About Patent Quality Initiative**
Askeladden is an education, information and advocacy organization with the goal of improving the understanding, use and reliability of patents in financial services and other industries. As part of its Patent Quality Initiative, Askeladden strives to promote better patents and patent holder behaviors by regularly filing amicus briefs, Inter Partes Reviews (IPRs) and engaging in educational activities.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| RUBY SANDS LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CASE NO. 2:16-CV-1305-JRG |
| | § | (LEAD CASE) |
| FIRST NATIONAL BANK SOUTHWEST, | § | |
| | § | |
| *Defendant*. | § | |

## <u>ORDER</u>

The Court held a hearing on April 26, 2017, regarding the Order to Show Cause (Dkt. No. 29), which required Mr. Jean-Marc Zimmerman, an attorney licensed in this Court, to appear and show cause as to why certain conduct described in such Show Cause Order did not violate Rule 11 of the Federal Rules of Civil Procedure. This Order summarizes and memorializes the Court's rulings at said hearing.

Mr. Zimmerman's repeated acts of negligence in his practice before this Court—as further expounded upon in the Court's Order to Show Cause and on the record at the hearing—compel the Court to conclude that some targeted action should be taken to prevent further lapses in adequate compliance with the Federal Rules of Civil Procedure, the Local Rules of Practice and the direct instructions of the Court. Such is necessary to support and uphold the integrity of this Court. While Mr. Zimmerman admirably accepted fault at the hearing and made no excuses for his conduct, the fact remains that the instances which precipitated the Court's Order to Show Cause nonetheless occurred and should be addressed. Accordingly, pursuant to Rule 11 of the Federal Rules of Civil Procedure the Court **ORDERS** that Mr. Zimmerman be and he is prohibited from filing any new cases within the Eastern District of Texas for 120 days from the date of the hearing on April 26, 2017. At the expiration of such 120 days and unless

otherwise ordered, Mr. Zimmerman will be permitted to resume filing new cases within this District. During the pendency of such 120-day prohibition on filing new cases, Mr. Zimmerman shall continue representing clients in all his pending cases as previously filed and currently pending in this Court.

The Court finds that this sanction justly and adequately addresses the established disregard for the rules of this Court posed by Mr. Zimmerman's conduct, yet avoids the imposition of an unreasonably excessive penalty.  The Clerk of this Court is directed to deliver this order to each Deputy in Charge for each Division of this District, *instanter*.

**So ORDERED and SIGNED this 28th day of April, 2017.**


_____
RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| RUBY SANDS LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CASE NO. 2:16-CV-1305-JRG |
| | § | (LEAD CASE) |
| FIRST NATIONAL BANK SOUTHWEST, | § | |
| | § | |
| *Defendant*. | § | |

## <u>ORDER TO SHOW CAUSE</u>

The Court issues this Order *sua sponte*. On Thursday, March 30, 2017, Plaintiff Ruby Sands LLC ("Ruby Sands") filed a Notice of Voluntary Dismissal Regarding Defendant First National Bank Southwest ("FNB Southwest") pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure. (Dkt. No. 24.) Rule 41(a)(1)(A)(i) states that a plaintiff may dismiss an action without a court order by filing "a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment." Fed. R. Civ. P. 41(a)(1)(A)(i). In ostensible compliance with Rule 41, Ruby Sands—and its counsel of record, Jean-Marc Zimmerman—expressly represented in said motion that FNB Southwest "has not served upon the Plaintiff either an answer or a motion for summary judgment." (Dkt. No. 24 at 1.)

This representation, however, is demonstrably false. On February 27, 2017, FNB Southwest filed its Answer and Affirmative Defenses. (*See* Dkt. No. 11.) In light of FNB Southwest's Answer, Ruby Sands' Notice is ineffective for its failure to comply with the Federal Rules of Civil Procedure.

While this misrepresentation, standing alone, would not ordinarily warrant significant scrutiny, the Court observes that Mr. Zimmerman's careless conduct is not unique to this case.

Indeed, this is the second time within the last two weeks that Mr. Zimmerman has filed a deficient and inaccurate notice of dismissal pursuant to Rule 41(a)(1)(A)(i) after the defendant has answered. In Case No. 2:16-cv-838, *Banertek LLC v. MeetMe, Inc.*, Mr. Zimmerman is counsel of record for plaintiff Banertek, which filed a Notice of Dismissal pursuant to Rule 41(a)(1)(A)(i) on March 25, 2017. (C.A. No. 2:16-cv-838, Dkt. No. 11.) In that notice, Banertek also represented that the defendant had not served either an answer or motion for summary judgment. (*Id.* at 1.) However, much like the present case, there the defendant had previously answered on December 9, 2016. (Dkt. No. 7.) What is more, the Court explicitly called this misrepresentation to Mr. Zimmerman's attention at a Scheduling Conference held in open court on March 27, 2017. The Court clearly directed Mr. Zimmerman to re-file these dismissal papers in compliance with the Federal Rules and to exercise greater care in practicing before the Court. Despite this warning, Mr. Zimmerman incredibly proceeded to file an identically deficient notice in the present case—*a mere three days* after the Court's admonition at the Scheduling Conference.[1]

Unfortunately, Mr. Zimmerman's inattentive lawyering does not begin with the Banertek case. Instead, the genesis of this Court's encounters with Mr. Zimmerman's unfortunate proclivities occurred in mid-2016, when the Court granted a motion to dismiss in Case No. 2:15-cv-1955, *Ruby Sands v. American National Bank Texas*. There, in its Order granting the motion, the Court specifically addressed Mr. Zimmerman's carelessness in drafting the complaint at issue. *See Ruby Sands LLC v. Am. Nat'l Bank of Tex.*, 2016 WL 3542430, at \*5 (E.D. Tex. June 28, 2016). The Court noted that Mr. Zimmerman included language in Ruby Sands' complaint "presumably taken from a pleading directed to a different case, and completely unrelated to the

---

[1] The Court also notes that the Notice of Dismissal filed in this case was signed by Mr. Zimmerman in his capacity as counsel for *Banertek*, rather than *Ruby Sands*. (Dkt. No. 24 at 1.) Banertek, however, is not a party to these proceedings. This evidences an ever-eroding level of practice by Mr. Zimmerman.

patent-in-suit." *Id.* In further commenting on the "lack of care with which Ruby Sands drafted and filed its pleadings," the Court noted that Ruby Sands amended its complaint two months after filing suit, yet still failed to correct the inclusion of statements copied-and-pasted from irrelevant pleadings. *Id.* Given that the Court is now faced with what is, most charitably, described as Mr. Zimmerman's systemic carelessness, it appears without direct action this Court will continue to be forced to confront such matters which both waste the Court's limited resources and evidence a lack of compliance with the rules of practice.

In light of these facts, the Court reluctantly concludes that Mr. Zimmerman's demonstrated course of conduct exceeds the bounds of mere inadvertence. Accordingly, the Court hereby notices a hearing for April 26, 2017 at 1:30 p.m. at which Mr. Zimmerman is **ORDERED** to appear and show cause as to why the conduct described herein does not violate Rule 11(b) of the Federal Rules of Civil Procedure and why appropriate sanctions thereunder should not be imposed.

**So ORDERED and SIGNED this 5th day of April, 2017.**


_____
RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE