# EXHIBIT 1

```
 1          UNITED STATES PATENT AND TRADEMARK OFFICE

 2          BEFORE THE PATENT TRIAL AND APPEAL BOARD

 3     -------------------------------X
       ASKELADDEN LLC,                :
 4                                    : Case No:
                  Petitioner          : IPR2017-00726
 5                                    :
                     -vs-             : Patent 8,285,648
 6                                    : B2
       VERIFY SMART CORP.,            :
 7                                    : Pages 1 - 152
                  Patent Owner        :
 8     -------------------------------X

 9

10              PROTECTIVE ORDER MATERIAL

11      Deposition of The Honorable Roderick R. McKelvie

12                    Washington, D.C.

13              Thursday, October 26, 2017

14

15

16

17

18

19

20

21

22

23

24     Reported by:  Kathleen M. Vaglica, RPR, RMR

25     Job No:  216940
```

```
 1
 2
 3
 4
 5
 6
 7                    Thursday, October 26, 2017
 8                         (12:04 p.m.)
 9
10   Deposition of The Honorable Roderick R. McKelvie,
11   held at the offices of:
12
13        Price Benowitz, LLP
14        409 7th Street, N.W.
15        Suite 200
16        Washington, D.C.  20004
17
18
19   Pursuant to notice, before Kathleen M. Vaglica, RPR,
20   RMR, a Notary Public in and for the District of
21   Columbia.
22
23
24
25
```

```
 1                 A P P E A R A N C E S

 2

 3

 4   COUNSEL FOR PATENT OWNER, VERIFY SMART CORP.

 5         STEVEN M. HOFFBERG, ESQUIRE

 6         Tully Rinckey, PLLC

 7         777 Third Avenue

 8         22nd Floor

 9         New York, NY  10017

10         (646) 201-9100

11         shoffberg@tullylegal.com

12

13         JEAN-MARC ZIMMERMAN, ESQUIRE

14         Zimmerman Law Group

15         226 St. Paul Street

16         Westfield, NJ  07090

17         (908) 654-8000

18

19

20

21

22

23

24

25
```

```
 1   COUNSEL FOR PETITIONER, ASKELADDEN LLC
 2        CHARLES R. MACEDO, ESQUIRE
 3        MARK BERKOWITZ, ESQUIRE
 4        Amster, Rothstein & Ebenstein, LLP
 5        90 Park Avenue
 6        New York, NY  10016
 7        (212) 336-8000
 8        cmacedo@arelaw.com
 9        mberkowitz@arelaw.com
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1        Q.   And where does Askeladden receive its
 2   funds from?
 3             MR. MACEDO:   Objection to form.
 4             THE WITNESS:   I don't know.
 5   BY MR. HOFFBERG:
 6        Q.   Have you ever asked?
 7             MR. MACEDO:   Objection to form.
 8             THE WITNESS:   No.  I've seen provisions in
 9   the amended agreement that restrict certain members
10   of Clearing House from making contributions to
11   Askeladden for particular matters.
12   BY MR. HOFFBERG:
13        Q.   That you say for particular matters.
14        A.   Right.
15        Q.   So what that means is that a, there are
16   certain persons who are prohibited from selectively
17   funding particular activities of the Patent
18   Challenge Committee?
19        A.   Right.  We want to avoid being in privy
20   with the member banks of The Clearing House, so the
21   guidelines and the amended agreement try to insulate
22   PCC from contact with or funding by members of The
23   Clearing House.
24        Q.   Okay.  Who are the members of The Clearing
25   House?
```

1        A.   It's not been formally identified to me.
2   I looked it up on the website to see.  I saw a
3   number of financial institutions.
4        Q.   Is it fair to say that the web -- which
5   website was that?
6        A.   I don't remember.
7        Q.   Is it fair to say that the website you
8   looked it up on would be, would have an accurate
9   reflection of who the members are?
10            MR. MACEDO:  Objection to form.
11  BY MR. HOFFBERG:
12       Q.   So how are you supposed to know who the
13  members are?
14            MR. MACEDO:  Did you withdraw your
15  question?
16            MR. HOFFBERG:  I'm sorry.  Was there a
17  question?  I withdraw my question.
18  BY MR. HOFFBERG:
19       Q.   How, under this agreement, are you
20  supposed to know who you're prohibited from
21  receiving funds from or otherwise limitations in
22  your actions?
23            MR. MACEDO:  Objection to form.
24            THE WITNESS:  Well, this may be something
25  that would fall under the responsibilities of Jim

1  Howard who is the administrative assistant to the
2  committee.
3  BY MR. HOFFBERG:
4      Q.   When you say Jim Howard is the
5  administrative assistant, who is Jim Howard?
6      A.   Jim Howard is a lawyer who has an
7  agreement with The Clearing House consistent with
8  paragraph 10C, provides assistance and support at
9  the discretion of the Patent Challenge Committee,
10 will have no authority to direct, bond, or otherwise
11 control the activities of the Patent Challenge
12 Committee.
13          MR. MACEDO:  I believe you mean 11C.
14          THE WITNESS:  11C.
15 BY MR. HOFFBERG:
16     Q.   Okay.  He's a lawyer.  Do you know his
17 title?
18     A.   I don't know his title.
19     Q.   You say he's an administrative assistant,
20 but he is a lawyer of some stature?
21     A.   He is a lawyer of some stature.
22     Q.   Okay.  So I just didn't want to diminish
23 his position.
24     A.   No, I don't mean to diminish his position.
25     Q.   I'd like to show you Patent Owner's

```
 1  the committee.
 2       Q.   And how did this patent come to your
 3  attention?
 4       A.   Jim forwarded it to me.
 5       Q.   So Jim Howard first suggested to you that
 6  you should look at this patent, which I'll call the
 7  '648 patent?
 8            MR. MACEDO:  Objection to form.
 9            THE WITNESS:  I don't know that he first
10  suggested it to me, but he first forwarded it to me.
11  BY MR. HOFFBERG:
12       Q.   Well, who first called your attention to
13  the existence of this patent?
14       A.   Jim Howard.
15       Q.   Okay.  And did any other member of the
16  committee have prior knowledge of this patent?
17       A.   I don't know.
18       Q.   But none of them had indicated to you that
19  this patent was of interest to them prior to Jim
20  Howard forwarding it to you?
21       A.   Correct.
22       Q.   So would it be fair to say that the
23  interest in this patent came from Jim Howard?
24            MR. MACEDO:  Objection to form.
25            THE WITNESS:  It might have come from Jim
```

```
 1   Howard.  It might have come from outside counsel.
 2   BY MR. HOFFBERG:
 3        Q.   So why would outside counsel have called
 4   your attention to this patent?
 5        A.   Because we make it known to counsel that
 6   we were interested in their input on potential
 7   candidates to file petitions on.
 8        Q.   Now, according to the Patent Challenge
 9   Guidelines, there are limits on which patents you
10   can challenge; is that correct?
11             MR. MACEDO:  Objection to form.
12             THE WITNESS:  Can you show me the
13   paragraph?
14   BY MR. HOFFBERG:
15        Q.   Again, referring to Exhibit 1013, I think
16   we can move to Patent Challenge Guidelines pages 18
17   to 20.  And if you could look at that and tell me
18   what limitations you think are relevant with respect
19   to patents that you can and cannot challenge.
20             MR. MACEDO:  Objection to form.
21             THE WITNESS:  (Witness reviews document.)
22   Well, subject heading A identifies general
23   categories of information about potential target
24   patents and what we should be looking for when we
25   review patents we're considering filing petitions
```

1  "The Patent Challenge Committee shall have sole

2  discretion to determine how to apply the foregoing

3  criteria and shall not be obligated to take into

4  account any factor in any case."

5          That's the middle of page 19 of 20 with

6  page number 13 also.

7          MR. MACEDO:  Is there a question there?

8          MR. HOFFBERG:  No.

9          THE WITNESS:  What's the question?

10 BY MR. HOFFBERG:

11     Q.   The question was I point your attention to

12 that paragraph.

13     A.   I see it.

14     Q.   How, how did you apply your discretion in

15 this case?

16          MR. MACEDO:  To the extent that you are

17 not disclosing confidences provided by counsel, you

18 may answer, if you can.

19          THE WITNESS:  We exercised our authority

20 consistent with this paragraph by confirming that

21 Verify Smart had pending litigation against Wells

22 Fargo, and we decided to proceed with the

23 investigation, but to defer decision on whether to

24 file so that we wouldn't contravene these directions

25 in these paragraphs.

```
 1  the invention or licenses the invention.  I don't
 2  think it refers to race or gender.  I think it
 3  refers to status.
 4  BY MR. HOFFBERG:
 5      Q.   Okay.  And -- off the record for a minute.
 6           (Discussion held off the record.)
 7  BY MR. HOFFBERG:
 8      Q.   I'd like to refer back to page 10 of 20
 9  with footer number 4 of Exhibit 1013, paragraph 11C.
10      A.   All right.
11           MR. MACEDO:  11C in the agreement?
12           MR. HOFFBERG:  It's 11C in the Amended LLC
13  Agreement.
14           THE WITNESS:  All right.
15  BY MR. HOFFBERG:
16      Q.   You indicated that Mr. Jim Howard
17  presented the '648 patent to you for your
18  consideration?
19           MR. MACEDO:  Objection to form.
20           THE WITNESS:  Yes.
21  BY MR. HOFFBERG:
22      Q.   Okay.  But 11C says -- I'll have to read
23  the whole thing.  I'm sorry.  "The Patent Challenge
24  Committee shall be solely responsible for carrying
25  out the purpose and shall operate independently of
```

```
 1  the Executive Committee, the sole member, and any
 2  other person that is affiliated with other otherwise
 3  related to the sole member of the company provided,
 4  however, that the Patent Challenge Committee shall
 5  consider (but shall not be bound by) the principles
 6  set forth in the Patent Challenge Guidelines and
 7  provided further that the Executive Committee may
 8  appoint in its discretion a person or persons
 9  affiliated with the sole member to assist and
10  support the activities of the Patent Challenge
11  Committee.  Such a person (S) shall provide such
12  assistance and support at the discretion of the
13  Patent Challenge Committee, but shall have no
14  authority to direct, bind, or otherwise control
15  activities of the Patent Challenge Committee."
16          And my question is has the Patent
17  Challenge Committee ever challenged a patent that
18  was not proposed by Mr. Howard?
19          MR. MACEDO:  Objection to form.
20          THE WITNESS:  He doesn't propose.  He
21  identifies and submits to the committee.  Outside
22  counsel identifies and submits to him potential
23  candidates to be subject to the petitions to review.
24  BY MR. HOFFBERG:
25      Q.   And so the Patent Challenge Committee
```

```
 1  considers patents that are presented to it by
 2  Mr. Howard?
 3          MR. MACEDO:  Objection to form.
 4          THE WITNESS:  Yes, we do.  We also
 5  consider other patents.
 6  BY MR. HOFFBERG:
 7      Q.  And where does your knowledge of these
 8  other patents come from?
 9      A.  It can come from firms that approach us,
10  members of the committee.  It can come from our own
11  reading and review of reports on cases filed.
12      Q.  Has that ever happened?
13      A.  Yes.
14      Q.  And if you were to do reading and review
15  to find cases that have been filed, what steps would
16  you take in that case?
17          MR. MACEDO:  Objection to form.
18  BY MR. HOFFBERG:
19      Q.  I'm sorry.  So noted.  You indicated that
20  that has happened, that you have instituted a review
21  of patents based on your own research?
22      A.  No, I didn't say that.
23      Q.  I'm sorry.  So what did you say?
24      A.  I meant to say that members of the
25  committee are free to identify potential candidates
```

1   and bring them to the attention of members of the
2   committee.
3       Q.   And has that happened?
4       A.   Yes, it has.
5       Q.   And after these patents are brought to the
6   attention of the committee -- you said that has
7   happened.  In the cases that that has happened, what
8   is the process that occurred after that?
9       A.   The committee discussed and decided not to
10  pursue action against the patent identified by a
11  member of the committee.
12      Q.   So it would be fair to say that the Patent
13  Challenge Committee has only challenged patents that
14  were brought to its attention by Mr. Howard?
15      A.   No.
16           MR. MACEDO:  Objection to form.
17           THE WITNESS:  No.  I say sometimes other
18  law firms identify patents and bring them to
19  Mr. Howard's attention and he brings them to the
20  committee's attention.
21  BY MR. HOFFBERG:
22      Q.   Now, when those other law firm provide you
23  with some proposal, do they have a retainer
24  agreement with Askeladden before submitting those
25  proposals?

```
 1  done.
 2      Q.   But my original question was did you hire
 3  the searcher?
 4      A.   And I said I didn't hire the searcher.
 5      Q.   Right.  So, if a search was done, it was
 6  done by outside counsel without your request?
 7      A.   May have been done with my request, with
 8  our permission.  That is the way we work is we get a
 9  proposal from counsel, and the proposal says the
10  next step would be for them to do a validity study.
11  Typically, the validity study would be the prior art
12  search, but in this case it may not have been.  May
13  have been they had sufficient prior art to proceed
14  with the analysis.
15      Q.   And you're saying you don't recall in this
16  case exactly what happened?
17      A.   I don't recall.  I have a recollection
18  that there were prior petitions filed against this
19  patent that were settled out and withdrawn.  There
20  may have been sufficient information in those
21  petitions to support another petition.
22      Q.   Has the PCC ever been sued?
23      A.   Not since I've been there.
24           MR. MACEDO:  Objection to form.
25  BY MR. HOFFBERG:
```

ACKNOWLEDGMENT OF DEPONENT

I, The Honorable Roderick R. McKelvie, do hereby acknowledge I have read and examined the foregoing pages of testimony, and the same is a true, correct and complete transcription of the testimony given by me, and any changes and/or corrections, if any, appear in the attached errata sheet signed by me.

_R. McKelvie_  
Signature

_11/4/17_  
Date

```
 1              CERTIFICATE OF NOTARY PUBLIC
 2              I, Kathleen M. Vaglica, the officer before
 3   whom the foregoing deposition was taken, do hereby
 4   certify that the witness whose testimony appears in
 5   the foregoing deposition was duly sworn by me; that
 6   the testimony of said witness was taken by me in
 7   stenotype and thereafter reduced to typewriting
 8   under my direction; that said deposition is a true
 9   record of the testimony given by said witness; that
10   I am neither counsel for, related to, nor employed
11   by any of the parties to the action in which this
12   deposition was taken; and, further, that I am not a
13   relative or employee of any attorney or counsel
14   employed by the parties hereto, nor financially or
15   otherwise interested in the outcome of the action.
16                          [Signature: Kathleen M. Vaglica]
17
18                          Notary Public in and for
19                          District of Columbia
20
21
22
23
24   My Commission Expires:
25   February 28, 2021
```

```
1              E R R A T A   S H E E T
2      I, Roderick R. McKelvie, do hereby certify that I
3    have read the foregoing transcript of my testimony, and
4    further certify that it is a true and accurate record
5    of my testimony (with the exception of the corrections
6    listed below).
```

| Page | Line | Correction |
|---|---|---|
| 7 | 18 | Change "ATVI" to "AbbVie" |
| 11 | 12 | Change "operations" to "operation" |
| 16 | 12 | Change "Georgetown" to "George Washington University" |
| 16 | 12-13 | Change "two courses in" to "a course on" |
| 16 | 16 | Change "I guess as an expert" to "An expert" |
| 20 | 16 | Delete "to represent as" |
| 20 | 18 | Change "conflicts and conflicts came back" to "conflicts. Conflicts came back." |
| 27 | 12-13 | Change "show to represent" to "show who represented" |
| 27 | 16 | Change "show to represent" to "show who represented" |
| 29 | 20 | Add "an" after "into" |
| 36 | 21 | Add "the" after "insulate" |
| 47 | 3 | Change "ATVI" to "AbbVie" |
| 52 | 6 | Change "Joe" to "Gerry" |
| 96 | 11 | Add "they" after "that" |
| 103 | 9 | Add "." after "patent" and capitalize the first letter of "that" |
| 104 | 3-4 | Change "him as a" to "his" |
| 133 | 14 | Change "been forwarded" to "the authority" |

11/4/17                         R. McKelvie
Date                            Roderick R. McKelvie