# EXHIBIT 2

# Are more than 90 percent of patents challenged at the PTAB defective?



By **Steve Brachmann** & **Gene Quinn**
June 14, 2017

Print Ar

**Only 4 percent of all PTAB petitions for review proceedings end with a final written decision in which all claims are upheld as patentable.**

The statistics published by the U.S. Patent and Trademark Office about the activities of the Patent Trial and Appeal Board (PTAB) paint a misleading picture, which is used to justify the agency's budget requests but does a poor job of adequately portraying the effects of post-grant review proceedings on intellectual property owners. For example, PTAB statistics published last April by the USPTO indicated that, while petitioners seeking *inter partes* review (IPR) proceedings at PTAB challenged slightly more than 99,000 claims, only 10,175 claims were found unpatentable by PTAB judges in a final written decision. However, a recent article on this site pointed out issues in how gang tackling of patents distorts the reality behind those statistics from the perspective of the patent owner.

If you use the USPTO's statistics as reported above, it looks like only slightly more than 10 percent of challenged claims are invalidated by PTAB, which is simply not true. Multiple petitioners will often gang up to challenge a single claim, which is why a patent-owning entity like Zond can wind up losing every one of the 371 patent claims it owned while the PTAB can claim that the institution rate for IPR challenges on Zond's patents was 88.6 percent. If Zond experienced only an 88.6 institution rate how did they lose all 371 of the patent claims they owned? Obviously, the statistics provided by the Patent Office are wrong.

/

Perhaps, instead of using the perspective employed by the USPTO on the percentage of claims invalidated at PTAB, we should be talking about how many patents contain errors upon review by the PTAB. Of course, the reason the Patent Office prefers not to use this metric is because it looks like the percentage of patents that have defective claims exceeds 90 percent, which means means the Patent Office has a problem with an overactive PTAB, grossly inadequate patent examination, or both.

Using the legal data analytic tools available through Lex Machina, we're able to see a different perspective on PTAB data based on the outcomes of trial resolutions. Overall, across nearly 7,000 PTAB petitions, the overwhelming majority of which are IPRs, only half reach the institution stage. Again, that's not to say that only half of challenged claims have review proceedings instituted as many of the petitions which don't reach institution challenge the same claims as the instituted petitions. Given PTAB rules on consolidating multiple cases challenging claims from a single patent, it could be safely assumed that there's a 1:1 ratio of trials to patents after institution of a trial at PTAB. Also, it needs to be pointed out that, if 50 percent of PTAB petitions are instituted, only 17 percent are denied. Many petitioners continue to challenge the same patent despite such denials of institution (as in the case of Zond), so it's likely that many of those claims eventually have a petition instituted. 14 percent of petitions are still open pre-institution and 13 percent reached settlements in which a patent owner almost certainly gave up claims or otherwise agreed to end the case on unfavorable terms. ==Only 4 percent of all PTAB petitions for review proceedings end with a final written decision in which all claims are upheld as patentable.==

==That's right, only 4 percent of all PTAB petitions end with a final written decision in which all claims are upheld as patentable!==



A few other data-based perspectives exist with a narrower focus on petitions that have lead to final written decisions issued from PTAB administrative patent judges (APJs). Of the 1,556 petitions for patent review proceedings at the PTAB that have reached final written decisions, only 16 percent of those final written decisions left all claims upheld. Of the remaining 84 percent of cases, a full 69 percent (1,076 petitions) have led to findings of all claims unpatentable; with 15 percent of final written decisions a mixture of claim findings in which at least some claims have been invalidated. Given that different petitions can

/

challenge different claims from the same patent, these statistics suggest that less than 16 percent of challenged patents reaching final written decisions may be walking away unscathed.

The numbers move even more significantly tilted when adding in both pre- and post-institution settlements; again, many (if not all) of these settlements result in outcomes unfavorable to the patent owner. When looking at these numbers, only 8 percent of petitions reach a final written decision of all claims upheld. There's no data on PTAB settlements which allows us to definitively say this, but it could be the case that more than 90 percent of patents challenged at PTAB meet some sort of tragic fate which involves the invalidation or amendment of at least some of its claims.



Lex Machina data scientist Brian Howard did note that there are a few reasons why the numbers for PTAB trials might naturally reach these conclusions. First, the role of the institution decision is such that APJs have decided that a petitioner has already proven that their invalidity challenge has merit. "If judges are doing a really good job on institution, one should expect to see that most of the decisions instituted reach a fairly favorable petitioner outcome," Howard said. "Institution decisions seem to be the gatekeepers." As well, Howard noted that, from a petitioner's standpoint, the filing of serial petitions may be less a function of ganging up on a patent owner and more a strategic breaking up of material in a way that some entities do when filing for reexaminations at the USPTO. Howard also cited information from a soon-to-be-released Lex Machina report on PTAB statistics indicates that the top 55 or so patent owners targeted by PTAB challenges accounts for 20 percent of the total number of petitions filed, and Zond received the most challenges but only accounts for 1 to 2 percent of the total.

And yet, there are reasons to think that the statistics we've pulled from Lex Machina suggests major issues with PTAB activity. At least 84 percent of patents reaching a final written decision in a PTAB validity challenge are adjudicated to have at least one invalid claim (usually many more than one claim), with 69 percent having all claims invalid. Add settlements, which are virtually certain to be unfavorable to patent owners (especially post-institution, when the petitioner has much more leverage), and at least 92 percent of patents challenged are defective. Given that these are also patents which have been pre-vetted by owners for licensing and enforcement purposes, that suggests that either PTAB APJs are being too aggressive in invalidating patents or that the examiners are producing incredibly poor quality patents through extremely poor quality patent prosecution.

/

If 92 percent of these commercially valuable, infringed and pre-vetted patents are failing when challenged, there is a serious problem somewhere along the line. We know that an overactive PTAB invalidates patents at a greater rate than in district courts, and such a high defect rate suggests that improvements to examination quality are sorely needed. But oddly the Patent Office praises the PTAB but never questions patent examiner quality. Why the disconnect?

These patents with defects are are considered to be incredibly valuable patents and if those are defective at a rate of 92 percent what does that say about the 98+ percent of patents that issue but aren't valuable enough to assert and challenge? As former Chief Judge Paul Michel noted at the International IP Commercialization Council event in DC on May 8th, it's not necessarily that PTAB is hostile to patents but that the processes of that tribunal are geared towards high rates of invalidation, which doesn't square with results achieved in federal court.

Tags: inter partes, inter partes review, invalidity, IPR, patent, patent office, Patent Trial and Appeal Board, patents, post grant procedures, post grant proceedings, PTAB, USPTO

Posted In: Courts, Government, IP News, IPWatchdog Articles, USPTO

There are currently 85 Comments comments:

### Greg DeLassus June 14, 2017 10:57 am

"That's right, only 4 percent of all PTAB petitions end with a final written decision in which all claims are upheld as patentable!"

Are we supposed to be shocked by that number? It seems to me that a very small number of cases that end with no claims canceled is an indicator that the process is functioning well. If (for example) ~20% of IPR final written decisions found all claims patentable, that would imply that the PTAB is badly wasting everyone's time by instituting on petitions with weak arguments for unpatentability. If the institution process is done well, then one should *expect* to have very few final written decisions that find all challenged claims patentable.

Also, it seems to me that there is a second layer of selection bias that we need to consider when assessing the PTAB's status as a (so-called) "death squad": how many infringers *contemplate* filing a petition, and then search the art and find that there really is no basis on which to make a solid anticipation/obviousness argument. That is to say, the patents that get petitioned are enriched for claims that are *plausibly* susceptible to invalidation. The fact that such a miniscule fraction of granted claims ever get challenged in IPR/PGR/CBM reflects, at least in part, the result of a *high* quality of examination. Where the examiner has done a thorough job at the front end, the IPR petition never gets filed because the would-be petitioner realizes that it would just be a waste of time and resources.