# EXHIBIT 5

PROTECTIVE ORDER MATERIAL

ASK Approved 03-09-16
CW2239350

# AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT
# OF
# ASKELADDEN L.L.C.

This Amended and Restated Limited Liability Company Agreement (this "**Agreement**") of Askeladden L.L.C (the "**Company**"), a single member limited liability company, is entered into by The Clearing House Payments Company L.L.C. as the sole member (the "**Sole Member**") and shall be effective as of March 1, 2016.

The Sole Member formed the Company on June 17, 2014 as a limited liability company pursuant to the Delaware Limited Liability Company Act, 6 Del. C § 18-101, et seq., as amended from time to time (the "**Act**").

The Sole Member entered into a limited liability company agreement of the Company effective as of July 9, 2014 (the "**Original Agreement**").

The Sole Member desires to amend and restate the Original Agreement as follows:

1. <u>Name</u>. The name of the limited liability company is Askeladden L.L.C.

2. <u>Duration</u>. The duration of the Company shall be perpetual, and the Company shall dissolve only as provided in Section 16.

3. <u>Purpose</u>. The Company is formed for the object and purpose of, and the nature of the business to be conducted and promoted by the Company is, engaging in any lawful act or activity for which limited liability companies may be formed under the Act and engaging in any and all activities necessary or incidental to the foregoing.

4. <u>Principal Business Office</u>. The principal business office of the Company shall be located at 1114 Avenue of the Americas, New York, NY 10036, or at such other location as may hereafter be determined by the Executive Committee (as defined below).

5. <u>Registered Office</u>. The address of the registered office of the Company within the State of Delaware is Corporation Trust Center, 1209 Orange Street, County of New Castle, Wilmington, Delaware 19801.

6. <u>Registered Agent</u>. The name of the registered agent of the Company for service of process on the Company in the State of Delaware is The Corporation Trust Company.

7. <u>Sole Member</u>. The Sole Member is The Clearing House Payments Company L.L.C.

8. <u>Authorized Persons</u>. It is hereby ratified and confirmed that John Sorensen was designated as an authorized person, within the meaning of the Act, to execute, deliver and file the certificate of formation of the Company. Each of the Sole Member, any individual designated by the Executive Committee (as defined below), and any Officer (as defined below) of the Company (as may from time to time be designated in accordance with this Agreement) is hereby designated as an authorized person within the meaning of the Act to

DocuSign Envelope ID: 864A0302-3AE2-4159-8711-9702855D12CC
DocuSign Envelope ID: 0029CCDB-1405-4992-9F8B-3D971DCB243B

execute, deliver and file any amendment and/or restatement of the certificate of formation of the Company and any other certificates (and any amendments and/or restatements thereof) necessary for the Company to qualify to do business in a jurisdiction in which the Company may wish to conduct business.

9. <u>Executive Committee.</u>

a) Except as provided for in Sections 10 and 11, the Executive Committee as described in this Section 9 shall be solely responsible, among other things, for: (i) managing the business and affairs of the Company, including in connection with the Patent Quality Initiative; (ii) selecting both the sources of funding for the Company and the uses of funds of the Company; (iii) selecting service providers for the Company, which may be the Sole Member or any third party; and (iv) amending, waiving or terminating the Patent Challenge Guidelines attached hereto as **Exhibit A** (the "**Patent Challenge Guidelines**"). The Executive Committee shall be the Company's "manager" within the meaning of the Act. The Company will have no employees. The services provided by personnel of the Sole Member who serve as members of the Executive Committee of the Company, as Officers (as defined below) of the Company, or who provide ancillary business services to or for the Company (e.g., accounting services), will be provided pursuant to a services agreement between the Sole Member and the Company. The members of the Executive Committee shall be designated and may be removed by the Sole Member at its discretion, and each such member of the Executive Committee shall serve until removed by the Sole Member or until his or her earlier resignation as provided herein. Any member of the Executive Committee may resign at any time by written notice to the Executive Committee. A resignation shall take effect at the time specified in the notice (or, in the absence of a specified time, the time of receipt). Unless otherwise stated in a notice of resignation, no acceptance of the resignation shall be necessary to make it effective.

b) The Executive Committee shall consist of at least three (3) members selected by the Sole Member from among the current officers of the Sole Member.

c) When the Executive Committee consists of an even number of members, one-half of the members of the Executive Committee at any time in office shall constitute a quorum of the Executive Committee. When the Executive Committee consists of an odd number of members, a simple majority of the members of the Executive Committee at any time in office shall constitute a quorum of the Executive Committee. Each member of the Executive Committee shall have one vote on all matters presented to the Executive Committee for a vote. Every act or decision done or made by a majority of the members of the Executive Committee present at a meeting of the Executive Committee duly held at which a quorum is present shall be regarded as the act of the Executive Committee, including the formation, execution and fulfillment of contracts, and shall be executed by an Executive Committee member or an Officer (as described below) at the direction of the Executive Committee. No individual member of the Executive Committee, acting as such, shall have any authority to bind or act for, or assume any obligation or responsibility on behalf of the Company. Meetings of the Executive Committee may be held at any time and place designated in a call by one or more members of the Executive Committee. Any action required or permitted to be taken at any meeting of the Executive Committee may be taken without a meeting by written consent, if all members of the Executive Committee consent to the action in writing or by electronic transmission and the written consents

DocuSign Envelope ID: 864A0302-3AE2-4159-8711-070285FD12CC
Case 2:17-cv-04248-JMV-JBC   Document 135-6   Filed 12/09/20   Page 4 of 11 PageID: 2910
DocuSign Envelope ID: 0029CCDB-1405-4992-9F8B-3D971DCB243B

PROTECTIVE ORDER MATERIAL

ASK Approved 03-09-16
CW2239350

or electronic transmissions are filed with the minutes of proceedings of the Executive Committee, *provided* that any amendment, waiver or termination of the Patent Challenge Guidelines shall only be made upon receipt of the unanimous written consent of the Executive Committee.

10.  **Major Decisions.**  Notwithstanding the authority delegated to the Executive Committee under Section 9, prior written approval of the Sole Member shall be required in order to:

a)  Issue any equity, voting or other interest in the Company to any Person or admit any additional members of the Company;

b)  Merge or consolidate the Company with or into another Person (or take any action that has substantially the same effect);

c)  Sell, dispose of or otherwise transfer all or a substantial part of the Company's assets or operations;

d)  Take any action in furtherance of, or indicate consent to, approval of or acquiescence in, any Bankruptcy (as defined below) of the Company;

e)  Dissolve, liquidate or wind-up the Company; or

f)  Waive this Section 10.

As used herein, the term "Bankruptcy" means, with respect to any entity: (i) the entry of an Order for Relief under Title 11 of the United States Code; (ii) the admission by such entity of its inability to pay its debts as they mature; (iii) the making by it of an assignment for the benefit of creditors; (iv) the filing by it of a petition in bankruptcy or a petition for relief under Title 11 of the United States Code or any other applicable federal or state bankruptcy or insolvency law; (v) the expiration of sixty days after the filing of an involuntary petition under Title 11 of the United States Code, an application for the appointment of a receiver for the assets of such entity, or an involuntary petition seeking liquidation, reorganization, arrangement or readjustment of its debts under any other federal or state insolvency law, provided that the same shall not have been vacated, set aside or stayed within such sixty-day period; (vi) the appointment of a conservator or receiver in respect of it under the Federal Deposit Insurance Act or other applicable law; (vii) the imposition of a judicial or statutory lien on all or a substantial part of its assets unless such lien is discharged or vacated or the enforcement thereof stayed within sixty days after its effective date; or (viii) any comparable or similar proceeding under the laws of any country other than the United States.

As used herein, the term "Person" shall mean any natural person, partnership (whether general or limited), limited liability company, trust, estate, association, corporation, custodian, nominee or any other individual or entity in its own or any representative capacity.

DocuSign Envelope ID: 0029CCDB-1405-4992-9F8B-3D971DCB243B

ASK Approved 03-09-16
CW2239350

PROTECTIVE ORDER MATERIAL

11. **Patent Challenge Committee.**

    a) Subject to Section 11(b) hereof, the Company shall have a Patent Challenge Committee, the purpose of which shall be to independently implement, manage and conduct that aspect of the Company's Patent Quality Initiative directed to challenging the validity of low-quality patents as specified in the Patent Challenge Guidelines, including, without limitation, by identifying appropriate patents for challenge, directing the filing of petitions to the PTAB challenging the validity of patents selected by the Patent Challenge Committee, and overseeing the prosecution, conduct and management of proceedings initiated by the PTAB to review the validity of challenged patents (the "**Purpose**"). The Patent Challenge Committee will undertake its responsibilities in connection with the Purpose by, without limitation, challenging the validity of selected patents utilizing Inter Partes Review ("**IPR**") and Post-Grant Review ("**PGR**") proceedings as appropriate before the Patent Trial and Appeal Board ("**PTAB**").

    b) The Patent Challenge Committee shall terminate in the event of: (i) a dissolution, liquidation or winding-up of the Company; or (ii) a determination of the Executive Committee to cease pursuit of the Purpose.

    c) The Patent Challenge Committee shall be solely responsible for carrying out the Purpose and shall operate independently of the Executive Committee, the Sole Member and any other Person that is affiliated with or otherwise related to the Sole Member of the Company, provided, however, that the Patent Challenge Committee shall consider (but shall not be bound by) the principles set forth in the Patent Challenge Guidelines, and provided further that the Executive Committee may appoint, in its discretion, a Person or Persons affiliated with the Sole Member to assist and support the activities of the Patent Challenge Committee. Such a Person(s) shall provide such assistance and support at the discretion of the Patent Challenge Committee, but shall have no authority to direct, bind or otherwise control the activities of the Patent Challenge Committee.

    d) The Executive Committee shall select natural persons to serve as members of the Patent Challenge Committee, which shall consist of three (3) independent members who shall not be a director, officer, employee, representative, agent or otherwise related to or under the control or direction of the Company, the Sole Member or any other Person that is affiliated with or otherwise related to the Company or the Sole Member. The three (3) members of the Patent Challenge Committee shall be chosen by the Executive Committee based on their qualifications to carry out the Purpose of the Patent Challenge Committee, and shall have training, experience or expertise in one or more of the fields of intellectual property law, patent litigation, Patent Office practice and procedure or technology related to financial services. The members of the Patent Challenge Committee may select from among themselves a lead Patent Challenge Committee member (the "lead member"), and authorize such lead member to undertake such tasks as they determine to be appropriate, including, without limitation, supervision of outside counsel and Persons who may be designated by the Executive Committee to assist and support the Patent Challenge Committee, and overseeing the prosecution, conduct and management of IPRs and PGRs. The Patent Challenge Committee may change the lead member at any time in its discretion.

Case 2:17-cv-04248-JMV-JBC   Document 135-6   Filed 12/09/20   Page 6 of 11 PageID: 2912

DocuSign Envelope ID: 864A0302-3AE2-4159-8711-970285FD12C6
DocuSign Envelope ID: 0029CCDB-1405-4992-9F8B-3D971DCB243B

ASK Approved 03-09-16
CW2239350

PROTECTIVE ORDER MATERIAL

e) One (1) of the three (3) members of the Patent Challenge Committee shall serve for an initial term of one (1) year and the other two (2) members shall serve on the Patent Challenge Committee for an initial term of two years. Following those initial terms, any successive term of each member of the Patent Challenge Committee shall be two (2) years. The service of a member of the Patent Challenge Committee shall not be terminated except by a vote of the majority of the Executive Committee for cause based on: (i) any act or failure to act in compliance with the provisions of or satisfy the duties and responsibilities of a member of the Patent Committee Challenge set forth in this Section 11; (ii) the fraud, dishonesty, theft, bad faith or other willful misconduct of an independent member; or (iii) the repeated failure of such member (after reasonable notice of such failure and a reasonable opportunity to cure such failure) to substantially perform his or her duties as a member of the Patent Challenge Committee. Any of the three (3) members of the Patent Challenge Committee may resign at any time by written notice to the Executive Committee, and such resignation shall take effect at the time specified in the notice (or, in the absence of a specified time, the time of receipt). Unless otherwise stated in a notice of resignation, no acceptance of the resignation shall be necessary to make it effective. Upon the resignation or removal for cause of any of the three (3) members of the Patent Challenge Committee, the Executive Committee shall promptly appoint a replacement in accordance with the provisions of this Section 11. The terms of each member of the Patent Challenge Committee shall terminate if the Patent Challenge Committee is terminated pursuant to Section 11(b) hereof.

f) Each of the three (3) members of the Patent Challenge Committee shall be compensated for their services pursuant to an agreement with the Company at a rate consistent with their ordinary fees or rates for like services.

g) The Executive Committee shall establish an annual budget for the Patent Challenge Committee's activities, and an annual target range for the number of patent challenges by the Patent Challenge Committee. The Patent Challenge Committee shall have sole discretion regarding the use of the funds included in its annual budget, and sole discretion and responsibility for selecting and engaging any service providers, including, but not limited to, outside legal counsel, experts and prior art search firms, in connection with its activities.

h) Each of the three (3) members of the Patent Challenge Committee shall have one vote on all matters presented for a vote, and the approval of a majority of the members of the Patent Challenge Committee shall be required to approve any matter presented for a vote. The Patent Challenge Committee may act with or without a meeting, but any action taken with a meeting shall be recorded in minutes of that meeting and any action taken without a meeting shall be taken and recorded by a vote by written or electronic transmission.

i) Each member of the Patent Challenge Committee, including with the assistance and support of any Person affiliated with the Sole Member designated by the Executive Committee to provide such assistance and support, may identify for the Patent Challenge Committee's consideration a patent or patents that could be challenged by the Patent Challenge Committee in furtherance of the Purpose. The Patent Challenge Committee shall hold a vote to determine whether to challenge the validity of a patent.

-5-

ASK Approved 03-09-16
CW2239350

PROTECTIVE ORDER MATERIAL

j) The Patent Challenge Committee shall hold a vote in connection with decisions regarding the ultimate disposition of IPR and PGR proceedings before the PTAB, including, without limitation, decisions to settle with the respondent and terminate a proceeding.

k) Any member of the Patent Challenge Committee, or the Executive Committee, may object to a decision by vote of the Patent Challenge Committee on the grounds that the decision contravenes the Purpose, the provisions of this Section 11, and/or the Patent Challenge Guidelines, or cannot be implemented with funds available to the Patent Challenge Committee. If such an objection is made regarding a decision by the Patent Challenge Committee and the Patent Challenge Committee is unable to resolve it, the Patent Challenge Committee shall not implement or execute its decision unless all three (3) members of the Patent Challenge Committee vote to overrule the objection.

l) Other than the assistance and support provided to the Patent Challenge Committee by the Person(s) affiliated with the Sole Member designated by the Executive Committee to provide such assistance and support, and as requested by the Patent Challenge Committee, the Patent Challenge Committee shall not accept any request or suggestion that the Patent Challenge Committee institute review of any specific patent (or the patents of a particular patent owner) or any direction or suggestion with respect to carrying out the Purpose from the Executive Committee, the Sole Member or any other Person that is affiliated with or otherwise related to the Sole Member.

m) The Sole Member and any Persons that are affiliated with or otherwise related to the Sole Member will not make payments to the Company to fund any of the specific patent challenge activities of the Company (i.e., Persons affiliated with or otherwise related to the Sole Member may make initial payments and successive rounds of payments as necessary to capitalize the Company, but will not compensate the Company for challenging any certain or specific patents).

n) The Patent Challenge Committee should avoid advancing arguments that would tend to support a finding that the Company is a proxy for the Sole Member or any other Person that is affiliated with or otherwise related to the Sole Member, or that the Company and the Sole Member and any other Person that is affiliated with or otherwise related to the Sole Member are in privity when responding to contentions by patent owners that the Company lacks standing to appeal a PTAB decision that the claims of a challenged patent are valid. The Patent Challenge Committee should take special care to avoid such arguments in any attempt it makes to establish that the Company has a personal stake in the outcome and has suffered an "injury in fact."

12. Certain Prohibited Actions. The Company shall not directly or indirectly carry on any activity that would prohibit a national bank or a member bank of the Federal Reserve System from being a member of the Sole Member.

13. Officers. The Executive Committee may select natural persons to be designated as officers of the Company (the "Officers"), with such titles as the Executive Committee shall determine. Any number of offices may be held by the same person. The Officers shall hold office until their successors are chosen and qualified. Any Officer may resign

ASH Approved 03-09-16
CW2239350

PROTECTIVE ORDER MATERIAL

at any time upon written notice to the Executive Committee. Any Officer elected or appointed by the Executive Committee may be removed at any time by the Executive Committee. Any vacancy occurring in any office of the Company may be filled by the Executive Committee. The Officers shall have such powers and duties in the management of the Company as may be delegated to them in this Agreement or by the Executive Committee, except that in any event each Officer shall exercise such powers and perform such duties as may be required by law. The Officers, or any one of them, shall have the authority to execute and deliver such documents, instruments and certificates in such forms and with such terms as the Executive Committee may approve, such Officer's execution thereof to be conclusive evidence of such approval, and to take such other actions as the Officers, or any one of them, may deem necessary or appropriate.

14. <u>Officers as Agents</u>. The Officers, to the extent of their powers set forth in this Agreement or by the decision of the Executive Committee, are agents of the Company for the purpose of the Company's business, and the actions of the Officers taken in accordance with such powers shall bind the Company.

15. <u>Reliance by Third Parties</u>. Any Person dealing with the Company or any Officer may rely upon a certificate signed by an Officer as to:

    a) the identity of the Sole Member or any Officer;

    b) the existence or non-existence of any fact or facts which constitute a condition precedent to acts by an Officer or in any other manner germane to the affairs of the Company;

    c) the Persons who are authorized to execute and deliver any instrument or document of or on behalf of the Company; or

    d) any act or failure to act by the Company or as to any other matter whatsoever involving the Company or the Sole Member.

16. <u>Dissolution</u>. The Company shall dissolve, and its affairs shall be wound up upon the first to occur of the following: (a) the written consent of the Sole Member, provided that the Sole Member gives the Executive Committee three months' notice of its decision to dissolve the Company, if practicable; or (b) the entry of a decree of judicial dissolution under § 18-802 of the Act.

17. <u>Capital Contributions</u>. The Sole Member is not required to make any capital contribution to the Company.

18. <u>Additional Contributions</u>. The Sole Member is not required to make any additional capital contribution to the Company.

19. <u>Allocation of Profits and Losses</u>. The Company's profits and losses shall be allocated to the Sole Member.

20. <u>Distributions</u>. Distributions shall be made to the Sole Member at the times and in the aggregate amounts determined by the Executive Committee.

-7-

Case 2:17-cv-04248-JMV-JBC   Document 135-6   Filed 12/09/20   Page 9 of 11 PageID: 2915

DocuSign Envelope ID: 864A0302-3AE2-4159-8711-9702855D12C6
DocuSign Envelope ID: 0029CCDB-1405-4992-9F8B-3D971DCB243B

PROTECTIVE ORDER MATERIAL

ASH Approved 03-09-16
CW2239350

21.  **Tax Matters.** The Company shall be disregarded as an entity separate from its owner for U.S. federal and state income tax purposes and all items of income, gains, loss, or deduction of the Company shall be considered items of income, gain, loss or deduction of the Sole Member.

22.  **Resignation.** The Sole Member may not resign as a member of the Company.

23.  **Liability.** Neither the Sole Member, nor any member of the Executive Committee, member of the Patent Challenge Committee, any Person designated by the Executive Committee to assist and support the activities of the Patent Challenge Committee, or any Officer of the Company shall have any liability under this Agreement, the certificate of formation of the Company or the Act except as expressly provided herein or as required by the Act. Except as required by applicable law, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise (including those arising as member, owner or shareholder of any other person and those related to any expense of the Company), shall be solely the debts, obligations and liabilities of the Company, and neither the Sole Member, nor any member of the Executive Committee, member of the Patent Challenge Committee, any Person designated by the Executive Committee to assist and support the Patent Challenge Committee or any Officer of the Company shall be personally obligated for any such debt, obligation or liability of the Company by reason of acting in such capacity.

24.  **Exculpation and Indemnification.** Neither the Sole Member, nor any member of the Executive Committee, member of the Patent Challenge Committee, any Person designated by the Executive Committee to assist and support the Patent Challenge Committee or any Officer of the Company, nor any successor, assign, heir or legal representative of any of the foregoing (each a "**Covered Person**"), shall be liable to the Company or any other Person who has an interest in the Company for: (i) any loss, damage or claim incurred by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement, except that a Covered Person shall be liable for any such loss, damage or claim (including costs of investigation and attorneys' fees and expenses) ("**Damages**") incurred by reason of such Covered Person's bad faith, fraud or willful misconduct; (ii) such Covered Person's performance of, or failure to perform, any act in reasonable reliance on the advice of legal counsel to the Company; or (iii) the negligence, dishonesty or bad faith of any agent, consultant or broker of the Company selected, engaged or retained in good faith. To the fullest extent permitted by applicable law, the Company shall defend, indemnify and hold harmless each Covered Person against any Damages incurred by such Covered Person in each case actually and reasonably incurred by such Covered Person or on its behalf, by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement, except that no Covered Person shall be entitled to be indemnified in respect of any Damages incurred by such Covered Person by reason of such Covered Person's bad faith, fraud or willful misconduct with respect to such acts or omissions, *provided, however*, that any indemnity under this Section 24 shall be provided out of and to the extent of Company assets only, and no Covered Person shall have personal liability on account thereof. No amendments to this Section 24 shall impair the rights

-8-

of any Covered Person arising at any time with respect to events occurring prior to such amendment. Nothing in Section 23 or Section 24 shall limit or affect any other right of any person to indemnification or reimbursement of Damages under this Agreement or any other agreement (including any insurance policy), any constituent document of any other person, any statute, rule or regulation or otherwise.

25. **Amendment.** This Agreement may be amended only with the prior written consent of the Sole Member.

26. **Governing Law.** This Agreement shall be governed by, and construed under, the laws of the State of Delaware, all rights and remedies being governed by said laws.

27. **Severability.** The invalidity and unenforceability of any particular provision of this Agreement in any jurisdiction shall not affect the other provisions hereof, and this Agreement shall be construed in all respects as if such invalid or unenforceable provisions were omitted.

*[Remainder of page left intentionally blank.]*

DocuSign Envelope ID: 864A0392-3AE2-4159-8711-070285FD12CC
DocuSign Envelope ID: 0029CCDB-1405-4992-9F8B-3D971DCB243B

ASH Approved 03-09-16
CW2239390

PROTECTIVE ORDER MATERIAL

**IN WITNESS WHEREOF**, the undersigned, intending to be legally bound hereby, has duly executed this Amended and Restated Limited Liability Company Agreement.

THE CLEARING HOUSE PAYMENTS
COMPANY L.L.C.

By: _____ *James Aramanda* (DocuSigned by: 16BF50CEB08545C...)
Name: James Aramanda
Title: President and Chief Executive Officer

-10-