# EXHIBIT 6

PROTECTIVE ORDER MATERIAL

# EXHIBIT A

## PATENT CHALLENGE GUIDELINES

## I. Overview of Patent Quality Initiative

The Company's Patent Quality Initiative seeks to improve the quality of patents that affect the financial services industry, without limitation, by: (1) briefing examiners at the U.S. Patent and Trademark Office (the "PTO") about the technology and systems employed in the past and present by members of the financial services industry; (2) developing a repository of financial services prior art that can be shared with the PTO and members of the industry; (3) filing of amicus briefs in appropriate cases and proceedings; and (4) challenging the validity of low-quality patents that should not have been issued.

With respect to the Patent Quality Initiative's efforts to challenge the validity of low-quality patents (*i.e.*, patents that should not have been issued because they fail to meet patentability requirements), particular focus will be directed to areas of technology relating to the financial services industry, and shall be implemented, conducted and managed by and in the sole discretion of the Patent Challenge Committee as set forth in the Company's Limited Liability Agreement, as it may be amended from time to time. The Company may publicize the efforts of the Patent Challenge Committee and the resulting invalidation of patents through general news outlets, appropriate business and legal publications, and other means to inform the relevant business and legal communities about those activities.

In undertaking the Purpose (as defined in the Company's Limited Liability Agreement), the Patent Challenge Committee shall be guided by the principles set forth in these Patent Challenge Guidelines.

## II. Patent Challenge Guidelines

### A. General Guidelines for Patent Challenges

- When considering whether to file a petition for IPR or PGR, the Patent Challenge Committee may consider the following factors in addition to any other facts or circumstances that it believes are important or relevant:

    o the identity and nature of the business of the patent owner;

    o the litigiousness of the patent owner;

    o whether the patent owner historically asserts low quality patents and/or seeks settlements for less than the cost of litigation;

    o whether the patent owner is engaged in, or threatening to engage in, patent litigation with the financial services industry, or is a Person that may have an interest in targeting the financial services industry with patent suits in the near future;

    o the use of the patent by the patent owner, including whether or not the patent owner is engaged in commercialization of the inventions covered by its patents;

- o the degree to which claims of the patent could be alleged to cover products or services used throughout the financial services industry;
- o the legal quality of the patents, as determined by evaluating claim breadth and prosecution history;
- o whether, in the opinion of counsel, there is a very strong likelihood of success of the asserted grounds of invalidity;
- o whether the patent has been issued within the past ten years, which will increase the likelihood that there will be a broad array of prior art;
- o affiliation of inventors and assignees;
- o number and breadth of claims;
- o prosecution/litigation history;
- o cases, transactions, and licensing of similar portfolios;
- o assignment history;
- o post-grant proceeding history; and
- o whether there are new issues of invalidity for the PTAB to consider that were not substantively addressed on the record by the examiner.

- The Patent Challenge Committee shall have sole discretion to determine how to apply the foregoing criteria and shall not be obligated to take into account any factor in any case.

- The goal of the Patent Challenge Committee should be to file a number of petitions each year consistent with the annual budget and annual target range for patent challenges established by the Executive Committee.

**B. Consideration of Activities of the Sole Member and members of the financial services industry**

- The Patent Challenge Committee should avoid, if prudent under the circumstances, initiating PTAB proceedings against patents that are the subject of pending or imminent litigation against the Sole Member or members of the financial services industry.

    - With respect to the foregoing, the Patent Challenge Committee should consider whether:

DocuSign Envelope ID: 864A0392-2AF2-4159-8711-070285FD12CC
DocuSign Envelope ID: 0029CCDB-1405-4992-9F8B-3D971DCB243B

PROTECTIVE ORDER MATERIAL

ASK Approved 03-09-16
CW2239350

- - the patent in question is already (or imminently will be) the subject of pending patent litigation involving the Sole Member or any other Person that is affiliated with or otherwise related to the Sole Member;
  - with respect to such patent, a court has already entered a final judgment of infringement and validity against the Sole Member or any other Person that is affiliated with or otherwise related to the Sole Member;

- The Patent Challenge Committee should avoid, if prudent under the circumstances, initiating PTAB proceedings against a patent where initiating the PTAB proceeding would tend to support a finding that the Company is a proxy for the Sole Member.

- The Patent Challenge Committee should not use the same counsel or experts in an IPR or PGR initiated against a Person as the Sole Member or any other Person that is affiliated with or otherwise related to the Sole Member involved in a patent litigation against the same Person..

C. **Financial Services Technology.**

- The Patent Challenge Committee should initiate PTAB proceedings against patents disclosing alleged inventions that fall within the umbrella of "financial services" technology, and preferably those patents that could be argued to relate to technology used throughout the industry.

D. **Experts and Counsel.**

- Prior to filing a petition, the Patent Challenge Committee should consider engaging the services of one or more qualified experts in the technology at issue to prepare a declaration and other material supporting the petition. The Patent Challenge Committee should also consider commissioning a prior art search to help determine the strength of a proposed ground of invalidity. In connection with each proposed challenge of the validity of a patent, the Patent Challenge Committee should engage, as it deems appropriate, confer with and rely on the advice of patent counsel about the patent, the prior art, the validity of the patent and the likelihood of success on the merits in the IPR or PGR in the PTAB.

- In connection with carrying out the prosecution of any IPR or PGR proceeding, the Patent Challenge Committee should engage, as it deems appropriate, confer with and rely on the advice of patent counsel.

E. **Settlement Strategy.**

- In considering whether to settle any proceedings before the PTAB, the Patent Challenge Committee should consider (i) whether the patent owner offers to surrender its patent or agrees to an adverse judgment on all grounds and (ii) whether the settlement is consistent with the funds available to the Patent Challenge Committee.

-14-