# EXHIBIT 8

# The importance of PTAB patent review proceedings for addressing low quality patents



By **Sean Reilly**
June 26, 2016

Print Ar



The Patent Trial and Appeal Board (PTAB) recently sided with patent quality advocate, Askeladden L.L.C., declaring three patents unpatentable in Inter Partes Review (IPR) challenges filed under Askeladden's Patent Quality Initiative (PQI).

The announcements marked the completion of a series of IPR proceedings requested by Askeladden to review three loyalty rewards program patents: U.S. Patent Numbers 8,540,152, 8,523,063 and 8,297,502. Patents related to those challenged by Askeladden were the subject of lawsuits brought against ten airlines based on the conversion of points and other rewards from partner programs—such as credit card loyalty programs—into frequent flier miles.

This string of wins demonstrates the importance of PTAB patent review proceedings for addressing low quality patents and neutralizing their use as tools to extract nuisance settlements. Lawsuits based on weak patents undermine innovation by diverting resources—both money and employee energy—away from research and commercialization and toward the pending litigation. In fact, recent research by Professor Lauren Cohen (Harvard Business School), Professor Umit Gurun (University of Texas at Dallas), and Dr. Scott Kominers (Junior Fellow at the Harvard University Society of Fellows) finds that defendants who settle or receive an adverse verdict in suits brought by non-practicing entities—a vast majority of all patent litigation—subsequently reduce their investment into research and development.

In addition, research published by Professor Josh Lerner (Harvard Business School) in December 2015 found that poor-quality financial services patents are more likely to be asserted in litigation than high-quality financial services patents. Askeladden launched its Patent Quality Initiative to improve patent quality and support innovation in the financial services sector by coordinating technology briefings at the PTO, collecting prior art and making it available to examiners, and by challenging poor-quality patents in IPR proceedings.

The availability of PTAB patent review proceedings to address low quality patents is especially important in the financial services sector where, prior to Federal Circuit's decision in *State Street Bank v. Signature Financial Group*, there was a lack of emphasis on patenting financial services innovation.  As a result, patent examiners, who regularly search issued patents and published patent applications for prior art, often may not have access to prior art they need to avoid issuing patents on previously known technologies.

Patent challenge proceedings before the PTAB continue to be very popular, with nearly 1900 petitions filed in the 2015 PTO fiscal year and nearly 800 petitions filed at the midpoint of the 2016 fiscal year.  Moreover, these proceedings are employed by companies across technology sectors. Apple, Google, T-Mobile, Toyota, Ford, and Lupin Pharmaceuticals are just a few examples of the more than two-dozen companies that filed petitions for PTAB proceedings in 2015.

Despite the widespread use of patent challenge proceedings before the PTAB, the proceedings and the PTAB have been criticized for a heavy hand in invalidating patents. However, as of March 31, 2016, the PTO reports that in IPR proceedings—the most popular of the PTAB patent challenge proceedings—only 9,559 of 43,762 claims actually challenged (22%) were ultimately found unpatentable. When taking into consideration that PTAB petitioners have complete discretion whether to expend the resources to prepare and file a petition, and therefore will most often do so only if they believe they have strong grounds for invalidity, this rate of claim invalidation is a strong indicator that the PTAB is taking a careful look at each patent challenge and invalidating patent claims only where they should not have been allowed in the first place.  Moreover, the overall impact on patent litigation is moderate as IPR and covered business method review challenges have only affected 17% of patent litigation campaigns that have sued at least one new defendant since the America Invents Act went into effect.

At the same time, PTAB patent challenges provide a less expensive and faster means than district court litigation for dealing with truly poor-quality patents that never should have been issued, such as the three loyalty-reward program patents that Askeladden successfully challenged. Most importantly, the availability of these proceedings to deal with low quality

/

patents helps undercut the ability of plaintiffs to leverage such patents to extract nuisance settlements from businesses.

To further support its patent challenge efforts, Askeladden has begun working with three thought leaders in the patent arena: Judge Roderick McKelvie, former judge for the U.S. District Court for the District of Delaware; The Honorable Gerald Mossinghoff, former Assistant Secretary of Commerce, Commissioner of Patents and Trademarks; and John Thomas, Professor of Law at Georgetown University Law Center. This committee, referred to as the Patent Challenge Committee, is responsible for deciding which poor-quality patents to challenge and conducting those patent challenges.

Askeladden, through its Patent Challenge Committee, will build on these victories and continue to work to support innovation by challenging and eliminating poor-quality patents.

**Tags:** Askeladden, Dr. Scott Kominers, financial patents, gerry mossinghoff, inter partes review, IPR, John Thomas, Judge Roderick McKelvie, patent, patent office, patent quality, Patent Trial and Appeal Board, patents, Professor Lauren Cohen, Professor Umit Gurun, PTAB, USPTO

**Posted In:** Government, Guest Contributors, IP News, IPWatchdog Articles, USPTO

There are currently **7 Comments** comments.

---

**Anon** June 26, 2016 11:14 am

The insertion of "*State Street*" and the ignoring of the PUR initiated back then to deal with any concerns (and the fact that that avenue or redress simply was not used hardly – or if at all; along with the sound byte type of arguing "low quality" accompanied by "academic" papers convinces me **of the opposite** position espoused by this article's author.

I do have to wonder if Ron Katznelson has any updates to his "correct the 'Tr011' propaganda" efforts, or if has any views on this article or the associated "academic" studies.

---

**Patent Investor** June 26, 2016 1:13 pm

This is the opening paragraph of this "article":

"The Patent Trial and Appeal Board (PTAB) recently sided with patent quality advocate, Askeladden L.L.C., declaring three patents unpatentable in Inter Partes Review (IPR) challenges filed under Askeladden's Patent Quality Initiative (PQI)."

This is the first sentence of the "author's" bio:

"Sean Reilly is General Counsel of Askeladden and Senior Vice President and Associate General Counsel of The Clearing House Payments Company, where he directs intellectual property issues."

This is nothing but a self-serving advertisement for Mr. Reilly's business endeavor. Now I know how Ralphie felt after frantically decoding Little Orphan Annie's secret message only to discover it was nothing more than a commercial. "Don't forget to drink you're Ovaltine", indeed, Mr. Reilly.

**Curious** June 26, 2016 8:26 pm

*This is nothing but a self-serving advertisement for Mr. Reilly's business endeavor.*
Bingo.

From their website:
"The Patent Quality Initiative is an education, information and advocacy effort of Askeladden L.L.C., the goal of which is to improve the understanding, use and reliability of patents in financial services and elsewhere."

followed by:
*Through the PQI, Askeladden strives to improve patents by diminishing the number of those that should not have been issued,* and by addressing questionable patent holder behaviors.

Couldn't they have just written: "We invalidate patents that are being asserted against you." Isn't it easier just to be direct?

*research published by Professor Josh Lerner (Harvard Business School) in December 2015 found that poor-quality financial services patents are more likely to be asserted in litigation than high-quality financial services patents*
Every patent asserted is "low quality." That assertion has been in the playbook of patent defendants for decades.

As for Josh Lerner, he wrote "Innovation and Its Discontents: How Our Broken Patent System is Endangering Innovation and Progress, and What to Do About It" Biased perhaps??

**Night Writer** June 27, 2016 12:24 am

What I don't get is how all of these people can write such negative things about patents when the fact is that the US has the best software industry in the world by about a factor of 10 and it has grown up

/

and flourished with that patent system. And then–all of sudden–it turned bad and needs to be removed.

It offends the intellect that the law professors don't deal with this issue.

**Ternary** June 27, 2016 10:22 am

Sean abundantly uses the term "low quality patent" without actually defining it. However, he refers/links to an article by Josh Lerner about "poor quality patents." How does Josh define a "poor quality patent?" By measuring cited prior art and in particular the lack of cited academic articles in the patent. Really? Is that the standard now?

Patent 8,640,152, implied by Sean to be a "low-quality patent," actually has seven (yes 7) pages of cited prior art, including articles in HBR. This provides an Examiner with quite some material to work with.

I also expected some sloppy work in the '152 patent. But the opposite is true. The specification is well drafted. The drawings are informative and relevant. The technical infrastructure to support the claims is disclosed. Clearly the drafters of this document were aware of the opposition they were going to face. I am not sure if I would have drafted the claims like they have been, but this was pre-Alice.

This whole discussion about "low quality patents" of course is code for "patents that we infringe" wherein pseudo-academic standards are used as the sauce to justify derogatory and unsubstantiated qualifications of valid and asserted patents.

**Night Writer** June 29, 2016 8:34 am

You know writing stuff like this is resume building for jobs that want to dismantle the patent system.

**Brian Keith Buchheit** July 11, 2016 11:22 am

Of note, the PTAB found that Askeladden is effectively the same entity as "The Clearing House", who does over a trillion dollars (yes, trillion) in transactions a day for the 23 major banks. This was an EXTREMELY well-funded attack by banks against two independent inventors (the patents have never been assigned with the USPTO), as opposed to a disinterested group of reform advocates. The article also does not mention that as the USPTO was conducting the PTAB challenge, it concurrently issued 6 new patents on this set (that try to address the pre-Alice issues – yes six to the three patents being

challenged). It was cheaper for the patent owners to receive six newly issued cases instead of defending the 3 cases up for PTAB. Yes, the IDS on the newly issued cases cited to the PTAB challenges and the Office considered the same art. The PTAB process is expensive (half a million quoted to the patent owners for an experienced firm to respond to the six IPR challenges; the IPR response to these six petitions was a hacked pro-se job by the patent owners, you can see the Court noting how the patent owners didn't do things right from the decision and IPR file wrappers. I agree; as an aside, I'm the patent owner who did the responses). Oddly, the article does not mention that a different PTAB board (in a different challenge of a patent in this set of cases) previously found that the same art should not be instituted in similar challenge – see CBM2014-00096. The PTAB board on the referenced six IPR challenges decided not to give that other board's decision (costly to defend) any weight. For the record, Askeladden and the Clearing House did not contact the patent owners, who have been openly trying to sell/license this large set of patents (still 27 issued ones, excluding the three invalidated by the six filed IPRs mentioned by Sean) for VERY reasonable rates (a fraction of what Askelladen paid for the 6 IPR challenges and associated legal fees). This continues a trend of big company wanted to infringe an independent inventor's set of patents – quasi success by out funding. For full disclosure, I am the patent owner who answered the IPRs pro-se (poorly) because of the tremendous cost (of time and money, neither of which I could afford) of providing an IPR challenge response. NOTE: there is still an open continuation on this set of cases, which dates back to the original filing. Anyone interested in this set of cases of 27 issued patents for which no demand letter (or even direct communication regarding the set) has ever been conveyed to any bank. Free free to email me with questions; I'll try to respond.

/